## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **FAZZINO INVESTMENTS, LP** | § | |
| **for itself and all others similarly situated,** | § | |
| | § | |
| **PLAINTIFFS** | § | |
| | § | |
| **V.** | § | **CASE NO. 6:25-cv-00001** |
| | § | |
| **BRAZOS VALLEY GROUNDWATER** | § | |
| **CONSERVATION DISTRICT,** | § | |
| | § | |
| **DEFENDANT** | § | |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff Fazzino Investments, LP ("Plaintiff"), for itself and all others similarly situated, file this Original Class Action Complaint against Defendant Brazos Valley Groundwater Conservation District ("Defendant" or "BVGCD"), and respectfully show the following:

### NATURE OF THE CASE

1.     This is a takings class action. Defendant BVGCD's Rules govern the production of groundwater in Brazos and Robertson Counties, Texas. Plaintiff brings this class action for itself and all similarly situated landowners in Brazos and Roberston Counties (the "Class Members"), against BVGCD for unconstitutionally infringing on, and taking, their groundwater property rights without compensation, in violation of 42 U.S.C. 1983, the United States Constitution and the Texas Constitution, by arbitrarily and unlawfully changing its groundwater production Rules in September 2023.

2.     Plaintiff, for itself and the Class Members, seek, without limitation, declaratory relief, injunctive relief, attorneys' fees, litigation expenses, and court costs.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343 because this action is brought to enforce their rights under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments of the United States Constitution.

4.     This Court has *in personam* jurisdiction over Defendant BVGCD because at all relevant times, Defendant BVGCD was found, resided, and/or conducted business in the Western District of Texas (and continues to do so). Defendant/ BVGCD's wrongful acts alleged herein were directed at and had the intended effect of causing injury to individuals and entities residing and/or owning land in the Western District of Texas.

5.     Venue is proper in the Waco Division of the Western District of Texas under 28 U.S.C. § 1391(b) because Defendant BVGCD resides, transacts business, and/or is found in Robertson County, Texas, which is within the Waco Division of the Western District of Texas, and Defendant BVGCD's wrongful actions alleged herein occurred within the Waco Division of the Western District of Texas.

## PARTIES

6.     Plaintiff is a Texas limited partnership whose principal address is 1001 Anderson Street, Hearne, Texas. Plaintiff owns real property in Robertson County, Texas, and has been (and continues to be) injured and harmed by BVGCD's wrongful actions alleged herein.

7.     The Class Members own real property in Robertson and/or Brazos Counties, Texas, and have been (and continue to be) injured and harmed by BVGCD's wrongful actions alleged herein.

8.     Defendant Brazos Valley Groundwater Conservation District is a political subdivision of the State of Texas with its principal place of business in Hearne, Robertson County,

Texas. Defendant BVGCD may be served with summons and a copy of Plaintiff's Original Class Action Complaint by serving its President, Jason Barfknecht, or its General Manager, Alan Day, at BVGCD's principal place of business at 112 West 3rd Street, Hearne, Texas 77859.

## FACTUAL BACKGROUND

9.     BVGCD's Rules govern, among other things, the production of groundwater within BVGCD's jurisdiction (*i.e.*, Brazos and Roberson Counties) (hereafter together referred to as the "District").[1]

10.    The production of groundwater in the District is specifically governed by well spacing requirements (Rule 6.1) and production limits (Rule 7.1).

11.    Well spacing requirements are instituted "[t]o minimize as far as practicable the drawdown of the water table and the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, and to prevent waste." Rule 6.1(a). The District enforces the well spacing requirements under the current Rule 6.1 ("New Rule 6.1") on all new wells for which the registration or permit was approved after September 14, 2023. Wells permitted or registered on or before September 14, 2023, are regulated by the spacing requirements of the prior version of Rule 6.1 ("Old Rule 6.1").

12.    Under Old Rule 6.1(b)(2), all new wells drilled in the District were required to be surrounded by only one (1) foot of land per one gallon per minute ("GPM") of average annual production rate or capacity. Under New Rule 6.1(b)(2), which became effective on September 14, 2023, all new wells drilled in the District must be surrounded by two (2) feet of land per one GPM of average annual production rate or capacity.

---

[1]    *See* File Browser | Brazos Valley Groundwater Conservation District (brazosvalleygcd.org) (last visited Nov. 1, 2024).

3

13.     BVGCD Rule 7.1 institutes production limits for new water wells "[t]o minimize as far as practicable the drawdown of the water table and the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, and to address the potential loss of opportunity to drill a new well because of spacing requirements, and to prevent waste." A new well's groundwater production:

> [I]s limited by the number of contiguous acres that are legally assigned to the well site. The contiguous acreage assigned to the well bears a reasonable reflection of the cone of depression impact near the pumped well, as based on the best available science and the required production based acreage. The assigned contiguous acreage will be a circle based on the amount of groundwater production determined by the following formula:



Rule 7.1(c). The "District Spacing Requirement Between Wells" variable in the above formula is the plug-in number from Rule 6.1(b)(2)—one (1) foot of land under Old Rule 6.1(b) and two (2) feet of land under New Rule 6.1(b)(2).

14.     BVCGD's wrongful amendment of Rule 6.1(b) on September 14, 2023—changing the spacing requirement from one (1) foot of land to two (2) feet of land per one GPM of average annual production rate or capacity—has devastated (and continues to devastate) Plaintiff and Class Members, constituting an unconstitutional taking of their property rights without compensation. By way of example, under the Old Rule 6.1(b) one-foot spacing requirement, for each one (1) GPM produced by a well, a landowner had to own or control a circle of land around the wellbore with a radius of one (1) foot. Thus, if a landowner had a 3,000 GPM well, under Old Rule 6.1(b), the landowner had to own or control land around the wellbore in a circle with a radius of 3,000

feet—or a circular area of 649 acres. As such, a circular section of land (640 acres) could effectively support a 3,000 GPM well.

15.    On September 14, 2023, however, the District unlawfully changed the Rule 6.1(b) spacing requirement. So, to drill a new 3,000 GPM well under the New Rule 6.1(b) two-foot spacing requirement, per the above formula, a landowner must own or control 2,596 acres around the wellbore. That's four times as much land necessary to produce the same amount of water. As a small landowner example, under Old Rule 6.1(b), a 700 GPM well required only 35 acres surrounding the wellbore. Under New Rule 6.1(b), 141 acres are required to drill the well. This is pertinent, for example, because the economic minimum production for drilling a well into the Simsboro aquifer for municipal or industrial purposes is 1,100-acre feet per year, which requires a well producing around 700 GPM.

16.    To the point, New Rule 6.1(b) reduces the amount of groundwater Plaintiff and Class Members may produce from post-September 14, 2023, by 75%. Stated another way, BVGCD wrongfully devalued Plaintiff's and Class Members' groundwater rights to 25% of what they were before the District unlawfully changed Rule 6.1(b). Considering that the typical water well costs well over $1 million to drill, the practical effect of BVGCD's rule change is to make prospective wells that were once economically feasible to drill under Old Rule 6.1(b) no longer economically feasible to drill under New Rule 6.1(b). Thus, BVGCD's unlawful Rule 6.1 change prevents Plaintiffs and Class Members from exercising their groundwater property rights—which constitutes an unconstitutional taking without compensation.

17.    Adding insult to injury, after September 14, 2023, New Rule 7.1(c)(1) prohibits new wells from having a "contiguous acreage circle" that overlaps with any other well in the same aquifer. As a practical matter, this requirement effectively condemns water rights within a

landowner's contiguous acreage that do not fall within the geometry of a circle. Because BVGCD's Rule 7.1 production limitation is tied to geometry—specifically, a circle of land—those portions of Plaintiff's and Class Members' tracts outside the circles of land surrounding proposed new groundwater well sites are effectively condemned by New Rule 7.1(c)(1), as shown in the diagram below:



Assuming a square or rectangular shaped property of sufficient size to support a well under BVGCD's Rules and given that permitted production is tied to a circular shape, the corners of a square or rectangular shaped property are effectively condemned because they are excluded from the total contiguous acreage required by the District's new production based acreage rule. This effect is even more pronounced in properties that are not perfect squares or rectangles—which is true of most (if not all) of Class Members' land.

18.    Adding further insult to injury, pre-September 14, 2023, groundwater wells are not subject to the same spacing or acreage requirements of New Rules 6.1 and 7.1. Thus, landowners with pre-September 14, 2023, wells drilled on land next to tracts owned by Plaintiff and Class Members, where wells must be drilled under New Rules 6.1 and 7.1 but will not be drilled because

they are now not economically feasible, are draining Plaintiff's and Class Members' land with no recourse—further negatively impacting Plaintiff's and Class Members' property rights.

19.    Landowners with pre-September 14, 2023, wells in close proximity to Plaintiff's and Class Members' properties without wells are producing groundwater at rates up to four (4) times the rates allowed to Plaintiff and Class Members under BVGCD's New Rules. Because of the fugacious nature of groundwater, Plaintiff's and Class Members' ability to offset drainage and prevent confiscation of water by their producing neighbors has been reduced or eliminated altogether, resulting in a per se taking of Plaintiff's and Class Members' property. BVGCD's New Rules deny Plaintiff and Class Members a fair chance to recover groundwater under their properties and compel Plaintiff and Class Members to physically forego production of their groundwater for the alleged sake of conservation, resulting in a per se taking of their property.

20.    Landowners, including Plaintiff and Class Members, seeking to sell their groundwater rights for the development of new wells have suffered (and continue to suffer) a 75% decrease in the value of their water rights, while their neighbors with wells drilled under the Old Rules have suffered no diminution in value. This is a particularly stark impact given that water rights in the Simbsoro aquifer under Plaintiff's and Class Members' land, for example, are currently highly sought after by companies seeking to supply water to municipalities and industries located in other parts of Texas where water is significantly scarcer. As a practical matter, these companies can no longer lease groundwater rights or outright purchase property with groundwater rights from willing landowners, including Plaintiff and Class Members, who do not control the required acreage to support the well capacities required to drill economically feasible wells.

21.    BVGCD's geometric limitations on production capacity also render it nearly impossible to lease and/or purchase enough property around a wellbore to support a marketable

well. Whether for municipal, industrial, or agricultural use, BVGCD's New Rules preclude the development of Plaintiff's and Class Members' groundwater rights, which constitutes an uncompensated and unconstitutional taking of Plaintiff's and Class Members' groundwater property rights.

## **CLASS ACTION ALLEGATIONS**

22.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action against Defendant BVGCD as a class action, for itself and all members of the following class of similarly situated individuals and entities ("Class Members"):

> All individual and entity landowners in Brazos and Robertson Counties, Texas, that own at least 35 contiguous acres and do not have a pre-September 14, 2023, groundwater well permitted or drilled on their acreage.

Excluded from the proposed Class are (i) Defendant BVGCD and its current and former officers, directors, employees, agents, and representatives, and (ii) the Court and its personnel.

23.    The proposed Class consists of several hundred Class Members, the joinder of whom in one action is impracticable. The precise number and identities of the Class Members are readily ascertainable from BVGCD's records and the Brazos and Robertson County real estate records.

24.    By its above-described wrongful actions, BVGCD violated Plaintiff's and Class Members' property rights in the same way by knowingly and unlawfully changing Rules 6.1 and 7.1, thereby inflicting injury and harm on Plaintiff's and Class Members' property rights in the same manner.

25.    Certain questions of law and fact common to the proposed Class predominate over any questions affecting individual Class Members, including, *inter alia*:

(i)    whether BVGCD's above-described wrongful actions violated (and continue to violate) the Fifth Amendment to the United States Constitution;

(ii)     whether BVGCD's above-described wrongful actions violated (and continue to violate) 42 U.S.C. § 1983;

(iii)    whether BVGCD's above-described wrongful actions constitute a taking and directly and/or proximately caused (and continue to cause) Plaintiff and Class Members to suffer injury and harm to their groundwater property rights;

(iv)    whether Plaintiff and Class Members are entitled to declaratory relief;

(v)     whether Plaintiff and Class Members are entitled to injunctive relief; and

(vi)    whether Plaintiff and Class Members are entitled to recover their attorneys' fees, litigation expenses, and court costs.

26.     Plaintiff's claims are typical of Class Members' claims because Plaintiff and Class Members suffered (and continue to suffer) injury and harm to their groundwater property rights due to BVGCD's above-described wrongful actions in the same manner; to wit, BVGCD's unilateral and unlawful amendments to Old Rules/ 6.1 and 7.1 to create New Rules 6.1 and 7.1 substantially devalued Plaintiff's and Class Members' groundwater property rights and preclude Plaintiff and Class Members from developing, leasing and/or selling their groundwater property rights.

27.     Plaintiff and its counsel will fairly and adequately represent the interests of Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the interests of any Class Member. Plaintiff's counsel are experienced in Texas water law, prosecuting takings claims involving groundwater rights, and leading and prosecuting large class actions, complex commercial litigation, and mass torts.

28.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and Class Members' claims. Plaintiff and Class Members have been (and will continue to be) injured and harmed as a direct and proximate result of BVGCD's above-described wrongful actions. Litigating this case as a class action is appropriate because (i) a class action will avoid a multiplicity of suits and the corresponding burden on the courts and Parties,

and (ii) it would be virtually impossible for all Class Members to intervene in this action as individual parties-plaintiff.

29.    Certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of (i) inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for BVGCD, and/or (ii) adjudications with respect to individual Class Members which, as a practical matter, would be dispositive of the interests of other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

30.    Certification also is appropriate under FED. R. CIV. P. 23(b)(2) because BVGCD has acted on grounds applicable to the entire Class (*i.e.*, unlawfully amending Old Rules 6.1 and 7.1 to create New Rules 6.1 and 7.1 and taking Plaintiff's and Class Members' groundwater property rights), thereby making appropriate final injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

31.    BVGCD's above-described wrongful actions injured and harmed (and continue to injure and harm) the property rights of the Class Members, for which Plaintiff, for itself and Class Members, seeks injunctive and declaratory relief. Absent a class action, BVGCD will retain the benefits of its wrongdoing despite inflicting (and continuing to inflict) injury and harm on Plaintiff's and Class Members' property rights.

## CLAIMS AND CAUSES OF ACTION

### COUNT I

**TAKING PRIVATE PROPERTY WITHOUT COMPENSATION
UNDER COLOR OF STATE LAW IN VIOLATION OF THE FIFTH AMENDMENT TO
THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983,
AND THE TEXAS CONSTITUTION**

32.     The preceding factual statements and allegations are incorporated by reference.

33.     In Texas, groundwater in place beneath the surface of the land is a constitutionally protected property right under the United States and Texas Constitutions. *Stratta v. Roe,* 961 F.3d 340, 356 (5th Cir. 2020); *Edwards Aquifer Authority v. Day,* 369 S.W.3d 814, 823 (Tex. 2012). Moreover, Chapter 36 of the Texas Water Code, from which BVGCD derives its authority, expressly recognizes and adopts the common law rule vesting ownership of groundwater in landowners. *See* TEX. WATER CODE § 36.002 (stating, in pertinent part, that a landowner, including lessees and assigns, "owns the groundwater below the surface of the landowner's land as real property'' (§ 36.002(a)), and that such ownership entitles the landowner to "drill for and produce the groundwater below the surface of real property." *Id*., 36.002(b). The statutory right to "drill for and produce the groundwater" is only subject to BVGCD's right to regulate groundwater production in very specific ways. Tex. Water Code § 36.002(b)(1), (d).

34.     All groundwater rights owners are entitled to a fair opportunity to produce their fair share of the groundwater beneath their property. *Day* at 831; *Stratta* at 357; *Elliff v. Texon Drilling Co.*, 210 S.W.2d 558 (Tex. 1949). Any denial of the right to produce a fair share of groundwater amounts to confiscation. *Marrs v. Railroad Commission*, 177 S.W.2d 941 (Tex. 1944)*.* It is the duty of a regulatory body, such as BVGCD, to protect landowners' property rights because each landowner is "...entitled to a fair chance to recover the [groundwater] in and under his land or the equivalent thereof and to prevent confiscation of his property." *Railroad Commission v. Shell Oil*,

380 S.W.2d 556 (Tex. 1964).

35.    Because groundwater is a landowner's property, any order, regulation, or act—such as New Rules 6.1 and 7.1—that takes, harms, or destroys that property right without compensation is prohibited by the Fifth Amendment[2] to the United States Constitution and by Article I, Section 17 of the Texas Constitution. *Marrs*, 177 S.W.2d at 949. Here, by amending Rules 6.1 and 7.1 in the above-described manner, BVGCD has taken (and continues to take) Plaintiff's and Class Members' groundwater property rights, without compensation, in violation of the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the Texas Constitution, by denying them their fair opportunity to produce the groundwater under their land, thereby preventing confiscation of their property (groundwater) via drainage by their adjoining landowners' groundwater wells.

36.    As described above, District Rule 7.1 also effects a condemnation of Plaintiff's and Class Members' property that is outside of the inscribed circle resulting from applying the BVGCD's acreage-based groundwater production limitations to properties that are not circular.

37.    BVGCD's taking of Plaintiff's and Class Members' property under color of state law violates the Fifth Amendment to the United States Constitution, 42 U.S.C. § 1983, and the Texas Constitution. Plaintiff and Class Members own real property located in BVGCD's District. As such, under Texas law, Plaintiff and Class Members own the groundwater beneath their property. BVGCD's New Rules—as outlined above—effectively condemn vast quantities of Plaintiff's and Class Members' groundwater.

---

[2]    As made applicable to the states via incorporation into the Fourteenth Amendment. *Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897).

38.     Plaintiff and Class Members have reasonable, investment-backed expectations that they will be able to develop and sell their fair share of groundwater beneath their properties, which is being thwarted by BVGCD's above-described wrongful actions. Plaintiff, for itself and the Class Members, seek injunctive and declaratory relief in the form of repealing New Rules 6.1 and 7.1 and applying Old Rules 6.1 and 7 uniformly across all real property located in the District.

## COUNT II

## <u>DECLARATORY RELIEF</u>

39.     The preceding factual statements and allegations are incorporated by reference.

40.     This Court is authorized to enter a judgment declaring the Parties' rights and legal relations and grant further necessary relief based upon such a judgment.

41.     As set forth above, an actual controversy exists regarding the unconstitutionality of BVGCD's New Rules.

42.     As a direct and proximate result of BVGCD's above-described wrongful actions, Plaintiff and Class Members have suffered (and will continue to suffer) injury and harm to their groundwater property rights (as described above) unless and until the Court enters judgment against BVGCD and awards Plaintiff and Class Members their requested relief.

43.     Plaintiff and Class Members, therefore, request the Court to enter a judgment (i) declaring that BVGCD's New Rules 6.1 and 7.1 violate the United States and Texas Constitutions as set forth above, and effect a taking of Plaintiff's and Class Members' groundwater property rights, without compensation, in violation of 42 U.S.C. § 1983, (ii) declaring that BVGCD owed (and continues to owe) a legal duty to all landowners in the District, including Plaintiff and Class Members, to fairly and equitably safeguard and protect their groundwater property rights, and allow them to produce the groundwater underneath their land, in a uniform and consistent manner

across the District, (iii) declaring that as a direct and proximate result of BVGCD's above-described wrongful actions, Plaintiff and Class Members have suffered injury and harm to their groundwater property rights (as described above), (iv) declaring that Plaintiff and Class Members are entitled to declaratory and injunctive relief in the form of repealing New Rules 6.1 and 7.1 and applying Old Rules 6.1 and 7 uniformly across all real property located in the District and (v) declaring that BVGCD's above-described wrongful actions forming the basis of Plaintiff's and Class Members' claims, causes of action, and request for declaratory and injunctive relief actually occurred.

**COUNT III**

**APPLICATION FOR PRELIMINARY INJUNCTION**
**AND PERMANENT INJUNCTION**

44.    The preceding factual statements and allegations are incorporated by reference.

45.    As a direct and/or proximate result of BVGCD's above-described wrongful actions, Plaintiff and Class Members will suffer ongoing and further injury and harm to their groundwater property rights by the New Rules precluding them from utilizing, developing, leasing, protecting and/or selling their groundwater property rights (as described above) while, at the same time, being drained by their adjoining landowners' water wells.

46.    Plaintiff, therefore, for itself and Class Members, requests the Court to enter a preliminary injunction, and thereafter, a permanent injunction (i) prohibiting BVGCD from enforcing New Rules 6.1 and 7.1, and (ii) requiring BVGCD to implement uniform rules governing the production of groundwater in the District that (a) do not unconstitutionally infringe on the groundwater property rights of all landowners in the District, (b) fairly and equitably safeguard and protect groundwater property rights across the District, and (c) allow all landowners in the District, including Plaintiff and Class Members, a fair opportunity to produce their fair share of

the groundwater underneath their property in a uniform and consistent manner across the District—by repealing New Rules 6.1 and 7.1 and applying Old Rules 6.1 and 7 uniformly across all real property located in the District.

47.    Without preliminary, and thereafter, permanent injunctive relief, Plaintiff and Class Members will suffer irreparable harm. Enforcement of the New Rules irreparably harms Plaintiff and Class Members in two distinct ways. *First*, the New Rules effectively prevent Class Members with fewer than 141 contiguous acres from being able to participate in the burgeoning market for groundwater leases and sales, causing lost financial opportunities. *Second*, where Plaintiff and Class Members own land near landowners with permits issued under Old Rule 6.1 such neighboring properties are draining, and will continue to drain, groundwater from under Plaintiff's and Class Members' properties.

48.    Under Texas law, Plaintiff and Class Members have no legal recourse against their neighbors for draining their groundwater; their only viable remedy is against the governmental authority that implemented the rules causing such drainage. The only means by which Plaintiff and Class Members may protect their groundwater from drainage is to obtain immediate, and thereafter, permanent, relief from this Court. Absent preliminary injunctive relief, drainage will continue throughout the pendency of this litigation, with no ability to prevent it. Without preliminary and, thereafter, permanent injunctive relief, Plaintiff and Class Members will be irreparably injured and harmed. The hardship to Plaintiff and Class Members if the preliminary, and thereafter, permanent injunctive relief does not issue substantially exceeds the hardship to BVGCD if such relief is issued. In fact, there would be no hardship to BVGCD at all. BVGCD does not own groundwater; as such, enforcement of the New Rules is economically neutral to BVGCD as compared to the enforcement of the Old Rules.

49.     Without such preliminary, and thereafter, permanent injunctive relief, Plaintiff and Class Members have no adequate remedy at law. The New Rules cause the loss of fair market value of Plaintiff's and Class Members' properties in an amount equal to approximately 75%. Likewise, allowing the New Rules to remain in place pending this litigation will cause Plaintiff and Class Members to miss out on the opportunity to participate in water supply projects now and in the future. The hardship to Plaintiff and Class Members if preliminary, and thereafter, permanent injunctive relief does not issue substantially exceeds the hardship to BVGCD if such relief is issued. In fact, as noted above, there would be no hardship to BVGCD at all.

50.     Issuance of the requested preliminary, and thereafter, permanent injunction will not disserve the public interest. Rather, issuing such relief would be a major step in the right direction towards protecting and allowing Plaintiff and Class Members to develop their groundwater property rights in a uniform, fair, and equitable manner across the District and to offset drainage that is occurring daily due to the disparate groundwater production allowances.

## PRESERVATION OF EVIDENCE/SPOLIATION NOTICE

51.     Plaintiff, for itself and Class Members, hereby requests and demands that BVGCD and its officers, directors, employees, representatives, and agents preserve and maintain all evidence pertaining to any claim or defense related to the events made the basis of this lawsuit, and the injury and harm resulting therefrom, including without limitation, contracts, emails, minutes of meetings, memoranda, correspondence, financial records, diagrams, maps, photographs, videotapes, audiotapes, video and audio recordings showing the sign stealing, recordings, invoices, checks, files, facsimiles, voicemails, text messages, calendar entries, disciplinary actions, ticket sales, and/or documents and information relevant and/or related to the reference claims. Failure to maintain such items may constitute "spoliation" of the evidence.

## RELIEF REQUESTED

52.    The preceding factual statements and allegations are incorporated by reference.

53.    **DECLARATORY RELIEF.** As a direct and proximate result of Defendant BVGCD's above-described wrongful actions, Plaintiff and Class Members have suffered (and will continue to suffer) injury and harm to their groundwater property rights (as described above). As such, Plaintiff and Class Members are entitled to the above-requested declaratory relief. All conditions precedent to Plaintiff's and Class Members' claims for declaratory relief have been performed or occurred.

54.    **PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF.** As a direct and proximate result of Defendant BVGCD's above-described wrongful actions, Plaintiff also is entitled to the above-requested preliminary and permanent injunctive relief. All conditions precedent to Plaintiff's and Class Members' claims for preliminary and permanent injunctive relief have been performed or occurred.

55.    **ATTORNEYS' FEES, LITIGATION EXPENSES, AND COURT COSTS.** Plaintiff and Class Members also are entitled to recover their attorneys' fees, litigation expenses, and court costs pursuant to, *inter alia*, 42 U.S.C. § 1988. All conditions precedent to Plaintiff's and Class Members' claims for attorneys' fees, litigation expenses, and court costs have been performed or occurred.

**WHEREFORE,** Plaintiff, for itself and Class Members, respectfully requests that (i) Defendant BVGCD be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Plaintiff be designated the Class Representative, and (iv) Plaintiff's counsel be appointed Class Counsel. Plaintiff, for itself and Class Members, also requests that upon final trial or hearing, judgment be awarded against Defendant BVGCD in Plaintiff's favor for:

(i)    declaratory relief as set forth above;

(ii)    preliminary and permanent injunctive relief as set forth above;

(iii)    attorneys' fees, litigation expenses, and court costs; and

(iv)    such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff, for itself and Class Members, respectfully demands a trial by jury on all claims so triable.

Date: January 2, 2025.

Respectfully submitted,

/s/ *Marvin W. Jones*
**SPROUSE SHRADER SMITH PLLC**
Marvin W. Jones
Texas Bar No: 10929100
C. Brantley Jones
Texas Bar No: 24079808
701 S. Taylor, Suite 500
Amarillo, Texas 79105-5008
Telephone: (806) 468-3300
Facsimile:  (806) 373-3454
Email: marty.jones@sprouselaw.com
Email: brantley.jones@sprouselaw.com

**THE COFFMAN LAW FIRM**
Richard L. Coffman
Texas Bar No: 04497460
3355 West Alabama, Suite 240
Houston, Texas 77098-1864
Telephone: (713) 528-6700
Facsimile:  (866) 835-8250
Email: rcoffman@coffmanlawfirm.com

***Attorneys for Plaintiff and the Putative Class***