# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| FAZZINO INVESTMENTS, LP, for itself and all others similarly situated, | § § § § | |
| | § | |
| *Plaintiffs,* | § § | |
| v. | § § | CASE NO. 6:25-cv-00001-ADA-DTG |
| BRAZOS VALLEY GROUNDWATER CONSERVATION DISTRICT, | § § § | |
| *Defendant.* | § § | |

## DECLARATION OF ALAN M. DAY

1.    "My name is Alan M. Day. I am over the age of eighteen (18) years, have never been convicted of a felony or a crime of moral turpitude, and am competent to make this Declaration. I have personal knowledge of the facts contained herein, and the facts are true and correct.

2.    "I am the General Manager of the Brazos Valley Groundwater Conservation District ("BVGCD" or "the District"). I am responsible for overseeing the day-to-day operations of BVGCD and working with the Board of Directors. As part of my duties, I review permit applications, attend board meetings, and maintain records.

3.    "Part of my job is reviewing permit applications for compliance with the District's Rules, as well as the application of the District's Rules to such permit applications.

4.    "Fazzino Investments LP has never submitted a permit application to BVGCD for the 69.41-acre tract that is the subject of the lawsuit.  However, in connection with this lawsuit and consistent with my duties of reviewing permit applications and applying BVGCD's Rules to those applications, I evaluated the BVGCD's current Rules as they would apply to that tract, and prepared the diagram attached hereto as Attachment 1.  That diagram shows the maximum Simsboro aquifer well footprint that Fazzino would be entitled to on that tract, as well as the maximum allowable production of Simsboro aquifer groundwater from such a well (587.1 acre-feet per year, equating to 8.46 acre-feet per surface acre of the tract).

5.    "Further, based on my personal knowledge of the facts of this case and my experience as a general manager of a groundwater district, I undertook a review of the current rules regarding maximum production limits for the majority of the groundwater districts in Texas, in comparison to the production limits of Simsboro aquifer groundwater under BVGCD's Rules.  A spreadsheet comparing these rules and their respective production limits allowed under those rules for each district, where they could be calculated, is attached hereto as Attachment 2.

6.    "In my role as general manager, I am charged with implementing BVGCD's Rules and am familiar with the current Rules of the Brazos Valley Groundwater Conservation District.  A true and correct copy of BVGCD's Rules as

utilized and maintained as part of BVGCD's regular course of business is attached hereto as Attachment 3. BVGCD's Rules are part of the business records of BVGCD. It was the regular course of that business for an employee or representative of the BVGCD with knowledge of the act, event, condition or opinion recorded to make the records or to transmit information thereof to be included in such records. The records were made at or near the time of the act, event, condition or opinion record or reasonably soon thereafter. The attached records are the original or exact duplicates of the originals."

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on this _7th_ day of May, 2026.

_____

Alan M. Day

# EXHIBIT A-1



Fazzino Footprint - 587.1 ac-ft per year - 69.41 acres

# EXHIBIT A-2

| GCD | Max Production Limit | Max. Production Limit on 69.41 acres | District Rule | Link to Rule |
|---|---|---|---|---|
| Bandera Co. River Authority and Groundwater District | .5 ac-ft/ac/year (currently in permit moratorium for drought) | 34.705 ac-ft/year | Rule 3.4(q) | https://bcragd.org/wp-content/uploads/2024/10/BCRAGD-CH.-36-Rules-Amended-17.OCT_.2024.pdf |
| Barton Springs Edwards Aquifer Conservation District | | | | https://bseacd.org/uploads/Rules-and-Bylaws-Volume-1-08.14.2025_FINAL-1.pdf |
| Bee GCD | 1 ac-ft/ac/year | 69.41 ac-ft/year | Rule 11(b) | https://img1.wsimg.com/blobby/go/8c1282f0-d3f2-4a9a-ad1d-dd66af68e1f4/downloads/2012%20Bee%20Rules%20(FINAL).pdf?ver=1619810474169 |
| Blanco-Pedernales GCD | currently under permitting moratorium | | | https://www.blancogroundwatertx.gov/rules |
| Bluebonnet GCD | | | Rule 6.1 | https://www.bluebonnetgroundwater.org/wp-content/uploads/2023/08/APPROVED-Bluebonnet-GCD-Rules-04-13-2023.pdf |
| Brazoria County GCD | | | Rules 6.10, 11 | https://www.bcgroundwater.org/images/bcg/documents/2024/2023-BCGCD-Rules.pdf |
| **Brazos Valley GCD** | circum formula on spacing | **587.1 ac-ft/yr** | Rule 7.1(c) | https://brazosvalleygcd.org/files/?catid=384 |
| Brewster County GCD | varies under formula based on what's left in MAG | | Rule 5.205(b) | https://static1.squarespace.com/static/64f32ad794b2ad482419470b/t/699cbaf88f7ad2403c11dd2d/1771879160628/District+Rules+%28Dec.+2025%29+-+final.pdf |
| Brush Country GCD | 2.5 ac-ft/ac/year | 173.525 ac-ft/year | Rule 10A | https://brushcountrygcd.com/rules/2025/Rules%20of%20BCGCD%20-%20September%201%202025%20.1.pdf |
| Central Texas GCD | .25 to 1 ac-ft/ac/year | 69.41 ac-ft/year | Rule 5.02(c) | https://docs.google.com/viewerng/viewer?url=https://centraltexasgcd.org/wp-content/uploads/2026/01/CURRENT-CTGCD-RULES-as-revised-January-23-2026.pdf&hl=en |
| Clear Fork GCD | | | | no website |
| Clearwater UWCD | | | Rules 5.3,4 | https://cuwcd.org/wp-content/uploads/2025/09/20250905_CUWCD-Rules-Revised-Aug25-FINAL.pdf |
| Coastal Bend GCD | | | Rules 6.10, 11 | https://cbgcd.com/wp-content/uploads/pdf/Rules-1.pdf |
| Coastal Plains GCD | | | Rules 6.10, 11 | https://coastalplainsgcd.com/wp-content/uploads/2025/04/CPGCD-Rules.pdf |
| Coke County UWCD | | | RULE 5.202 | https://www.co.coke.tx.us/page/coke.UndergroundWaterConservationDistrict |
| Colorado County GCD | 3.5 ac-ft/ac/year (zone 1)& 1 ac-ft/ac-yr (zone 2) | 242.935 (z1) or 69.41(z2) ac-ft/yr | Rule 3.4.7 | https://ccgcd.net/documents/1278/District_Rules___Regulations_-_Amended_3-18-2026.pdf |
| Comal Trinity GCD | | | | https://24db2da5-3e88-4566-8846-75cfa9ee8996.filesusr.com/ugd/e62693_d9a605b01f6c47e08186117cf754fb76.pdf |
| Cow Creek GCD | .7 ac-ft/ac/year | 48.587 ac-ft/yr | Rule 10.2.C | http://ccgcd.org/wp-content/uploads/2021/05/Rule-10-Groundwater-Production-Limits.pdf |
| Crockett County GCD | ben use | | Rule 6.2 | https://www.crockettcountygcd.com/rules-and-bylaws |
| Culberson County GCD | MAG limited production limits | | Rule 5.102 | https://www.ccgwcd.org/info-for-well-owners#docaccess-b702941f1b2525d6cde833a056b9c175e19f8ed2399cbfd54743a16bfae8be48 |
| Duval County GCD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 11.2 | http://www.duvalgcd.com/docs/2018rules.pdf |
| Edwards AA | | | | |
| Evergreen UWCD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 7.9(b) | https://evergreenuwcd.org/wp-content/uploads/2025/07/Resolution-2025-04-25-Rules-Amendment.pdf |
| Fayette County GCD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 8.1(b) | https://www.fayettecountygroundwater.com/_files/ugd/3eb0e2_c450eae9826f407a8a2f0202f48676ff.pdf |
| Gateway GCD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 7.1 | https://nebula.wsimg.com/40409d88dea4e20bc376c8b139960e7f?AccessKeyId=3CC0CCD5536C3BB3F7C0&disposition=0&alloworigin=1 |
| Glasscock GCD | large spacing and density limitations | | | https://www.glasscock-groundwater.org/rules-by-laws |
| Gonzales County UWCD | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 18B | https://www.dropbox.com/scl/fi/dcy47cor05kfb165jnz6d/GCUWCD-Rules-Revision-12.0-Adopted-6-10-25.pdf?rlkey=n8oc27hvgim4wmszyzer1oqud&e=1&st=4nx411vl&dl=0 |
| Guadalupe County GCD | .5 ac-ft/ac/year | 34.705 ac-ft/yr | Rule 5.4f | https://drive.google.com/file/d/1yxJoq7XfXI_RAXHY7rLg6cdTAWVs6enc/view |
| Hays Trinity GCD | ? | | | https://haysgroundwater.com/wp-content/uploads/2025/05/4732217-District-Rules-Amended-February-2025_Review-FINAL-Version-1.pdf |
| Headwaters GCD | 65,000 or 80,000 gal/ac/yr =.2 or .25 ac-ft/ac/yr | 17.3525 ac-ft/yr | Rule 8A | https://www.hgcd.org/_files/ugd/dadc16_7a41978d4d01494180ea96f83f4995e0.pdf |
| Hemphill County UWCD | ben use; 1% decline rate; 3 ac-ft/ac/yr max for ag. Irrig. | 208.23 ac-ft/yr | Rule 5.107 | https://www.hemphilluwcd.org/wp-content/uploads/2025/12/MASTER-RULES-FINAL-DECEMBER-2025.pdf |
| Hickory UWCD | based on drawdown | | Rule 10.1 | https://www.hickoryuwcd.org/rules |
| High Plains UWCD No. 1 | 1.5 ac-ft/ac/yr | 104.115 ac-ft/yr | Rule 5.2 | https://www.hpwd.org/rules#docaccess-f8697ae08ebd6262fa7aeaf14478a5b7d04583bf1d7bbf1ebdaf94224fc540d5 |
| Hill Country UWCD | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 5.6(D) | https://hcuwcd.org/wp-content/uploads/2024/01/Rules_Amended_Adopted-Nov-14-2023_UD-1.pdf |
| Hudspeth County UWCD | 3 ac-ft/ac/year | 208.23 ac-ft/yr | Rule 3.5 | https://hcuwcd1.org/wp-content/uploads/2024/09/HCUWCD1_Rules_2024-09-16.pdf |
| Irion County WCD | ben. Use | | RULE 5.202 | https://www.irionwcd.org/storage/UserFileFolder/Adopted_10.2023.pdf |
| Jeff Davis County UWCD | | | | no website |
| Kenedy County GCD | 14.87 acre-inches/acre/year (1.24 ac-ft/yr) | 86.0684 ac-ft/yr | Rule 11.3 | http://www.kenedygcd.com/forms/2024DistrictRules.pdf |
| Kimble County GCD | | | RULE 5.202 | https://kimblecountygcd.org/ |
| Kinney County GCD | | | | https://www.kinneycountygcd.org/files/a7170d699/KCGCD+Rules+12.16.2025.pdf |
| Lipan Kickapoo WCD | well density | | Rule 9.2 | https://lipan-kickapoo.org/FILES/Rules-Manual_of_Hearings/Final_Rules_Aug-04_Complete_with_Amendments_Nov-06_Sept-07_-Adopted_40_pgs_-_For_Printing_112007.pdf |
| Live Oak UWCD | 2 ac-ft/ac/yr | 138.82 ac-ft/yr | Rule 11(a) | https://nebula.wsimg.com/ccb777c53b2d0a1093bec5bac81754c8?AccessKeyId=07B02CAF3AF3528367D1&disposition=0&alloworigin=1 |
| Llano Estacado UWCD | 10 gpm/ac / 16.13 ac-ft/yr | 1119.5833 ac-ft/yr | Rule 7.1 | http://www.llanoestacadouwcd.org/LEUWCD%20Rules.pdf |
| Lone Star GCD | | | | https://www.lonestargcd.org/wp-content/uploads/2025/06/Resolution-20-007-Amending-Adopting-District-Rules_adopted-09.08.20_signed.pdf |
| Lone Wolf GCD | no-just tied to spacing | | | https://lonewolfgwcd.org/wp-content/uploads/2023/10/District-Rules.pdf |

| | | | | |
|---|---|---|---|---|
| Lost Pine GCD | 1.6 ac-ft/yr | 111.056 ac-ft/yr | Rule 9.1(A) | https://www.lostpineswater.org/191/District-Rules#docaccess-6499c49aadc39f3315c4e24842b7492f4f144ecacafdeae9234891efdcbb816e |
| Lower Trinity GCD | | | | https://www.waterwells.info/_files/ugd/125bf6_53a90c26cb0948bf82b8fcbd8d9cebaf.pdf |
| McMullen GCD | .5 ac-ft/ac/year | 34.705 ac-ft/yr | Rule 11(b) | https://img1.wsimg.com/blobby/go/482775b2-b714-4a6b-8a43-392bbbd0e8b8/downloads/McMullen%20GCD%20approved%20rules%209_26_2012.pdf?ver=1764609678511 |
| Medina County GCD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 5.9c | https://www.mcgcd.org/documents/MedinaCountyGCDDistrictRules20250716.pdf |
| Menard County UWD | | | | https://www.menardcountyuwd.org/storage/UserFileFolder/08.28.2024_ADOPTED_RULES.pdf |
| Mesa UWCD | 4 ac-ft/ac/year | 277.64 ac-ft/yr | Rule 7.1 | https://www.mesauwcd.org/rules-management-plan |
| Mesquite Texas GCD | density based | | Chapter 3 | https://mesquitegcd.gov/wp-content/uploads/2026/04/Adopted-Rules-04232026.pdf |
| Middle Pecos GCD | | | Section 10 | https://www.middlepecosgcd.org/pdf/forms/MPGCD%20Rules%20-%20November%202025.pdf?_t=1765222018 |
| Middle Trinity GCD | 3 ac-ft/ac/year | 208.23 ac-ft/yr | Rule 3.2 | https://static1.squarespace.com/static/6279757ab062a7599d29c907/t/691f24a4bd94527d7f994a29/1763648676705/Middle+Trinity+GCD+Rule+Amended_11.13.2025.pdf |
| MidEast Texas GCD | 3 ac-ft/ac/year | 208.23 ac-ft/yr | Rule 6.3 | https://www.metgcd.org/files/247b72a86/2023-10-24+METGCD+Rules.pdf |
| Neches and Trinity Valleys GCD | | | | https://img1.wsimg.com/blobby/go/d3e2692a-5f91-4ba7-8df6-bb9cc84ae837/downloads/NTVGCD%20RULES%207-18-24%20FINAL.pdf?ver=1776371262254 |
| North Plains GCD | 1.5 ac-ft/ac/year | 104.115  ac-ft/yr | Rule 6.1 | https://northplainsgcd.org/wp-content/uploads/2026/02/Adopted-Rules-Aug-13-2025-effective-Sept-1_2025-.pdf |
| North Texas GCD | | | Rule 6.1 | https://nebula.wsimg.com/332492bd42f4f0a3207f04328da09c97?AccessKeyId=888A1880E4023ABFC5AE&disposition=0&alloworigin=1 |
| Northern Trinity GCD | | | | https://ntgcd.com/wp-content/uploads/2025/11/NTGCD-Rules-Amended-November-19-2025-web.pdf |
| Panahandle GCD | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 4.2(g) | https://e0bebb4d-fc6f-4e52-bc08-a97bdf1f8ff5.filesusr.com/ugd/038525_e1857c748ef4468dbb2f204f93479562.pdf |
| Panola County GCD | | | | https://pcgcd.org/wp-content/uploads/2025/09/Panola-County-GCD-Rules-Approved-August-26-2025.pdf |
| Pecan Valley GCD | 1 ac-ft/ac/year (under 1000 TDS) | 69.41 ac-ft/yr | Rule 8.1 | https://www.pvgcd.org/pdfs/Rules%20(rev%2011.21.23).pdf |
| Permian Basin UWCD | | | | https://www.pbuwcd.com/files/a57b9a588/2025+PBUWCD+Rules.pdf |
| Pineywoods GCD | 1 ac-ft/ac/year (avg. depth) | 69.41 ac-ft/yr | Rule 7.1(b) | https://www.pgcd.org/rules/district-rules-effective-march-23-2026 |
| Plateau Underound Water Conservation and Supply District | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 7C | https://www.plateauuwcsd.org/storage/UserFileFolder/plateaurules2016_(1).pdf |
| Plum Creek Conservation District | 1 ac-ft/ac/year | 69.41 ac-ft/y | Rule 19 | https://pccd.org/wp-content/uploads/2019/01/Amended-Rules-11-20-2018-FINAL.pdf |
| Post Oak Savannah GCD | 1 ac-ft/ac/year (avg. depth) | 69.41 ac-ft/yr | Rule 5.1.2 | https://www.dropbox.com/scl/fi/tgkby0zs3uc1r59t5syk8/POSGCD-Rules-November-18-2025.pdf?rlkey=m8lzvb5isvo781lz41qimp04m&e=1&dl=0 |
| Prairielands GCD | 50,000 gpd/ac = .15 ac-ft/ac/year | 10.4115 ac-ft/yr | Rule 5.2 | https://www.prairielandsgcd.org/wp-content/uploads/2025/05/Prairielands-GCD-Rules-w-appendixes-as-Adopted-April-21-2025-1.pdf |
| Presidio County UWCD | 1 to 3 ac-ft/ac/year | 208.23 ac-ft/yr | Rule 11.1(c) | https://static1.squarespace.com/static/5e8f83b7bf037e57d1aa0270/t/690e15965319927ff3ee4d40/1762530710456/District+Rules+as+Amended+October+2025.pdf |
| Real Edwards CRD | 2 ac-ft/ac/year | 138.82 ac-ft/yr | Rule 9.1(a) | https://recrd.org/wp-content/uploads/2023/11/2023-District-Rules.pdf |
| Red River GCD | | | Rule 6.1 | https://redrivergcd.org/district-rules |
| Reeves County GCD | 6 ac-ft/ac/yr | 416.46 ac-ft/yr | Rule 11(A) | https://reevescountygcd.org/wp-content/uploads/2025/08/RCGCD-Rules-Sep-1-2025-PDF.pdf |
| Rolling Plains GCD | 3 ac-ft/ac/year | 208.23 ac-ft/yr | Rule 4.5 | https://rollingplainsgcd.gov/wp-content/uploads/2024/08/RPGCD_Rules_20240625.pdf |
| Rusk County GCD | circum form on spacing | 728 ac-ft/yr | Rule 8.1(b) | https://www.rcgcd.org/uploads/cms/nav-12-699349616bdfe.pdf |
| San Patricio County GCD | 1.25 ac-ft/ac/yr | 120.5125 ac-ft/yr | Rule 12.2 | https://nebula.wsimg.com/5aa673e4ab97ba9546d59f92d8d97689?AccessKeyId=D07219DB32F5D03F3385&disposition=0&alloworigin=1 |
| Sandy Land UWCD | 4 ac-ft/ac/yr | 385.64  ac-ft/yr | Rule 6.0 | https://www.sandylandwater.com/wp-content/uploads/2022/12/ADOPTED-AMENDMENTS-TO-DISTRICT-RULES-_FINAL-12-14-22.pdf |
| Santa Rita UWCD | | | | https://www.santaritauwcd.org/files/1a02fd570/Santa+Rita+UWCD+Rules+as+of+November+28%2C+2023.pdf |
| Saratoga GCD | | | | https://www.saratogauwcd.org/1/3/5/1/135199797/suwcd_rules_revised_11-14-2024.pdf |
| South Plains UWCD | 4 ac-ft/ac/yr | 385.64  ac-ft/yr | Rule 6.1 | https://spuwcd.org/wp-content/uploads/2018/10/2009_Rules.pdf |
| Southeast Texas GCD | | | | https://setgcd.org/wp-content/uploads/2023/11/District-Rules-Amended-11-9-2023.pdf |
| Southern Trinity GCD | | | | https://southerntrinitygcd.org/about/ |
| Southwestern Travis County GCD | | | | https://img1.wsimg.com/blobby/go/d8f57d03-09f5-431d-8d73-0651791a659b/downloads/6f4c7fa6-74fc-4faa-aeed-340ce9cbe10e/SWTCGCD-Rules-Amended-20250910.pdf?ver=1777407566267 |
| Starr County GCD | | | | https://scgcd.org/wp-content/uploads/2022/04/SCGCD-Rules.pdf |
| Sterling County UWCD | | | RULE 5.202 | https://www.sterlinguwcd.org/storage/UserFileFolder/Adopted_2023.pdf |
| Sutton County UWCD | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 7.2 | https://www.suttoncountyuwcd.org/storage/UserFileFolder/2023_District_Rules_-_Amended_11.14.2023.pdf |
| Terrell County GCD | | | | no website |
| Trinity Glen Rose GCD | 1 ac-ft/ac/year | 69.41 ac-ft/yr | Rule 6.5 | https://www.trinityglenrose.com/_files/ugd/4383d6_84840c2a64c046e2854005e3182fbc14.pdf |
| Upper Trinity GCD | 25,000 g/ac (0.076722196 ac-ft/ac/yr) | 5.32528762436 ac-ft/yr | Rule 5.2 | https://uppertrinitygcd.com/wp-content/uploads/2021/02/UTGCD-RULES.pdf |
| Uvalde County UCD | 2.5 ac-ft/ac/year | 241.025 ac-ft/yr | Rule 12.2 | https://www.uvaldecountyuwcd.org/files/4a6ce66f1/District+Rules+revised+11282023.pdf |
| Wes-Tex GCD | | | Rule 6.20 | https://westexgcd.org/wp-content/uploads/wtgcdrules3.pdf |
| Wintergarden GCD | 2.5 ac-ft/ac/year | 241.025 ac-ft/yr | Rule 7.2 | https://wgcd.net/wp-content/uploads/2020/05/Rules.pdf |

# EXHIBIT A-3

# RULES OF THE BRAZOS VALLEY
# GROUNDWATER CONSERVATION DISTRICT

## TABLE OF CONTENTS

**RULES OF THE DISTRICT ADOPTED** ............................................... 1

**SECTION 1:**  **GENERAL PROVISIONS**........................................................ **2**
Rule 1.1   Definition of Terms.................................................... 2
Rule 1.2   Purpose of Rules.................................................... 7
Rule 1.3   Use and Effect of Rules ......................................... 7
Rule 1.4   Headings and Captions........................................... 7
Rule 1.5   Construction.......................................................... 7
Rule 1.6   Methods and Service Under the Rules...................... 8
Rule 1.7   Severability .......................................................... 8

**SECTION 2:**  **BOARD** ........................................................................ **8**
Rule 2.1   Purpose of Board.................................................... 8
Rule 2.2   Board Structure, Officers ....................................... 8
Rule 2.3   Meetings................................................................ 8
Rule 2.4   Committees ........................................................... 9

**SECTION 3:**  **DISTRICT STAFF**...........................................................**9**
Rule 3.1   General Manager..................................................... 9

**SECTION 4:**  **DISTRICT** ......................................................................**9**
Rule 4.1   Minutes and Records of the District............................ ..9
Rule 4.2   Certified Copies..........................................................9
Rule 4.3   Notice of Meetings......................................................9

**SECTION 5:**  **DISTRICT MANAGEMENT PLAN AND JOINT PLANNING**....... **10**
Rule 5.1   District Management Plan........................................ 10
Rule 5.2   Joint Planning in Management Area........................... 10

**SECTION 6:**  **SPACING REQUIREMENTS**.............................................. **10**
Rule 6.1   Required Spacing.................................................... 10
Rule 6.2   Exceptions to Spacing Requirements.......................... 11

**SECTION 7:**  **PRODUCTION LIMITATIONS**............................................ **12**
Rule 7.1   Maximum Allowable Production................................. 12
Rule 7.2   Actions Based on Aquifer Response to Pumping.................. 14
Rule 7.3   District Rules Void ................................................ 18

**SECTION 8:**  **REGISTRATION AND PERMITTING** ........................................ **18**
Rule 8.1   Exclusions and Exemptions ...................................... 18
Rule 8.2   Registration of Exempt Wells.................................... 19

*Last Amended October 9, 2025*

Rule 8.3    Permitting of Non-Exempt Wells ................................................................. 20
Rule 8.4    Applications ...................................................................................................... 24
Rule 8.5    Operating Permit Term and Renewal ......................................................... 29
Rule 8.6    Aggregation of Annual Production............................................................. 31
Rule 8.7    Operating Permit Provisions ....................................................................... 31
Rule 8.8    Operating Permit Limitations ..................................................................... 34
Rule 8.9    Permit Amendments...................................................................................... 34
Rule 8.10   Aquifer Storage and Recovery Projects..................................................... 36

**SECTION 9:      FEES AND DEPOSIT** .................................................................. **37**
Rule 9.1    Water Use Fees ............................................................................................... 37
Rule 9.2    Application, Registration, and Other Fees................................................ 38
Rule 9.3    Payment of Fee ............................................................................................... 38
Rule 9.4    Transport Permit Processing ....................................................................... 39
Rule 9.5    Minimum Water Use Fees ........................................................................... 39
Rule 9.6    Inspection and Plan Review Fees ............................................................... 39
Rule 9.7    Special Fees ..................................................................................................... 39
Rule 9.8    Exceptions........................................................................................................ 39
Rule 9.9    Excess Pumpage Fees .................................................................................... 39
Rule 9.10   Returned Check Fee....................................................................................... 39
Rule 9.11   Accounting Fee ............................................................................................... 40
Rule 9.12   Well Log Deposit............................................................................................ 40

**SECTION 10:     TRANSFER OF GROUNDWATER OUT OF THE DISTRICT ...... 40**
Rule 10.1   Permit Required ............................................................................................. 40
Rule 10.2   Applicability ................................................................................................... 40
Rule 10.3   Application....................................................................................................... 41
Rule 10.4   Hearing and Permit Issuane ........................................................................ 42
Rule 10.5   Fees Included with Application ................................................................... 43

**SECTION 11:     REWORKING AND REPLACING A WELL....................................43**
Rule 11.1   Procedures........................................................................................................ 43

**SECTION 12:     WELL LOCATION AND COMPLETION ....................................... 44**
Rule 12.1   Responsibility ................................................................................................. 44
Rule 12.2   Location of Domestic, Industrial, Injection, and Irrigation Wells............ 44
Rule 12.3   Standards of Completion for Wells............................................................. 44
Rule 12.4   Re-Completions .............................................................................................. 45
Rule 12.5   Inspection Port Technical Completion Requirement................................ 45
Rule 12.6   Registration of Well Prior to Service Work Requiremen ........................ 45

**SECTION 13:     WASTE AND POLLUTION .................................................................. 45**
Rule 13.1   Waste Prevention ........................................................................................... 45
Rule 13.2   Orders to Prevent Waste/Pollution............................................................. 46

*Last Amended October 9, 2025*

**SECTION 14:**      **HEARINGS** ................................................................................ **46**
   Rule 14.1    Types of Hearings .......................................................................... 46
   Rule 14.2    Notice and Scheduling of Permit-Related Hearings ................................ 47
   Rule 14.3    Case Hearing Request; Preliminary Hearing ........................................... 49
   Rule 14.3.5  Determination of Contested Status of Permit Hearings ........................... 50
   Rule 14.4    General Permi-Related Hearing Procedures ............................................ 51
   Rule 14.5    Additional Contested Permit Hearings Procedures.................................. 57
   Rule 14.6    Rulemaking Hearings Procedures.............................................................. 61

**SECTION 15:**      **INVESTIGATIONS AND ENFORCEMENT** ...................................... **65**
   Rule 15.1    Notice and Access to Property ................................................................. 65
   Rule 15.2    Rule Enforcement ..................................................................................... 65
   Rule 15.3    Sealing of Wells ........................................................................................ 65
   Rule 15.4    Civil Penalties .......................................................................................... 66
   Rule 15.5    Failure to Report Pumpage and/or Transported Volumes ........................ 66
   Rule 15.6    Emergency Orders .................................................................................... 66

**SECTION 16:**      **WELL ASSISTANCE PROGRAM** ...................................................... **67**
   Rule 16.1    Water Well Assistance Agreements........................................................... 67
   Rule 16.2    Overarching Framework ........................................................................... 67
   Rule 16.3    Objectives of the Well Assistance Program.............................................. 68
   Rule 16.4    Mitigation Procedures............................................................................... 68
   Rule 16.5    Well Owner Complaint Response.............................................................. 73

*Last Amended October 9, 2025*

## RULES OF THE BRAZOS VALLEY
## GROUNDWATER CONSERVATION DISTRICT

Notice of the Rules of the Brazos Valley Groundwater Conservation District was published on August 12, 2025, and last amended by Board action on October 9, 2025.

In accordance with Section 59 of Article XVI of the Texas Constitution and Act of May 26, 2001, 77th Leg., R.S., ch. 1307, 2001 Tex. Gen. Laws (HB 1784), and the non-conflicting provisions of Chapter 36, Texas Water Code the following Rules are hereby ratified and adopted as the Rules of this District by its Board. Each rule as worded herein has been in effect since the date of passage and as may be hereafter amended.

The Rules, regulations, and modes of procedure herein contained are and have been adopted to simplify procedures, avoid delays, and facilitate the administration of the water laws of the State and the Rules of this District. To the end that these objectives are attained, these Rules will be so construed.

These Rules may be used as guides in the exercise of discretion, where discretion is vested. However, under no circumstances and in no particular case may these Rules be construed as a limitation or restriction upon the exercise of powers, duties, and jurisdiction conferred by law. These Rules will not limit or restrict the amount and accuracy of data or information that may be required for the proper administration of the law.

In adopting these rules, The District considered all groundwater uses and needs; developed rules that are fair and impartial; considered the groundwater ownership and rights described by Section 36.002; considered the public interest in conservation, preservation, protection, recharging, and prevention of waste of groundwater, and of groundwater reservoirs or their subdivisions, and in controlling subsidence caused by withdrawal of groundwater from those groundwater reservoirs or their subdivisions, consistent with the objectives of Section 59, Article XVI, Texas Constitution; and considered the goals developed as part of the district's management plan under Section 36.1071; and developed rules that do not discriminate between land that is irrigated for production and land that was irrigated for production and enrolled or participating in a federal conservation program.

*Last Amended October 9, 2025*

## RULES OF THE BRAZOS VALLEY
## GROUNDWATER CONSERVATION DISTRICT

The District is authorized under § 36.101 of the Texas Water Code to make and enforce Rules, including Rules limiting groundwater production and the spacing of wells, to provide for conserving, preserving, protecting, and recharging of the groundwater or of a groundwater reservoir or its subdivisions in order to control subsidence, prevent degradation of water quality, or prevent waste of groundwater and to carry out the powers and duties provided by Chapter 36 of the Texas Water Code. The District incorporates by reference all authorities granted to the District by the District Act and Chapter 36 of the Texas Water Code into its District Rules. These Rules are effective as of September 14, 2023.

## SECTION 1. <u>GENERAL PROVISIONS</u>

### RULE 1.1. <u>DEFINITIONS OF TERMS</u>

In the administration of its duties, the Brazos Valley Groundwater Conservation District follows the definitions of terms set forth in the District Act, Chapter 36 of the Texas Water Code, and other definitions as follow:

(1)    "Acre-foot" means the amount of water necessary to cover one acre of land one foot deep, or about 325,000 gallons of water.

(2)    "Agriculture" means any of the following activities:

   (A)    cultivating the soil to produce crops for human food, animal feed, or planting seed or for the production of fibers;
   (B)    the practice of floriculture, viticulture, silviculture, and horticulture, including the cultivation of plants in containers or nonsoil media, by a nursery grower;
   (C)    raising, feeding, or keeping animals for breeding purposes or for the production of food or fiber, leather, pelts, or other tangible products having a commercial value;
   (D)    planting cover crops, including cover crops cultivated for transplantation, or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure;
   (E)    wildlife management; and
   (F)    raising or keeping equine animals.

(3)    "Agricultural use" means any use or activity involving agriculture, including irrigation.

(4)    "Average annual production rate or capacity" means the permitted annual production amount in acre feet multiplied by 0.62 to equal gallons per minute of production on an average annual basis.

(5)    "Best available science" means conclusions that are logically and reasonably derived using statistical or quantitative data, techniques, analyses, and studies that are publicly available to reviewing scientists and can be  employed to address a specific scientific question

*Last Amended October 9, 2025*

(6)     "Board" means the Board of Directors of the Brazos Valley Groundwater Conservation District.

(7)     "Conjunctive use" means the combined use of groundwater and surface water sources that optimizes the beneficial characteristics of each source.

(8)     "Contiguous acreage" means land with the same continuous boundary within the District that is owned or legally controlled for the purpose of groundwater withdrawal by the well owner or operator. The contiguous acreage assigned to the well shall bear a reasonable reflection of the cone of depression impact near the pumped well, as based on the best available science and the production based acreage required by District Rule 7.1(c). Land that is owned or legally controlled by the well owner or operator that is separated only by a road, highway, railway, or river from other land owned or controlled by the well owner or operator is contiguous.

(9)     "Desired future condition" means a quantitative description, adopted in accordance with Section 36.108, of the desired condition of the groundwater resources in a management area at one or more specified future times.

(10)    "De-watering Well" means a well used to remove water from a construction site or excavation, or to relieve hydrostatic uplift on permanent structures.

(11)    "Discharge" means the amount of water that leaves an aquifer by natural or artificial means.

(12)    "District" means the Brazos Valley Groundwater Conservation District.

(13)    "District Act" means the Act of May 26, 2001, 77th Leg., R.S., ch. 1307, 2001 Tex. Gen. Laws(HB 1784).

(14)    "District Office" means the office of the District as established by resolution of the Board.

(15)    "Drilling Permit" means a permit for a water well issued or to be issued by the District allowing a water well to be drilled.

(16)    "Existing Well" means a groundwater well within the District's boundaries, for which drilling or significant development of the well commenced before the effective date of the District's rules on December 2, 2004.

(17)    "Evidence of historic or existing use" means evidence that is material and relevant to a determination of the amount of groundwater beneficially used without waste by a permit applicant during the relevant time period set by district rule that regulates groundwater based on historic use. Evidence in the form of oral or written testimony shall be subject to cross-examination. The Texas Rules of Evidence govern the

3

admissibility and introduction of evidence of historic or existing use, except that evidence not admissible under the Texas Rules of Evidence may be admitted if it is of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

(18)    "Groundwater" means water located beneath the earth's surface within the District but does not include water produced with oil in the production of oil and gas.

(19)    "Hearing Body" means the Board, any committee of the Board, or a Hearing Examiner at any hearing held under the authority of the District Act.

(20)    "Hearing Examiner" means a person appointed by the Board of Directors to conduct a hearing or other proceeding.

(21)    "Historic Use" means the highest annual amount of water withdrawn from an active groundwater well in the District for an actual beneficial use, prior to the adoption date of the District's first set of rules.

(22)    "Inflows" means the amount of water that flows into an aquifer from another formation.

(23)    "Injection well" includes:

(a)    an air conditioning return flow well used to return water used for heating or cooling in a heat pump to the aquifer that supplied the water;

(b)    a cooling water return flow well used to inject water previously used for cooling;

(c)    a drainage well used to drain surface fluid into a subsurface formation;

(d)    a recharge well used to replenish the water in an aquifer;

(e)    a saltwater intrusion barrier well used to inject water into a freshwater aquifer to prevent the intrusion of salt water into the freshwater;

(f)    a sand backfill well used to inject a mixture of water and sand, mill tailings, or other solids into subsurface mines;

(g)    a subsidence control well used to inject fluids into a non-oil or gas producing zone to reduce or eliminate subsidence associated with the overdraft of fresh water; or

(h)    a closed system geothermal well used to circulate water, other fluids, or gases through the earth as a heat source or heat sink.

(24)    "Landowner" means the person who bears ownership of the land surface.

(25)    "Leachate Well" means a well used to remove contamination from soil or groundwater.

(26)    "Modeled available groundwater" means the amount of water that the Texas Water Development Board determines may be produced on an average annual basis to achieve a desired future condition established under Section 36.108.

4

*Last Amended October 9, 2025*

(27)    "Management Area" means an area designated and delineated by the Texas Water Development Board under Chapter 35 as an area suitable for management of groundwater resources.

(28)    "Monitoring Well" means a well utilized to measure some property of the groundwater or aquifer it penetrates.

(29)    "New Well" means any well other than an existing well.

(30)    "New Well Application" means an application for a permit to drill and operate a new well.

(31)    "Open Meeting Law" means Chapter 551, Texas Government Code.

(32)    "Operating Permit" means a permit issued by the District for a water well, allowing groundwater to be withdrawn from a water well for a designated period.

(33)    "Property legally assigned to a well" is property owned or legally controlled for purposes of groundwater withdrawal by a well owner or operator and assigned to a specific well by the owner or operator.

(34)    "Public Information Act" means Chapter 552, Texas Government Code.

(35)    "Public water supply well" means a well that produces the majority of its water for use by a public water system.

(36)    "Person" includes corporation, individual, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, or any other legal entity.

(37)    "Presiding Officer" means the President, Vice-President, Secretary, or other Board member presiding at any hearing or other proceeding or a Hearing Examiner conducting any hearing or other proceeding.

(38)    "Produce or Production" means extracting groundwater by pumping or by another method.

(39)    "Rate of Production" means the amount of groundwater that is stated in the District's operating permits that limits the number of gallons of groundwater produced per minute ("gpm"), with a maximum annual cap of overall groundwater production specified in acre-feet. For example, a District operating permit could state that the authorized rate of production is 1000 gpm, not to exceed a total amount of 1600 acre-feet of groundwater production per year.

(40)    "Recharge" means the amount of water that infiltrates to the water table of an aquifer.

*Last Amended October 9, 2025*

(41)    "Rules" means the Rules of the District compiled in this document and as may be supplemented or amended from time to time.

(42)    "Texas Rules of Civil Procedure" and "Texas Rules of Civil Evidence" mean the civil procedure and evidence Rules as amended and in effect at the time of the action or proceeding. Except as modified by the Rules of the District, the rights, duties, and responsibilities of the presiding officer acting under the Texas Rules of Civil Procedure or the Texas Rules of Evidence are the same as a court acting under those Rules.

(43)    "Transport" means transferring or moving groundwater outside the District.

(44)    "Transport Permit" means an authorization issued by the District allowing the transport of a specific quantity of groundwater outside the District's boundaries for a designated time period. All applicable permit Rules apply to transport permits.

(45)    "Use for a Beneficial Purpose or Beneficial Use" means:

    (a)    Agricultural, gardening, domestic, stock raising, municipal, mining, manufacturing, industrial, commercial, recreational, or pleasure purposes;

    (b)    exploring for, producing, handling, or treating oil, gas, sulphur, or other minerals; or

    (c)    any other purpose that is useful and beneficial to the user and that does not cause waste.

(46)    "Waste" means any one or more of the following:

    (a) withdrawal of groundwater from a groundwater reservoir at a rate and in an amount that causes or threatens to cause intrusion into the reservoir of water unsuitable for agricultural, gardening, domestic, or stock raising purposes;

    (b) the flowing or producing of wells from a groundwater reservoir if the water produced is not used for a beneficial purpose;

    (c) escape of groundwater from a groundwater reservoir to any other reservoir or geologic strata that does not contain groundwater;

    (d) pollution or harmful alteration of groundwater in a groundwater reservoir by saltwater or by other deleterious matter admitted from another stratum or from the surface of the ground;

    (e) willfully or negligently causing, suffering, or allowing groundwater to escape into any river, creek, natural watercourse, depression, lake, reservoir, drain, sewer, street, highway, road, or road ditch, or onto any land other than that of the owner of the well unless such discharge is authorized by permit, rule, or order issued by the Texas Commission on Environmental Quality under Chapter 26, Texas Water Code;

    (f) groundwater pumped for irrigation that escapes as irrigation tail water onto land other than that of the owner of the well unless permission has been granted by the occupant of the land receiving the discharge; or

6

(g) for water produced from an artesian well, "waste" also has the meaning assigned by Section 11.205, Texas Water Code.

(47)    "Water Meter" means a water flow measuring device that can accurately record the amount of water produced during a measured time.

(48)    "Well" means any facility, device, or method used to withdraw groundwater from within the District's boundaries.

(49)    "Well Owner" or "Well Operator" means the person who owns a possessory interest in: (1) the land upon which a well or well system is located or to be located; (2) the well or well system; or (3) the legal right to occupy the property and to capture groundwater withdrawn from a well or well system located on the property.  The term "well owner" includes but is not limited to a person that holds a well permit for the well.

(50)    "Well System" means a well *or* group of wells tied to the same distribution or transportation system.

(51)    "Withdraw or Withdrawal" means extracting groundwater by pumping or by another method.

(52)    "Windmill" means a wind-driven or hand-driven device that uses a piston pump to remove groundwater.

## RULE 1.2.    PURPOSE OF RULES
These Rules are adopted to achieve the provisions of the District Act and accomplish its purposes.

## RULE 1.3.    USE AND EFFECT OF RULES
The District uses these Rules in the exercise of the powers conferred by law and in the accomplishment of the purposes of the District Act.  They may not be construed as a limitation or restriction on the exercise of any discretion nor be construed to deprive the District or Board of the exercise of any powers, duties, or jurisdiction conferred by law, nor be construed to limit or restrict the amount and character of data or information that may be required to be collected for the proper administration of the District Act.

## RULE 1.4.    HEADINGS AND CAPTIONS
The section and other headings and captions contained in these Rules are for reference purposes only.  They do not affect the meaning or interpretation of these Rules in any way.

## RULE 1.5.    CONSTRUCTION
A reference to a title, chapter, or section without further identification is a reference to a title, chapter, or section of the Water Code. Construction of words and phrases are governed by the Code Construction Act, Subchapter B, Chapter 311, Texas Government Code.

**RULE 1.6.    METHODS OF SERVICE UNDER THE RULES**

Except as otherwise expressly provided in these Rules, any notice or documents required by these Rules to be served or delivered may  be delivered to the recipient, or the recipient's authorized representative, in person, by agent, by courier receipted delivery, by  mail sent to the recipient's last known address, by fax or by email. Service by mail is complete upon deposit in a post office or other official depository of the United  States Postal  Service. Service  by telephonic  document  transfer  is  complete  upon  transfer,  except  that  any  transfer  occurring after 5:00 p.m.  will be deemed complete on the following business day. If service or delivery is by mail, and the recipient has the right, or is required, to do some act within a prescribed time after service, three (3) days will be added to the prescribed period. Where service by one or more methods has been attempted and failed, the service is complete upon notice publication in a general circulated newspaper in Brazos and Robertson Counties.

**RULE 1.7.    SEVERABILITY**

If any one or more of the provisions contained in these Rules are for any reason held to be invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability may not affect any other Rules or provisions of these Rules, and these Rules must be construed as if such invalid, illegal, or unenforceable Rules or provision had never been contained in these Rules.


## SECTION 2.  BOARD

**RULE 2.1.    PURPOSE OF BOARD**

The Board was created to determine policy and regulate the withdrawal of groundwater within the boundaries of the District for managing, conserving, preserving, protecting, and recharging the groundwater  within  the  District,  and to exercise its  rights, powers, and  duties  in  a  way that will effectively and expeditiously accomplish the purposes of the District Act.  The Board's responsibilities include, but are not limited to, the adoption and enforcement of reasonable rules and other orders.

**RULE 2.2.    BOARD STRUCTURE, OFFICERS**

The Board consists of the members appointed and qualified as required by the District Act.  The Board will elect one of its members to serve as President, to preside over Board meetings and proceedings; one to serve as Vice President to preside in the absence of the President; one to serve  as  Treasurer  to preside as President in case of the absence of the president and vice president; one to serve as Secretary to keep a true and complete account of all meetings and proceedings of the Board and preside as President in case of the absence or disability of the president, vice president, and treasurer; and any other officer or assistant officers as the Board may deem necessary. Members and officers serve until their successors are elected or appointed and sworn in, in accordance with the District Act and these Rules.

**RULE 2.3.    MEETINGS**

The Board will hold a regular meeting at least once each quarter as the Board may establish from time to time by resolution. At the request of the President, or by written request of at least three members, the Board may hold special meetings. All Board meetings will be held according to the Texas Open Meetings Law.

**RULE 2.4.    COMMITTEES**

The President may establish committees for formulation of policy recommendations to the Board, and appoint the chair and membership of the committees. Committee members serve at the pleasure of the President.

## SECTION 3.  DISTRICT STAFF

**RULE 3.1.    GENERAL MANAGER**

The Board may employ or contract with a person to manage the District, and title this person General Manager. The Board may delegate to the General Manager full authority to manage and operate the offices of the District subject only to orders of the Board. The Board will determine the salary and review the position of General Manager each year at the beginning of the third quarter of every fiscal year. The General Manager, with approval of the Board, may employ or contract with all persons necessary for the proper handling of business and operation of the District. If the Board has not appointed a General Manager, the Board shall act to manage the District and may perform any function of the General Manager identified by these Rules.

## SECTION 4.  DISTRICT

**RULE 4.1.    MINUTES AND RECORDS OF THE DISTRICT**

All documents, reports, records, and minutes of the District are available for public inspection and copying following the Texas Open Records Act. Upon written application of any person, the District will furnish copies of its public records, and charge a copying fee pursuant to policies established by the District. A list of the charges for copies will be furnished by the District.

**RULE 4.2.    CERTIFIED COPIES**

Requests for certified copies must be in writing. Certified copies will be made under the direction of the Board of Directors. A certification charge and copying charge may be assessed, pursuant to policies established by the Board of Directors.

**RULE 4.3.    NOTICE OF MEETINGS**

Notwithstanding the rules addressing the posting of public notices herein, pursuant to §551.054(a), Texas Government Code, the District shall post required meeting notices:

(a)    at a place convenient to the public in the administrative office of the district or political subdivision; and

(b)    either provide notice of each meeting to the county clerk of each county in which the district or political subdivision is located or post notice of each meeting on the district's or political subdivision's Internet website.

## SECTION 5.  DISTRICT MANAGEMENT PLAN AND JOINT PLANNING

### RULE 5.1.  DISTRICT MANAGEMENT PLAN

The District Management Plan, and any amendments thereto, shall be developed using the District's best available data and forwarded to the Region G Regional Water Planning Group for consideration in their planning process. The District Management Plan must also use the groundwater availability modeling information provided by the Texas Water Development Board in conjunction with any available site-specific information provided by the District and acceptable to the Texas Water Development Board. The District shall use the Rules of the District to implement the Management Plan. The Board will review the plan at least every fifth year and shall adopt amendments as necessary, after notice and hearing. Each district in the management area shall ensure that its management plan contains goals and objectives consistent with achieving the desired future conditions of the relevant aquifers as adopted during the joint planning process.

### RULE 5.2.  JOINT PLANNING IN MANAGEMENT AREA

The District shall follow the Joint Planning in Management Area 12, as is required in Chapter 36 of the Texas Water Code and Title 31 of the Texas Administrative Code, Chapter 356.

## SECTION 6.  SPACING REQUIREMENTS

### RULE 6.1.  REQUIRED SPACING

(a)    To minimize as far as practicable the drawdown of the water table and the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, and to prevent waste, the District will enforce spacing requirements on all new wells in the District for which the registration or permit was approved by the District after September 14, 2023. Wells permitted or registered on or before September 14, 2023, are regulated by the spacing requirements of the District Rules that were in effect prior to September 14, 2023.

The TDLR well-spacing regulations required by 16 Texas Administrative Code Section 76.100, as amended, apply to all exempt and non-exempt wells in the District, unless a more stringent rule is adopted by the Board herein.

(b)    **Spacing in Wells, Except in the Brazos River Alluvium**

As stated below, there are two types of spacing requirements, both of which apply to all new non-exempt wells and wells registered to provide water for oil and gas drilling, completion, or production in the District, other than those in the Brazos River Alluvium

Aquifer. The first spacing rule is the distance that the well site must be from the perimeter of the real property that is assigned to that well under Rule 7.1. The second spacing rule is the distance that the well site must be from all permitted non-exempt wells and all registered exempt wells.

(1) Spacing of all new non-exempt wells completed in the District, other than the Brazos River Alluvium Aquifer, shall be one foot per gallon per minute (1 ft/gpm) of average annual production rate or capacity from the perimeter of the property that is legally assigned to that well.

A new well may not be drilled within a minimum of 50 feet from the perimeter of the property that is legally assigned to that well.

(2) Spacing of all new non-exempt wells completed in the District, other than the Brazos River Alluvium Aquifer, shall be two feet per gallon per minute (2 ft / gpm) of average annual production rate or capacity from a permitted or registered well in the same aquifer formation that is in the District or is being applied for to the District by the applicant.

**(c) Spacing for New Non-Exempt Wells in the Brazos River Alluvium**
The TDLR well-spacing regulations required by 16 Texas Administrative Code Section 76.100, as amended, apply to all non-exempt wells screening the Brazos River Alluvium Aquifer, except that no well may be drilled less than fifty (50) feet from the adjacent property lines.

**(d) Spacing for New Exempt Domestic and Livestock Wells**
The TDLR well-spacing regulations required by 16 Texas Administrative Code Section 76.100, as amended, apply to all exempt domestic and livestock wells drilled in the District, except that no well may be drilled less than fifty (50) feet from the adjacent property lines.

**(e) Spacing for Mining Wells**
District spacing requirements do not apply to mining related water wells under a permit issued by the Railroad Commission of Texas under Chapter 134, Natural Resources Code.

**RULE 6.2.     <u>EXCEPTIONS TO SPACING REQUIREMENTS</u>**

Well spacing of new non-exempt wells completed in the District are exempted from complying with Rule 6.1(b)(3),(4) from permitted wells completed in the same aquifer, to the extent that the spacing does not allow the new well owner to produce their Production Based Acreage under Rule 7.1(c).

11

*Last Amended October 9, 2025*

**SECTION 7.  PRODUCTION LIMITATIONS**

**RULE 7.1.  MAXIMUM ALLOWABLE PRODUCTION**

To minimize as far as practicable the drawdown of the water table and the reduction of artesian pressure, to control subsidence, to prevent interference between wells, to prevent degradation of water quality, and to address the potential loss of opportunity to drill a new well because of spacing requirements, and to prevent waste, the District adopts the following Rules to regulate the production of groundwater:

**(a)    Availability Goal**

The District has adopted Availability Goals that are listed in the District's Certified Management Plan, for the following aquifer formations: the Brazos River Alluvium; the Carrizo-Wilcox, including the Simsboro Formation; the Queen City; the Sparta; and the Yegua- Jackson. The adopted Availability Goals are supported by the hydrogeological data of the Region G Water Planning Group, the Texas Water Development Board, and the District's hydrologist. The Availability Goals in the District's Certified Management plan shall reflect the Modeled Available Groundwater determined by the Texas Water Development Board pursuant to the adopted Desired Future Conditions for the District.

The adopted Availability Goals will be applied in reviewing permit applications. Groundwater production on new permit applications and increased use by historic users may be limited in accordance with the availability goal, as supported by the best available science, in a fair and impartial manner, regardless of type or location of use.

**(b)    Permitting Goal**

The District recognizes that in order to achieve the adopted Availability Goals, the District may authorize groundwater production that is greater than the Availability Goals. The increased production permitting limit is put into effect to achieve the Availability Goals and Desired Future Conditions, while acknowledging that some groundwater permits may have more authorized production than is currently being produced by permittees.

The District shall make a reasonable effort to not grant permit applications for more water production than is actually needed for beneficial use.

**(c)    Production Based Acreage**

A permit holder's groundwater production for a new non-exempt well drilled in all aquifers within the District, except the Brazos River Alluvium, is limited by the number of contiguous acres that are legally assigned to the well site. The contiguous acreage assigned to the well bears a reasonable reflection of the cone of depression impact near the pumped well, as based on the best available science and the required production based acreage. The assigned contiguous acreage will be a circle based on the amount of groundwater production determined by the following formula:

*Last Amended October 9, 2025*

$$\frac{\left(\begin{array}{ccc}\text{Average Annual} & & \text{District Spacing} \\ \text{Production Rate} & \text{X} & \text{Requirement} \\ \text{in Gallons/Minute} & & \text{Between Wells}\end{array}\right)^2 \text{X } \pi}{43{,}560} = \begin{array}{l}\text{Total number of} \\ \text{contiguous acres} \\ \text{required to be assigned} \\ \text{to the well site}\end{array}$$

(1) The average annual production capacity or rate is defined as the permitted annual production amount in acre-feet multiplied by 0.62 to equal gallons per minute of production on an average annual basis. The assigned contiguous acreage circle footprints under this formula for a new well registered or permitted by the District after September 14, 2023, shall not overlap between wells in the same aquifer.

(2) The maximum well pumping capacity denoted in gallons per minute in an operating permit does not mean that the well is authorized by the District to pump that maximum capacity on a year round basis. The authorized amount of water to be produced annually by a permittee is not tied to the pump size. The authorized withdrawal amount of groundwater is stated in each well permit as the rate of production, which authorizes a maximum gpm production, not to exceed a specified number of acre-feet of groundwater production each year.

(3) The permitted groundwater production capacity is also subject to the spacing requirements in Section 6, as well as the availability, production, and beneficial use limits in Section 7.

(4) This provision applies to new wells in the Simsboro Aquifer that did not meet the definition of an existing well as of December 2, 2004.

(5) This provision applies to permit applications for new wells to be drilled in the Queen City, Sparta, Yegua-Jackson, Calvert Bluff, Carrizo and Hooper aquifers that are deemed to be administratively complete after May 9, 2013.

(6) This requirement also applies to applications to amend a permit by increasing the annual production amount. If an existing permit is amended to increase the annual production amount, then the entire permit must meet the production acreage rule in effect at the time that the administratively complete application is submitted for the permit amendment to increase the annual production.

**(d)    3300 gpm Production Limit**
All new wells within the District that are drilled in the Simsboro Formation, must be designed and equipped to not exceed a maximum production limit of 3300 gpm under normal operating conditions. The District will also adopt production limits for other aquifer formations within the District, as supported by the best available science.

**(e)    Beneficial Use**
Production limits on wells will be based on evidence of beneficial use submitted in Operating Permit applications. Wells intended to provide water to end users other than

*Last Amended October 9, 2025*

the applicant will require evidence of legal obligation to provide water to end users. The District shall verify the actual use of permitted wells by operating a well water level monitoring and well meter verification program at intervals that the District deems appropriate.

**(f)    Minimum Tract Size for Platted Tracts**
For a permit application submitted after October 9, 2025,  the minimum tract size of two (2) acres is required in order to be able to drill a water well on a tract of land within a subdivision for which a required plat under Chapter 232, Local Government Code, was approved after October 9, 2025.

**(g)    Instantaneous Production Limits for Smaller Tracts**
If an administratively complete permit application for a well is submitted to the District after October 9, 2025, on a tract of land that is less than ten (10) acres, then the applicant is limited to one well with a pump capability not to exceed twelve (12) gallons per minute (GPM). The capability of the pump installed on the well shall be verified by the District. The well is not required to be metered.

**RULE 7.2.    <u>ACTIONS BASED ON AQUIFER RESPONSE TO PUMPING</u>**

(a)    The District shall use its well monitoring program, commencing on November 1, 2015, to assess aquifer levels in the District and the effects caused by groundwater production to enforce the District's adopted Desired Future Conditions of the aquifers and to conserve and preserve groundwater availability and protect groundwater users and groundwater ownership and rights. The District shall, if applicable, use Texas Water Development Board-collected data prior to and after November 1, 2015.

(b)    The District shall adopt threshold average aquifer drawdown amounts that will be used to initiate groundwater management responses that will be implemented to enforce the District's adopted Desired Future Conditions of the aquifers and to conserve and preserve groundwater availability and protect groundwater users and groundwater ownership and rights.

(c)    **<u>Standard Actions to Enforce DFCs</u>**.  Prior to approaching the initial adopted DFC Threshold, the District shall follow the below-listed actions to monitor aquifer levels; regulate, educate, and promote water conservation; and enforce the Desired Future Conditions of the aquifers:
(1) monitor groundwater production reports, with random meter checks;
(2) permit and register wells according to District Rules;
(3) Monitor groundwater production in adjoining GCDs coordinating responses as needed;
(4) Promote and require conservation and administer conservation credit program, once developed and approved;
(5) prepare an annual report on groundwater production and aquifer water-level trends and changes; and

*Last Amended October 9, 2025*

(6) develop and implement a scientifically valid procedure to determine and monitor long term aquifer drawdown trends developing responses as needed.

(d) The District shall initially adopt three threshold average aquifer drawdown levels to act as triggers to provide for increased levels of District regulatory responses based on the change in three (3) consecutive years average aquifer drawdown levels across the District for an aquifer. The District shall monitor how rapidly each threshold is achieved and amend or add new thresholds as better hydrological assessment data becomes available. The initial DFC threshold levels are:  Level 1, Level 2, and Level 3. Each level will be based on an average of three (3) consecutive years immediately prior to reaching the trigger. The District-approved methodology to calculate the District-wide average aquifer drawdown and the protocol to measure static water levels shall be adopted through the District's rulemaking procedures in Section 14 of the District's Rules.

(1) **DFC Threshold Level 1**.  If Threshold Level 1 is reached, additional study and monitoring may be undertaken as appropriate at such time as the average aquifer drawdown on a District-wide basis, calculated with a District-approved methodology for an aquifer, is greater than **65 percent** of the average aquifer drawdown amounts adopted as a DFC for that aquifer in Section 5 of the Management Plan. The following District actions shall occur to enforce the Desired Future Conditions of the aquifers and to conserve and preserve groundwater availability and protect property rights of landowners and groundwater users:

(A) Adopt a Study Area(s) for an Aquifer(s). Based on the best available science, the District may designate Study Areas for portions of an aquifer within the District that are experiencing significant drawdowns of the aquifer levels, which may be caused by concentrated groundwater pumping, and develop additional hydrological data and analysis of the causes of the drawdown and hydrological trends developing and make recommendations for appropriate action.

(B) Monitor aquifer water levels.

(C) Monitor groundwater production in adjoining GCDs.

(D) Prepare an annual report on groundwater production and aquifer water-level and drawdown changes.

(E) Monitor groundwater production reports, with mandatory, if judged necessary by the District, meter checks on all permitted wells in the study area(s).

(F) Promote and require conservation and administer conservation credit program, once developed and approved.

(G) If DFC Threshold Level 1 is exceeded, the district may perform studies to provide additional information on the hydrogeology in the area. The results may be used to improve the Groundwater Availability Models and other methodologies used to analyze monitoring and pumping data and predict future aquifer response and groundwater availability.

(2) **DFC Threshold Level 2**.  If DFC Threshold Level 2 is reached, a District review of the Management Plan, Rules and Regulations may be initiated at such time as the

average aquifer drawdown over the district calculated with a district approved methodology for an aquifer is greater than **80 percent** of the average aquifer drawdown amounts adopted as a DFC for that aquifer in Section 5 of the Management Plan. The following District actions shall occur to enforce the Desired Future Conditions of the aquifers and to conserve and preserve groundwater availability and protect groundwater users and groundwater ownership and rights:

(A)     <u>Consider Adoption of Depletion Management Zone(s) for the Aquifer(s).</u> Based on the best available science, the District may designate Depletion Management Zones in areas of the District that are experiencing significant drawdowns of the aquifer levels, which may be caused by concentrated groundwater pumping. Within designated Depletion Management Zones, the District may adopt appropriate production limitations to alleviate the substantial stress on the aquifer(s). Management strategies within the designated Depletion Management Zones may include, but are not limited to, a reduction in groundwater production of existing and future permits and increased well spacing requirements. Amendments to permits due to <u>Depletion Management Zone(s)</u> curtailment will be subject to permit hearing procedures in Section 14 of the District's Rules.

(B)     Monitor aquifer water levels.

(C)     Promote/require conservation and administer conservation credit program, once developed and approved.

(D)     Monitor groundwater production reports, with mandatory meter checks on all permitted wells in management zone.

(E)     Monitor groundwater production in adjoining GCDs.

(F)     Prepare annual report on groundwater production and rate of aquifer water-level changes.

(G)     Evaluate need for curtailment of groundwater production as average water-level decline reaches 80 percent of DFC or is trending to exceed DFC.

(H)     If Threshold Level 2 is exceeded, the district shall reevaluate the monitoring program, pumping inventory and response of the aquifers to pumping, both inside and outside the district. Revisions to the DFCs could be considered as part of the Joint Planning Process of the Groundwater Management Area 12. The District shall conduct a public hearing to discuss the status of the aquifer or aquifers and develop a response plan focused on achieving the district's goals and objectives, including not exceeding the DFCs. The response plan should be completed within 6 months after the first public hearing and should be available to the public through the District's website.

(3) **DFC Threshold Level 3**.  If DFC Threshold Level 3 is reached, the Board shall consider amendments to the Management Plan, Rules and Regulations at such time as the average aquifer drawdown over the District for an aquifer, calculated with a district approved methodology, is greater than **90 percent** of the average aquifer drawdown amounts adopted as a DFC for that aquifer in Section 5 of the Management Plan. The following District actions shall occur to enforce the Desired Future Conditions of the aquifers and to conserve and preserve groundwater availability and protect groundwater users and groundwater ownership and rights:

(A) <u>Consider Adoption of Depletion Management Zone(s) for the Aquifer(s).</u> Based on the best available science, the District may designate Depletion Management Zones in areas of the District that are experiencing significant drawdowns of the aquifer levels, which may be caused by concentrated groundwater pumping. Within designated Depletion Management Zones, the District may adopt specific production limitations to alleviate the substantial stress on the aquifer(s). Management strategies within the designated Depletion Management Zones may include, but are not limited to, a reduction in groundwater production of existing and future permits and increased well spacing requirements. Amendments to permits due to Depletion Management Zone(s) curtailment will be subject to permit hearing procedures in Section 14 of the District's Rules.

(B) Monitor aquifer water levels.

(C) Promote/require conservation and administer conservation credit program, once developed and approved.

(D) Monitor groundwater production reports, with mandatory meter checks on all permitted wells in management zone.

(E) Monitor groundwater production in adjoining GCDs.

(F) Prepare annual report on groundwater production and rate of aquifer water-level changes.

(G) Curtailment of groundwater production as average aquifer drawdown amounts reach 90 percent of DFC or it's trending to exceed DFC. The District shall curtail groundwater production under DFC Threshold Level 3 as follows:

   i.   All groundwater production shall be reduced at the same time.

   ii.  Groundwater production shall be reduced based on a pro rata formula to be determined by the Board by the time the DFC Threshold Level 3 is reached.

   iii. The pro rata formula will be applied to groundwater production on a different ratio, based on whether the permit is a historic or non-historic production permit. For example, historic permits may be curtailed by X% of production and existing non-historic permits may be curtailed by 2(X)% of production.

   iv.  Reductions to groundwater production will be based on actual production amounts and will be based on the maximum production from a well or aggregate of wells that has been put to beneficial use in any permitted year.

   v.   Singly permitted wells will be reduced based on the production from the single well. Wells permitted in aggregate will be reduced in aggregate.

   vi.  The groundwater production reduction formula may be increased or decreased by the Board, based on the aquifer response to achieve the District's adopted DFCs.

   vii. Groundwater production from registered exempt wells cannot be reduced by the Board, per existing law at the time of the adoption of this rule (January 14, 2016).

   viii. Permitting New Wells after Curtailment. New wells will be permitted pursuant to District Rules, including but not limited to Sections 6 and 7.

17

*Last Amended October 9, 2025*

The permit amount will be immediately reduced by the total amount of curtailments that have already occurred within non-historic permits. Upon completion and equipping of the well, the permit holder has one (1) year to provide evidence of beneficial use, which will then become the basis for the curtailment amount, pursuant to (G)(iv) above.

ix.   If Threshold Level 3 is exceeded, the District shall conduct a public hearing to discuss the status of the aquifer or aquifers and develop a response plan focused on achieving the district's goals and objectives, including not exceeding the DFCs.  The response plan should be completed within six (6)

months after the first public hearing and should be available to the public through the District's website.

Groundwater reductions that result from entering DFC Threshold Level 3 may be reinstated if aquifer levels rise and the average drawdown amount is less than 90% of the adopted DFC.

## RULE 7.3.   DISTRICT RULES VOID
In the event political subdivisions are not bound by District rules or do not follow our rules, pursuant to a court ruling, then the District's Rules are void and not applicable to the private sector.

## SECTION 8.   REGISTRATION AND PERMITTING

## RULE 8.1.   EXCLUSIONS AND EXEMPTIONS
The permit requirements in Section 8 do not apply to:

(a)   All groundwater wells in Brazos and Robertson counties used solely for domestic use or for providing water for livestock or poultry that are either drilled, completed, or equipped so that they are incapable of producing more than 50,000 gallons of groundwater per day (35 gallons per minute). Additionally, after October 9, 2025, a new exempt well may only be allowed on a tract of land that is ten (10) acres are larger, with only one exempt well for every ten (10) acres.

(b)   All groundwater wells in Brazos and Robertson counties used for a beneficial use other than domestic use or providing water for livestock or poultry that are either drilled, completed, or equipped so that they are incapable of producing more than 25,000 gallons of groundwater per day (17 gallons per minute). Additionally, after October 9, 2025, a new exempt well may only be allowed on a tract of land that is ten (10) acres are larger, with only one exempt well for every ten (10) acres.

(c)   A groundwater well drilled or operated within the District under a permit issued by the Railroad Commission of Texas is under the exclusive jurisdiction of the Railroad Commission and is exempt from regulation by the District.

(1)   Groundwater produced in an amount authorized by a Railroad Commission permit

may be used within or exported from the District without a permit from the District.

(2) To the extent groundwater is produced in excess of Railroad Commission authorization, the holder of the Railroad Commission permit must apply to the District for the appropriate permit for the excess production and is subject to the applicable regulatory fees.

(3) Groundwater produced from a well under the jurisdiction of the Railroad Commission is generally exempt from District fees. However, the District may impose either a pumping fee or an export fee on groundwater produced from an otherwise exempt mine well that is used for municipal purposes or by a public

utility. Any fee imposed by the District under this subsection may not exceed the fee imposed on other groundwater producers in the District.

(d) A groundwater well drilled for temporary use to supply water for a rig that is actively engaged in drilling a groundwater production well permitted by the District.

(1) The District may cancel a previously granted exemption and may require an operating permit for or restrict production from a well and assess any appropriate fees if the groundwater withdrawals that were exempted under Subsection (b)(4) are no longer used solely to supply water for a rig that is actively engaged in drilling a groundwater production well permitted by the district.

(2) An exemption for a well described by (c) may not exceed 180 days. The District may grant an extension of the exemption until the well is complete.

(e) A well used to supply water for a subdivision of land for which a plat approval is required by Chapter 232, Local Government Code, is not exempt under this Rule and must comply with Rules 7.1(f) and (g).

## RULE 8.2.    REGISTRATION OF EXEMPT WELLS

(a) All water wells exempt under Rule 8.1 from the requirement to obtain a permit must be registered with the District by the well owner or the well operator in order to be protected by the District, as authorized by Chapter 36 of the Texas Water Code. If the exempt well is in existence on the effective date of these Rules, the well owner or operator should file with the District on form(s) prescribed by the General Manager an application for Certificate of Registration. Existing exempt wells will be registered in accordance with the application schedule adopted by the District. After review and determination by the General Manager that the well is exempt, the owner or operator shall be issued a Certificate of Registration. No fee will be charged for the registration of exempt wells.

(b) For a new well that is exempt under Rule 8.1, a well registration form must be submitted to the District prior to the well being drilled. The applicant and/or the well driller violate

the District's Rules and Chapter 36, Texas Water Code, by drilling or causing to be drilled, a well(s) without prior authorization from the District;

(c)    New exempt water wells shall be equipped and maintained so as to conform to the District's Rule 12.3 requiring installation of casing, pipe, and fittings to prevent the escape of groundwater from a groundwater reservoir to any reservoir not containing groundwater and to prevent the pollution or harmful alteration of the character of the water in any groundwater reservoir.

## RULE 8.3.  <u>**PERMITTING OF NON-EXEMPT WELLS**</u>

(a)    <u>Drilling Permit</u>. No person, including a well owner or well driller, shall construct or drill a new well without first obtaining a drilling permit. A permit is required for drilling all groundwater wells that are not exempt, including but not limited to: agricultural irrigation, industrial, public water supply, and oil and gas production, including hydraulic fracturing wells. An application for a drilling permit shall accompany an operating permit application for the same well(s), and must be completed in accordance with Rule 8.4. Removed paragraph 2 regarding District's processing of permit applications the first six months after initial District Rules were adopted in 2005.

(b)    <u>Operating Permit</u>.

    (1)    No person shall modify, alter or operate a new well without an operating permit, unless the well is exempt under Rule 8.1.

    (2)    After the adoption of these Rules, the District will adopt a schedule by which all well operators must submit their applications for an operating permit. After the established deadline for filing applications for operating permits for an existing non-exempt well has passed, no person shall operate an existing well unless an application is pending with the District or has been granted.

    (3)    Except as provided by Rule 11.1(a), no person shall modify or alter an existing well or alter the size of a pump without an operating permit, unless the well is exempt under Rule 8.1.

(c)    Before granting or denying a drilling and/or operating permit for a well, or permit amendment under §36.1146, the District shall consider whether:

    (1)    the application conforms to the requirements prescribed by these Rules and Chapter 36, Texas Water Code, and is accompanied by the prescribed fees, and is therefore Administratively Complete;

    (2)    the applicant violated the District's Rules and Chapter 36, Texas Water Code, prior to submitting its application to the District by either drilling or operating a well(s) without a permit;

    (3)    the proposed use of water unreasonably affects existing groundwater and surface water resources, existing permit holders, or wells that are registered with the District and exempt from the requirement to obtain a permit under District rules;

    (4)    the proposed use of water is dedicated to an actual beneficial use and whether

20

        sufficient evidence of an intended actual beneficial use is presented, including evidence of legal obligation to provide water to end users, other than the applicant;

(5)     the proposed use of water is consistent with the District's Certified Water Management Plan, including the District's Availability Goals;

(6)     the applicant and, if the applicant is not the end user, all subsequent users of he water, have agreed to avoid waste and achieve water conservation;

(7)     the applicant has agreed that reasonable diligence will be used to protect groundwater quality and that the applicant will follow well plugging guidelines at the time of well closure;

(8)     would not be otherwise contrary to the public welfare; and

(9)     this section does not apply to the renewal of an operating permit issued under §36.1145.

(d)     The District may impose more restrictive permit conditions on new permit applications and applications for increased use by historic users, provided that:

(1)     such limitations apply to all subsequent new permit applications and permit amendment applications to increase use by historic users, regardless of type or location of use;

(2)     such limitations bear a reasonable relationship to the existing District Management Plan; and

(3)     such limitations are reasonably necessary to protect existing use.

(e)     Permits and permit amendments may be issued subject to the Rules promulgated by the District and subject to terms and provisions with reference to the drilling, equipping, completion, or alteration, or operation of, or production of groundwater from, wells or pumps that may be necessary to prevent waste and achieve water conservation, minimize as far as practicable the drawdown of the water table or the reduction of artesian pressure, lessen interference between wells, or control and prevent subsidence.

(f)     Changes in the amount or rate of withdrawal or use of groundwater under a District permit may not be made without the prior approval of a permit amendment issued by the District.

(g)     <u>Historic Use</u>.  The District shall preserve historic or existing groundwater use in the District before the effective date of the District's Rules, to the maximum extent practicable, consistent with the District's Management Plan. Historic use of groundwater may only be preserved for the actual use of the water from a particular aquifer, and cannot be transferred to a different use and may not be withdrawn from a different aquifer. Therefore, changes in withdrawal and use of groundwater under a historic use operating permit may not be made without prior approval of the District, and such changes will jeopardize the historic use preservation. Evidence of historic use must be presented to the District before such use may be preserved. For agricultural irrigation wells, the District shall not grant over 2 acre-feet per irrigated acre as historic use absent actual evidence of production, providing that the applicant's well is capable of producing the requested withdrawal amount. Examples of the required evidence may be

21

well meters, fuel consumption records, and FSA records. For non-exempt wells in existence before the effective date of these Rules, an application for a historic use-operating permit must be submitted to the District by December 31, 2006.

Historic use operating permits may be amended by the District in the future with reference to the drilling, equipping, completion, or alteration, or operation of, or production of groundwater from, wells or pumps that may be necessary to prevent waste and achieve water conservation, minimize as far as practicable the drawdown of the

water table or the reduction of artesian pressure, lessen interference between wells, or control and prevent subsidence.

(h)    <u>Meters.</u>
All groundwater production from wells in the District is required to be metered, except for groundwater produced from domestic and livestock wells exempt under Rule 8.1(a) and wells in the Brazos River Alluvium Aquifer. The District maintains the discretion to require meters on wells in the Brazos River Alluvium Aquifer.

(1)    The accurate reporting and timely submission of pumpage and/or transported volumes is necessary for the proper management of water resources. Proper flow meter installation is essential to accurate water production data being measured. The permittee shall submit complete, accurate, and timely metered pumpage and transport reports as required by the District.

a.    The District may require permittees to calibrate flow meters for all permitted wells at regular intervals. Documentation of the calibration/verification for each flow meter shall be submitted to the District by July 1 of the required year, unless another date is approved by the General Manager.

Flow meters shall be calibrated at the following intervals:
(i)     Annual meter testing for wells permitted for more than 500 ac-ft/yr
(ii)    Testing every three years for wells permitted for 100-499 ac-ft/yr
(iii)   Testing every five years for wells permitted for less than 100 ac-ft/yr
(iv)   All meters on all non-exempt wells must be calibrated during the 2024 calendar year and verification of calibration submitted to the District.

b.    When required, each flow meter in permitted wells shall be tested for accuracy as installed in place and submit a certificate of the test results. The certificate shall be in a form acceptable to the District. Meters shall be tested by a third party qualified to measure meter accuracy and approved by the District General Manager. If the results indicate meter accuracy outside the range of 97% to 103% of the actual flow, then appropriate steps shall be taken by the well owner within 30 calendar days from the date of the test to recalibrate the meter to 100% of actual flow or repair or replace the water flow meter. Each meter shall be tested for accuracy on an annual basis. All testing equipment

must be calibrated at the require interval by an independent testing laboratory or company capable of accuracy verification.

(2) An entity holding a mining permit issued by the Railroad Commission of Texas under Chapter 134, Natural Resources Code, that authorizes the drilling of a water well shall report monthly to the district:

(1) the total amount of water withdrawn during the month;
(2) the quantity of water necessary for mining activities; and
(3) the quantity of water withdrawn for other purposes.

(3) To promote groundwater conservation, a permittee that has been issued a production permit from the District may opt to reuse groundwater from another well that is produced under a permit within the jurisdiction of the Texas Railroad Commission, instead of producing groundwater from the permittee's District-permitted well(s). The primary use of the water must be as authorized by the Railroad Commission permit, and the secondary use of that water must be reused from the primary groundwater production, without first being discharged into a watercourse other than a retention pond.

    A. If a District permittee chooses to conserve groundwater through the secondary use of Railroad Commission-permitted production, then the District permittee shall report the amount of groundwater used, and indicate whether the metered production is from its District-permitted well(s) or from the reuse of the Railroad Commission-permitted well(s).

    B. The District acknowledges that the District permittee's secondary reuse of the Railroad Commission-permitted water may end at any time, therefore, the District permittee's use of that water shall be credited as actual and beneficial use towards the permittee's District-issued production permit(s).

(i)    <u>Permits Based on Modeled Available Groundwater</u>

(1) A district, to the extent possible, shall issue permits up to the point that the total volume of exempt and permitted groundwater production will achieve an applicable desired future condition under Section 36.108.

(2) In issuing permits, the district shall manage total groundwater production on a long-term basis to achieve an applicable desired future condition and consider:

(A) the modeled available groundwater determined by the Texas Water Development Board;

(B) the Texas Water Development Board's estimate of the current and projected amount of groundwater produced under exemptions granted by district rules and Section 36.117;

(C) the amount of groundwater authorized under permits previously issued by the district;

(D) a reasonable estimate of the amount of groundwater that is actually produced

under permits issued by the district; and

(E)  yearly precipitation and production patterns.

(j)  Pursuant to Section 36.114(b) and (c) of the Texas Water Code, the District by rule shall determine whether a hearing on a permit or permit amendment application is required and whether the authority to act on the application is delegated to the General Manager.

The General Manager is, therefore, authorized to grant and issue the following administratively complete permit applications and permit amendment applications without further notice, public hearing, nor action by the Board, and the Board hereby ratifies the General Manager's prior issuance of:

(1)  permits for groundwater production for 150 acre-feet per year or less, if the application meets the requirements of the District's Rules;

(2)  permits or permit amendments that:

(a)  the District deemed that the permit or permit amendment application(s) were administratively complete under the District's Rules;

(b)  the District provided notice(s) to the public of the permit or permit amendment application(s) under Rules 14.1 and 14.2 during the time period from January 1, 2021, to July 1, 2024; and

(c)  the District did not receive any written notices of intent to contest the permit or permit amendment application(s) under rule 14.3.5(a): and

(3)  permits for wells on smaller tracts under Rule 7.1(g).

The General Manager shall provide reports of the granted permits/permit amendments to the Board.

## RULE 8.4.  **APPLICATIONS**

(a)  Each original application for a certificate of registration, water well drilling permit, operating permit, transport permit, and permit renewal or amendment requires an application by the applicant. Applications for multiple wells may be combined if submitted by the same applicant. Each well on an application for multiple wells will be assigned an individual operating permit detailing production rate and total maximum annual production. Application forms will be provided by the District and furnished to the applicant by request. The District will hold hearing(s) on a permit application(s) in accordance with Section 14 of the District's rules.

(b)     An application shall be in writing and sworn and shall contain:
  (1) the name and mailing address of the applicant and the name and address of the owner of the land, if different from the applicant, on which the well is to be located;
  (2) if the applicant is not the owner of the property, documentation establishing the applicable authority to construct and operate a well on the owner's property for the proposed use;
  (3) the applicant must provide evidence that they have the legal authority to produce the groundwater associated with the land surface and the permit application, as required by Rule 7.1(c). The applicant must also provide any documents that transfers that right to own, control, or produce the groundwater rights to another person/entity that are associated with the land surface and the permit application, as required by Rule 7.1(c). A permit may be amended or revoked if the groundwater rights or right to produce, related to a permit under Rule 7.1(c), are legally transferred to another person/entity. The applicant shall attest to the information required in this rule by a District-provided affidavit form and submit the affidavit with the permit application. All legal document affecting the legal authority to produce groundwater on real property in Brazos and Robertson counties is required to be filed with the county deed records in full compliance with Chapter 12 of the Texas Property Code regarding the recording of instruments;
  (4) for exempt wells, a statement regarding the basis for asserting that the well will be exempt under Rule 8.1;
  (5) a statement of the nature and purpose of the proposed actual use and the amount of water to be used for each purpose and any evidence supporting the authenticity of the intended actual beneficial use, including evidence of legal obligation to provide water to end users, as applicable;
  (6) except for exempt wells and operating permits for Existing wells based on historic use, availability of feasible and practicable alternative supplies to the applicant;
  (7) except for exempt wells, wells in the Brazos River Alluvium Aquifer, and wells not capable of producing more than 400 acre-feet/year:

  (A) in the case of wells capable of producing over 400 acre-feet/year but less than 800 acre-feet/year: an evaluation of the projected effect of the proposed withdrawal on the aquifer or any other aquifer conditions, or effects on existing permit holders or other groundwater users in the District;

  The evaluation report shall include the following:

  (1) The depth interval and water bearing zone proposed to be screened, the anticipated thickness of the water bearing zone, and whether the water bearing zone is anticipated to be in an unconfined or confined condition.
  (2) A table giving data on each registered or permitted well located within one mile of the well(s) and screening the same aquifer. The well table shall include the name of the well owner, well registration or permit

25

*Last Amended October 9, 2025*

number, casing and screen diameters and depth settings, total well depth, and aquifer screened. A map shall be provided showing the location of the well(s) at a scale no greater than one-inch equals 1,000 feet.

(3) An estimate of the drawdown that can be caused by pumping the well(s) at the permitted rate for one year and ten years at a distance of up to five miles from the well(s). Water-level drawdown contours shall be shown at ten-foot contour intervals. The estimate can be developed using the Theis equation and aquifer transmissivity and storage coefficients in the most recent TWDB approved version of the Queen City Sparta GAM or TWDB Yegua-Jackson GAM, as applicable. Aquifer hydraulic data available from other sources and in proximity to the well(s) also can be considered in estimating the water-level drawdown effects of pumping.

(4) A table giving the estimated drawdown at the locations of existing registered and permitted wells contained in the BVGCD database that screen the same aquifer as the well(s) and are located within one mile of the well(s).

(5) After the well(s) is constructed the well owner shall provide the District, if available:
   a. A copy of the State of Texas Well Report
   b. A pdf of any geophysical logs run in the pilot hole drilled for the well
   c. A copy of any pumping test data for the well following construction
   d. A copy of chemical analyses completed on water samples collected from the well after construction and well development

(B) in the case of wells capable of producing 800 or more acre-feet/year: study shall be conducted by a registered professional engineer or geologist that has expertise in groundwater hydrology evaluating the projected effect of the proposed withdrawal on the aquifer or any other aquifer conditions, or effects on existing permit holders or other groundwater users in the District. Five paper copies and an editable pdf copy of the report shall be submitted with the permit application.

The evaluation report shall include the following:

(1) A description of the hydrogeologic conditions in proximity to the well(s) that includes:

   a. the surface geology
   b. the depth interval of the proposed water bearing zone
   c. the anticipated thickness of the water bearing zone
   d. a statement of whether the water bearing zone is anticipated to be in unconfined or confined condition
   e. a description of any hydrologic features or geologic features

26

*Last Amended October 9, 2025*

located within one mile of the proposed well(s) site(s),

(2)  A well table giving data on each registered or permitted well located within one mile of the well(s) and screening the same aquifer. The well table shall include the name of the well owner, well registration or permit number, casing and screen diameter and depth settings, total well depth, and aquifer screened. A map shall be provided showing the location of the well(s) giving the well registration or permit number at a scale no greater than one-inch equals 1,000 feet.

(3)  An estimate of the  water-level or artesian head drawdown that can be caused by pumping the well(s) at the permitted rate for one year, ten years and twenty years  at a distance of five miles from the well(s) producing 3,000 or less acre feet per year and ten miles for well(s) producing more than 3,000 acre feet per year. Drawdown contours shall be shown at ten-foot contour intervals. The drawdown contours should be based on simulations that isolate the effects of the requested amount of pumping.  Applicant is advised to work with District staff regarding proposed volume and modeling methodology. The estimate of pumping effects shall be developed using the most recent TWDB approved version of the Queen City Sparta GAM or TWDB Yegua-Jackson GAM, as applicable. Aquifer hydraulic data available from other sources for wells located in proximity to the well(s) may be considered in estimating the water level drawdown effects of pumping. Include in the evaluation an estimate of the drawdown at the locations of existing registered and permitted wells contained in the BVGCD database that screen the same aquifer as the well(s) and are located within one mile of the well(s).This estimate shall be developed using an analytical tool approved by the District and the best available science concerning local aquifer properties such as transmissivity and storativity.

(4)   An evaluation regarding the effects production from the applied-for well(s), if permitted, could have on  applicable desired future condition(s) adopted by the District, considering:

    a.  the modeled available groundwater determined by TWDB;
    b.  the TWDB's estimate of the current and projected amount of groundwater produced under exemptions granted by District rules;
    c.  the comparison of the average drawdown within the boundaries of BVGCD based on the most recently approved GMA 12 Run and the most recently approved GMA 12 Run plus the proposed well pumping.

27

(5)    After the well(s) is constructed the well owner shall provide the District, if available,

    a. A copy of the State of Texas Well Report
    b. A pdf copy of any geophysical logs run in the pilot hole for the well
    c. A copy of any pumping test data for the well following construction

    d. A copy of chemical analyses performed on water samples collected from the well following construction and well development

(C) the District may adopt a guidance document to specify the required contents of the hydrogeological evaluation or report.

(D) for a single well application, an applicant may request that the District engage its hydrologist to complete the required report specified in this subsection. The District has complete discretion to accept or deny the applicant's request. If the District does agree to have its hydrologist perform the report, then the applicant is required to pay for the District's actual costs of conducting the hydrogeological study. The District's hydrologist will not perform a report for a multiple well application or for multiple single-well applications that are submitted less than 24 months apart.

(E) A permittee that applies for an amendment to an existing permit seeking to increase the allowable production to 800 ac-ft/yr or more, must submit a hydrogeological study under (B), above, with their amendment application.

A permittee that applies for an amendment to increase an existing permit that currently has allowable production of 800 ac-ft/yr or more shall submit a new hydrogeological study under (B), above, if the requested amendment increases the annual production by 20% or more.

(8)    the applicant's water conservation plan and, if any subsequent user of the water is a municipality or entity providing retail water services, the water conservation plan of that municipality or entity shall also be provided along with a copy of the contract between the applicant and any subsequent user of the water, indicating that the applicant and that municipality or entity will comply with the District's Conservation Plan.

(9)    the location of the well(s) and the estimated rate at which water will be withdrawn and where the water is proposed to be used the District may access the well location and take GPS coordinates and photographs, in compliance with District Rule 15.1;

*Last Amended October 9, 2025*

(10) a well closure plan or a declaration that the applicant will comply with well plugging guidelines and report closure to the applicable authorities, including the District;

(11) The identity of the well driller, including the well driller's license number; and,

(12) Except for wells and wells in the Brazos River Alluvium Aquifer formation, the applicant shall send a certified letter of notification to all landowners and/or registration/permit holders that are located within the spacing-requirement circumference of the applied-for well(s). A copy of the landowner letters and proof that it was sent certified mail shall be submitted with the application.

The applicant shall also publish in a newspaper of general circulation in Brazos and Robertson counties a legal notice of the application. A copy of the publisher's affidavit showing publication of the notice shall also be submitted with the application.

The letter and published notices must include:
  (A) the name of the applicant;
  (B) the address or approximate location of the well or proposed well;
  (C) a brief explanation of the proposed permit or permit amendment, including any requested amount of groundwater, the purpose of the proposed use, and any change in use;
  (D) the contact information of the applicant and the District.

## RULE 8.5.  OPERATING PERMIT TERM AND RENEWAL

(a) Permit Renewal Application Deadline – An application to renew permits must be made within fourteen (14) calendar days prior to the last scheduled Board meeting before the expiration of the permit. If an application to renew a permit is not received during this time, the permit may lapse and the well owner may be subject to penalty if the well is operated without a valid permit. Once the permit has lapsed, the landowner or well owner may have to apply for a new operating permit.

(b) Duration of Permit – All operating permits and permit renewals are effective for a term of five (5) years from the date a permit is granted, unless granted a one (1) year term under Rule 8.3(j), or otherwise stated on the permit. Except, an operating permit for a well or well site will automatically expire three years from its issuance if the permitted well(s) has not been completed.  A well is completed when it has been drilled and constructed to permit specifications, had a pumping test performed, and a well report submitted to the District and the state.

(1) Permitted Authorized Production Fee
If the well is not completed within three years from the issuance of the initial permit, permittee may opt to retain its permit for the duration of the initial permit term and

avoid immediate permit expiration of the permit by paying fees for the well(s), based on the highest authorized permitted amount, as specified in the District's annually adopted fee schedule. If the well is then not completed by the end of the initial five-year permit term, the permit shall expire.

(2) Permitted Production Fee
Once the well has been completed, water use fees associated with the well permit(s) will be applicable, as specified in the District's annually adopted fee schedule.

(3) A well(s) that has not been completed within its initial permit term as of September 14, 2023, shall be allowed until September 14, 2026, to complete the initially-permitted well(s), and may have the option for the one-time additional extension, listed in (1) above, to pay the Permitted Authroized Production fee. The initial permit shall expire if the well(s) is not completed by September 14, 2026, or if paying the Permitted Authorized Production Fee extension, in (1) above, the initial permit shall expire if the well(s) is not drilled by September 14, 2028.

(c) Processing Fee – The application to renew a permit shall be accompanied by payment of the application processing fee established by the Board, if any.

(d) Decision on Renewal Application —

(1) Except as provided by Subsection (ii), the District shall without a hearing renew or approve an application to renew an operating permit before the date on which the permit expires, provided that:

(A) the application is submitted in a timely manner and accompanied by any required fees in accordance with District rules; and
(B) the permit holder is not requesting a change related to the renewal that would require a permit amendment under District rules.

(2) The District is not required to renew a permit under this section if the applicant:

(A) is delinquent in paying a fee required by the District;
(B) is subject to a pending enforcement action for a substantive violation of a District permit, order, or rule that has not been settled by agreement with the District or a final adjudication; or
(C) has not paid a civil penalty or has otherwise failed to comply with an order resulting from a final adjudication of a violation of a District permit, order, or rule.

(3) If the District is not required to renew a permit under Subsection (2)(B), the permit remains in effect until the final settlement or adjudication on the matter of the substantive violation.

(4)  (A)  If the holder of an operating permit, in connection with the renewal of a permit or otherwise, requests a change that requires an amendment to the permit under District rules, the permit as it existed before the permit amendment process remains in effect until the later of:

  (i)  the conclusion of the permit amendment or renewal process, as applicable; or

  (ii) final settlement or adjudication on the matter of whether the change to the permit requires a permit amendment.

(B)  If the permit amendment process results in the denial of an amendment, the permit as it existed before the permit amendment process shall be renewed under Section 36.1145 without penalty, unless Subsection (b) of that section applies to the applicant.

(C)  The District may initiate an amendment to an operating permit, in connection with the renewal of a permit or otherwise, in accordance with the District's rules.  If the District initiates an amendment to an operating permit, the permit as it existed before the permit amendment process shall remain in effect until the conclusion of the permit amendment or renewal process, as applicable.

## RULE 8.6.  AGGREGATION OF ANNUAL PRODUCTION

In issuing an operating permit, the authorized annual production for a given well may be aggregated with the authorized annual production from other permitted wells within the same aquifer that are designated by the District, at the discretion of the District. Applicable spacing requirements and production allowances will be considered in determining whether or not to allow aggregation of annual production. A well owner with a number of wells that supply a single well system may apply for operating permits for the well system without being required to submit separate operating permit applications for each individual well. If granted by the District, each individual well will be issued an individual operating permit that authorizes an annual production amount pursuant to the applicable provisions of Rule 7.1, which will cross-reference the other operating permits to which it will be aggregated. The approved operating permits' wells may be produced in aggregate for the annual production acre-feet/year limit for the wells. Application fees apply to each requested aggregated well.

## RULE 8.7.  OPERATING PERMIT PROVISIONS

(a)  After construction  and testing of the well(s), provide well pumping test results within 60 days of the date construction is completed to include the aquifer testing data and evaluation. In general, the well pumping test shall consist of a phase where the static water level of the well(s) is measured at least every 15 minutes for at least 6 hours prior to a test, a constant pumping phase of not less than 16 hours, and a recovery phase of at least 6 hours during which the static water level  is measured on a regular basis in the well(s), unless an alternative pumping test schedule is proposed by the applicant and found acceptable by the BVGCD. The pumping test required for new public supply well(s) constructed under the rules and regulations of the TCEQ also is an acceptable test.  The well(s) shall be equipped

*Last Amended October 9, 2025*

for the pumping test to produce water at a rate similar to its ultimate planned use, and the evaluation shall address the water-level drawdown effects of pumping after one year and ten years of pumping over the area that extends five miles from the well(s). The Board shall have the option of reviewing the permit conditions based on best available science including the results of the pumping test that provides data regarding the aquifer hydraulic properties in the vicinity of the well(s).

(b)   All permits are granted subject to these Rules, orders of the Board, and the laws of the State of Texas. In addition to any special provisions or other requirements incorporated into the permit issued by the District, each permit issued shall contain the following standard permit provisions:

This permit is granted in accordance with the provisions of the Rules of the District, and acceptance of this permit constitutes an acknowledgment and agreement that the permittee will comply with the Rules of the District.

(1)   This permit is granted in accordance with provisions of the Rules of the District, and acceptance of this permit constitutes an acknowledgment and agreement that the permittee will comply with the Rules of the District.

(2)   This permit confers only the right to operate the permitted well under the provisions of the District Rules and its terms may be modified or amended pursuant to the provisions of those rules. To protect the permit holder from the illegal use of a new landowner, within ten (10) days after the date of sale of property containing a well having been issued an operating permit, the operating permit holder must notify the District in writing of the name of the new owner. Any person who becomes the owner of a currently permitted well must, within forty-five (45) calendar days from the date of the change in ownership, file an application for a permit amendment to affect a transfer of the permit.

(3)   The operation of the well for the authorized purposes must be conducted in a non-wasteful manner.

(4)   All groundwater production from non-exempt wells in the District is required to be metered, except for the groundwater produced from wells in the Brazos River Alluvium Aquifer. The District maintains the discretion to require meters on wells in the Brazos River Alluvium Aquifer. Permittee shall maintain records of withdrawal on the property where the well is located or at its business office, and shall make those records available to the District for inspection. The Permittee shall submit complete, accurate, and timely metered pumpage and transport reports to the District annually, as requested by the District, no later than February first (1st) of each year.

(5)   The well site must be accessible to District representatives for inspection, and the permittee agrees to cooperate fully in any reasonable inspection of the well and well site by the District representatives.

(6)   The application pursuant to which this permit has been issued is incorporated

32

*Last Amended October 9, 2025*

in this permit, and this permit is granted on the basis of and contingent upon the accuracy of the information supplied in that application. A finding that false information has been supplied is grounds for immediate revocation of the permit.

(7)    Violation of this permit's terms, conditions, requirements, or special provisions, including pumping amounts in excess of authorized withdrawal, is punishable by civil penalties as provided by the District Rule 15.3, as well as revocation of the permit.

(8)    The permittee will use reasonable diligence to protect groundwater quality and will follow well-plugging guidelines at the time of well closure.

(9)    The issuance of this Permit does not grant to Permittee the right to use any private property, or any public property, for the production or conveyance of water. [This permit language does not prohibit a permit holder from selling groundwater if they have the legal right to do so.] Neither does this permit authorize the invasion of any personal rights nor the violation of any federal, state, or local laws, rules or regulations. Further, the District makes no representations and shall have no responsibility with respect to the availability or quality of water authorized to be produced under this permit.

(10)    Well Asisstance Agreement. A permittee may enter into an agreement with the District to mitigate the drawdown of the water table, the reduction of artesian pressure, and/or the interference between wells, if supported by hydrological evidence and approved by the Board. A Well Assistance Agreement may be a permit provision.

(11)    All groundwater production from non-exempt wells in the District is required to be metered and meters are to be calibrated at the time of installation and at regular intervals thereafter. The frequency of calibration is based on the total maximum annual production on each permitted well as follows:

    (i)    Annual meter calibration for wells permitted for 500 acre feet of more per year.
    (ii)    Calibration every three (3) years for wells permitted for 100-499 acre feet per year.
    (iii)    Calibration every five (5) years for wells permitted for less than 100 acre feet per year.

(12)    The permittee has provided evidence that they have the legal authority to produce the groundwater associated with the land surface and the permit application. The permittee must also provide any documents that transfer that right to own, control, or produce the groundwater rights to another person/entity that are associated with the land surface after the permit has been granted. The permit may be amended or revoked if the groundwater rights or right to produce related to a permit are legally transferred to another person/entity in a manner that affects the number of contiguous acres legally assigned to a well site, as used in calculating a well's production under Rule 7.1(c).

*Last Amended October 9, 2025*

### RULE 8.8.  **OPERATING PERMIT LIMITATIONS**

(a)    Maximum Authorized Withdrawal.  It is a violation of these Rules to withdraw any amount of water over the authorized permit limits or for an unauthorized purpose.

(b)    Operating Permit Required.  It is violation of these Rules to withdraw groundwater from a non- exempt well without an operating permit from the District, except as provided by Rule 8.3 (b)(2).

### RULE 8.9.  **PERMIT AMENDMENTS**

(a)    Permit Amendment Increasing Authorized Withdrawal or Change Permitted Use.  A written, sworn application for a permit amendment to increase the authorized withdrawal or change the permitted use must be filed and an amendment granted before any over pumpage occurs.

  (1)    Submission of application.  An applicant for a permit amendment increasing the authorized withdrawal must demonstrate that the increased amount of withdrawal will be put to a beneficial use, and is consistent with the District's Rules and Certified Management Plan.

  (2)    Action on amendment.  Applications shall be considered by the Board, provided that the General Manager may rule on the first application for an amendment to an operating permit for an increase in total groundwater production up to, but not exceeding, 20 percent of the initially authorized total production amount without notice, hearing, or further action of the Board. Thereafter, such applications shall be considered by the Board.  Once a ruling is made by the General Manager, notice of the ruling shall be served upon the applicant. Any applicant may appeal the General Manager's ruling by filing a written request for hearing within ten (10) business days of the date of service of the General Manager's decision. If a written request for a hearing is filed, or if the applicant seeks an increase greater than 20 percent of the initially authorized total production amount, notice shall be issued and a hearing conducted in the manner prescribed for operating permit issuance.

  (3)    If an existing permit is amended to increase the annual production amount or change the permitted use, then the entire permit must meet the production acreage rule in effect at the time that the administratively complete application is submitted for the permit amendment to increase the annual production.

(b)    Amendment to Decrease Authorized Withdrawal. The General Manager may rule on any application for a permit amendment to decrease the authorized withdrawal. The General Manager may grant such amendment without notice, hearing, or further action by the Board.

34

(c)     <u>Amendment to Transfer Ownership of a Permit</u>. The General Manager may rule on any application for a permit amendment to transfer the ownership of any permit. The written, sworn application shall include a request to make the ownership change and show the authority for requesting the change. The General Manager may grant such an amendment without notice, hearing, or further action by the Board. While the application is pending, the new owner may continue to operate the well.

(d)     <u>Amendments to Permits to Correct Mistakes or Update Format.</u> The General Manager may reissue a permit or registration to correct errors or omissions in the permit. No changes may be made to a permit by the General Manager under this subsection that is inconsistent with Board action on a permit. The errors that may be corrected may include incorrect GPS coordinates, typographical errors, improper permit issuance dates or format, and misidentification of the screened aquifer. The General Manager may also update non-historic operating permits to comply with the most recently adopted permit form, providing that no substantive changes are made to the permit's substantive content and that the issuance date remains the same as the date it was acted on by the Board.

The correction of errors made to a historic permit does not affect the historic integrity of the originally issued historic permit. When correcting an error or omission in a historic permit, the General Manager may reissue a new historic permit, but it shall be in the same format as the original one. The new historic permit shall have a notation that states that the historic permit was corrected, the details and date of the correction, and a statement that the correction of the error does not affect the historic integrity of the originally issued historic permit. The General Manager shall timely send the corrected historic permit to the permit holder with a cover letter explaining the change and a copy of this rule. The original historic permit shall be permanently kept in the District's files and stamped in red at the top of the permit that it has been corrected and reissued with the correction date and that the first-issued permit is no longer valid.

(e)     <u>District-Initiated Amendments</u>. The District may initiate a permit amendment(s) to Permits with reference to the drilling, equipping, completion, alteration, or operation of, or production of groundwater from, wells or pumps that may be necessary to prevent waste and achieve water conservation, minimize as far as practicable the drawdown of the water table or the reduction of artesian pressure, including but not limited to enforce the adopted desired future conditions of the aquifer(s), lessen interference between wells, or control and prevent subsidence. District-initiated permit amendments are subject to notice and hearing under Rule 14. If the District initiates an amendment to an operating permit, the permit as it existed before the permit amendment process shall remain in effect until the conclusion of the permit amendment or renewal process, as applicable.

35

*Last Amended October 9, 2025*

**RULE 8.10.  <u>AQUIFER STORAGE AND RECOVERY PROJECTS</u>**

Pursuant to Subchapter N, Chapter 36, Texas Water Code:

(a) In this section, "aquifer storage and recovery project," "ASR injection well," "ASR recovery well," and "project operator" have the meanings assigned by Section 27.151.

(b) <u>Registration and reporting of wells.</u>

 A project operator shall:

 (1) register the ASR injection wells and ASR recovery wells associated with the aquifer storage and recovery project with the District;

 (2) each calendar month by the deadline established by the commission for reporting to the commission, provide the District with a copy of the written or electronic report required to be provided to the commission under Section 27.155; and

 (3) annually by the deadline established by the commission for reporting to the commission, provide the District with a copy of the written or electronic report required to be provided to the commission under Section 27.156.

(c) If an aquifer storage and recovery project recovers an amount of groundwater that exceeds the volume authorized by the commission to be recovered under the project, the project operator shall report to the District the volume of groundwater recovered that exceeds the volume authorized to be recovered in addition to providing the report required by Subsection (b).

(d) Except as provided by Subsection (c), a district may not require a permit for the drilling, equipping, operation, or completion of an ASR injection well or an ASR recovery well that is authorized by the commission.

(e) The ASR recovery wells that are associated with an aquifer storage and recovery project are subject to the permitting, spacing, and production requirements of the District if the amount of groundwater recovered from the wells exceeds the volume authorized by the commission to be recovered under the project.  The requirements of the District apply only to the portion of the volume of groundwater recovered from the ASR recovery wells that exceeds the volume authorized by the commission to be recovered.

(f) A project operator may not recover groundwater by an aquifer storage and recovery project in an amount that exceeds the volume authorized by the commission to be recovered under the project unless the project operator complies with the applicable requirements of the District as described by this section.

(g) <u>Fees and Surcharges</u>

 (1) The District may not assess a production fee or a transportation or export fee or surcharge for groundwater recovered from an ASR recovery well, except to the extent

36

that the amount of groundwater recovered under the aquifer storage and recovery project exceeds the volume authorized by the commission to be recovered.

(2)    The District may assess a well registration fee or other administrative fee for an ASR recovery well in the same manner that the District assesses such a fee for other wells registered with the District.

(h)    <u>Desired Future Conditions</u>

The District may consider hydrogeologic conditions related to the injection and recovery of groundwater as part of an aquifer storage and recovery project in the planning for and monitoring of the achievement of a desired future condition for the aquifer in which the wells associated with the project are located.

## SECTION 9.  <u>FEES AND DEPOSITS</u>

### RULE 9.1.    <u>WATER USE FEES</u>

Water use fees authorized under the District Act and Chapter 36, Texas Water Code, shall be paid to the District for water that may be withdrawn from non-exempt wells. The water use fee rate shall be established annually by Board resolution. Following issuance or amendment of an operating permit, the permit holder shall pay the District the assessed water use fee in accordance with Rule 9.3. For agricultural use, the Board may adopt by resolution a schedule setting a fee based upon irrigated acreage and crop grown. The District will review the account of any permittee changing the use of a well from non-exempt to exempt to determine if additional water use fees are due or if a reimbursement of water use fees is warranted. Reimbursements exceeding \$250 must receive Board approval.

(a)    Pursuant to the District Act, the water use fee may not exceed:

(1)    \$0.25 per acre-foot for water used for irrigating agricultural crops or operating existing steam electric stations; and

(2)    \$0.0425 per thousand gallons for water used for any other purpose.

(b)    The water use fees may be increased at a cumulative rate of up to three percent per year.

(c)    The District may impose a reasonable fee or surcharge for an export fee using one of the following methods, after a public hearing:

(1)    a fee negotiated between the District and the transporter; or

(2)    a rate not to exceed 20 cents for each thousand gallons, in addition to the District's production fee.

(A)    The maximum allowable rate the District may impose for an export fee or surcharge under (2) above, increases by three percent each calendar year.

37

*Last Amended October 9, 2025*

(B)    The District may use funds obtained from an increase in an export fee imposed after January 1, 2024 only for costs related to assessing and addressing impacts associated with groundwater development, including:

        (i)    maintaining operability of wells significantly affected by groundwater development, including wells located outside the District under an interlocal contract;

        (ii)    developing or distributing alternative water supplies;

        (iii)    conducting aquifer monitoring, data collection, and aquifer science.

(d)    The fees listed herein reflect the fees allowed by state law.  Actual fees are reflected in the district schedule of fees.

(e)    The  District is prohibited from using revenues obtained from export fees to prohibit the transfer of groundwater outside of the District, but may use export fees for paying expenses related to enforcement of Chapter 36 of the Texas Water Code or the District Rules.

(f)    The fees may be used to pay the cost of operating the District, including for any purpose consistent with the District's approved management plan, including, without limitation, making grants, loans, or contractual payments to achieve, facilitate, or expedite reductions in groundwater pumping or the development or distribution of alternative water supplies or to maintain the operability of wells significantly affected by groundwater development to allow for the highest practicable level of groundwater production while achieving the desired future conditions established under Section 36.108.

(g)    The above-listed fees may be based on:

(1)  the diameter of the casing used in constructing the well; or

(2)  the actual, authorized, or anticipated amount of water to be withdrawn from the well.

## RULE 9.2.  **APPLICATION, REGISTRATION, AND OTHER FEES**

The Board, by Order, shall establish a schedule of fees. The Board will attempt to set fees that do not unreasonably exceed the costs incurred by the District for performing the administrative function for which the fee is charged.

## RULE 9.3.  **PAYMENT OF FEES**

All fees are due at the time of application, registration, or permitting. The annual water use fee for a permit shall be paid in annual, quarterly, or monthly installments at the election of the permittee. Permittees whose annual water use fee is $200.00 or less are required to pay annually. New permittees electing to pay by installments shall make the first installment at the time of permit issuance with subsequent payments due as described below.

(a)      Annual water use fees shall be paid at the time of permit issuance and are subsequently due on the anniversary date each year following permit issuance.

(b)       Quarterly water use fee payments of four (4) equal installments shall be due on or before the fifth day of the month of September, December, March and June.

(c)      Monthly water use fee payments of twelve (12) equal installments shall be due on or before the fifth day of each month.

(d)      Payments received within the ten (10) days following the due date will not be subject to a late payment fee.  Thereafter, the late payment fees set forth in Rule15.7 shall be imposed.

(e)      All fees other than water use fees are due at the time of assessment and are late after ten (10) days.

## RULE 9.4.  TRANSPORT PERMIT PROCESSING

The Board, by Order, may adopt a processing fee for transport permits to cover all reasonable and necessary costs to the District for processing the application.

## RULE 9.5.  MINIMUM WATER USE FEES

The Board may, by Order, establish a minimum water use fee.

## RULE 9.6.  INSPECTION AND PLAN REVIEW FEES

The Board may, by Order, establish fees for: the inspection of wells, meters, or other inspection activities; plan reviews; special inspection services requested by other entities; or other similar services that require significant involvement of District personnel or its agents. Fees may be based on the amount of District time and involvement, number of wells, well production, well bore, casing size, size of transporting facilities, or amounts of water transported.

## RULE 9.7.  SPECIAL FEES

Wells drilled in aggregate, such as closed loop heat exchange wells, may qualify for reduced fees for review, registration, and inspection. The fee rate will be based on review and inspection time on a case-by-case basis.

## RULE 9.8.  EXCEPTIONS

If a regulated water utility is unable to pass through pumpage fees due to delay in obtaining regulatory approval, or in other unusual instances of hardship, the Board may grant exceptions and establish a payment schedule. Such exceptions shall be applied consistently.

## RULE 9.9.  EXCESS PUMPAGE FEES

The Board may, by Order, establish additional water use fees for any pumpage exceeding the permitted pumpage volume.

## RULE 9.10.  RETURNED CHECK FEE

The Board may, by Order, establish a fee for checks returned to the District for insufficient funds, account closed, signature missing, or any other problem causing a check to be returned by the District's depository.

### RULE 9.11.  ACCOUNTING FEE

The Board may, by Order, establish a fee for permittee-requested accounting of pumpage reports, water use fee payments, or other accounting matters pertaining to the permittee's account which the District does not routinely maintain in its accounting of a permittee's records. Should a District error be discovered, the accounting fee, if any, will be fully refunded. Permittee's may request one review of their account per fiscal year without charge.

### RULE 9.12.  WELL LOG DEPOSIT

The District shall require a Well Log Deposit for all wells drilled in the District, to be held by the District for return to the depositor if well logs are submitted to the District within sixty (60) days following surface completion of the well. The depositor will receive one-half the Well Log Deposit for well logs received by the District after the sixty (60) day period.

## SECTION 10.  TRANSFER OF GROUNDWATER OUT OF THE DISTRICT

### RULE 10.1.  PERMIT REQUIRED

Groundwater produced from a well within the District may not be transported outside the District's boundaries unless the Board has issued the well owner or operator a transport permit, except as provided within these Rules.

### RULE 10.2.  APPLICABILITY

(a)     A person proposing to transport groundwater out of the District must obtain a transport permit, in addition to a drilling/operating permit for a new well, or an operating permit for an existing well, to:

    (1)     increase, on or after March 2, 1997, the amount of groundwater to be transferred under a continuing arrangement in effect before that date; or

    (2)     transfer groundwater out of the District on or after March 2, 1997, under a new arrangement.

(b)     The District may not prohibit the export of groundwater if the purchase was in effect on or before June 1, 1997.

(c)     A transport permit for the transportation of water outside the District is not required for the transportation of groundwater that is part of a manufactured product, or the groundwater is to be used on property that straddles the District boundary line, or the groundwater is used within the existing contiguous service area of an existing retail public utility that straddles the District boundary line. Transportation of groundwater, created by the expansion of an existing retail public utility into counties that are not contiguous to the District, will require a transport permit.

*Last Amended October 9, 2025*

### RULE 10.3.   **APPLICATION**

An application for a transport permit must be filed in the District office and must include the information and studies required under Rule 8.4 for a drilling and/or operating permit, plus the following information:

(a)     the availability of water in the District and in the proposed receiving area during the period for which the water supply is requested, including the:

     (1)     location of the proposed receiving area for the water to be transported;

     (2)     information describing alternate sources of supply that might be utilized by the applicant and the groundwater user, and the feasibility and practicability of utilizing such supplies; and

     (3)     description of the amount and purpose of use in the proposed receiving area for which water is needed.

(b)     the projected effect of the proposed groundwater transport on aquifer conditions, depletion, subsidence, or effects on existing permit holders or other groundwater users within the District, including the Rule 8.4 information and studies and any proposed plan of the applicant to mitigate adverse hydrogeological impacts of the proposed transport of water from the District.

(c)     the approved Regional Water Plan and certified District Management Plan, including a description of how the proposed transport is addressed in any approved regional water plan(s) including the Region G Regional Water Plan and, the certified District Management Plan.

(d)     a technical description of the facilities to be used for transportation of water and a time schedule for any construction thereof, that will be used to establish the term of the transport permit, under Section 36.122 (i) of the Texas Water Code.

(e)     state the presently anticipated duration for the proposed transport of groundwater;

(f)     provide information showing what water conservation measures the applicant, and all subsequent users, have adopted, what water conservation goals they have established, and what measures and time frames are necessary to achieve the established water conservation goals; and

(g)     if and when the water is to be resold to others, provide a description of the applicant's and/or all subsequent resellers' service area, metering, leak detection and repair program for its water storage, delivery and distribution system, drought or emergency water management plan, and information on each subsequent customer's water demands, including population and customer data, water use data, water supply system data, alternative water supply, water conservation measures and goals, conjunctive use, and the means for implementation and enforcement of all applicable rules, plans, and goals.

### RULE 10.4.  HEARING AND PERMIT ISSUANCE

(a)    Applications for transport permits are subject to the hearing procedures provided by these Rules in Section 14. Applications and permits for transport permits are subject to the permitting provisions provided by these Rules in Sections 7 and 8.

(b)    In determining whether to issue, deny or condition a permit to transfer groundwater out of the District, the Board shall be fair, impartial, and nondiscriminatory and shall consider the permits considerations provided by these Rules in Sections 7 and 8, as well as the following factors when deciding whether to issue, deny, or impose conditions on a drilling, operating, or transport:

    (1)    the availability of water in the District and in the proposed receiving area during the period for which the water supply is requested as shown on the approved regional plan(s) for the area within the District and the proposed receiving area;

    (2)    the projected effect of the proposed transfer on aquifer conditions, depletion, subsidence, or effects on existing permit holders or other groundwater users within the District; and

    (3)    how the proposed transport is addressed in any approved regional water plan(s) including the Region G Water Plan and certified District Management Plan, including conditions limiting transport to volumes specifically identified in water management strategies orginating in aquifers subject to the District's permitting authority.

(c)    The District may not deny a transport permit based on the fact that the applicant seeks to transport groundwater outside of the District and may not impose more restrictive permit conditions on transporters than the District imposes on existing in-District users, unless:

    (1)    such limitations apply to all subsequent new operating permit applications and permit amendment applications to increase use by historic users, regardless of type or location of use;

    (2)    such limitations bear a reasonable relationship to the existing District Management Plan; and

    (3)    such limitations are reasonably necessary to protect existing use.

(d)    In addition to conditions provided by Section 36.1131, Texas Water Code, the operating permit to transport water out of the District shall specify:

    (1)    the amount of water that may be transferred out of the District;

    (2)    the period for which the water may be transferred, which shall be:

        (i)    at least three years if construction of a conveyance system has not been initiated prior to the issuance of the permit, and shall be automatically extended to the terms 30 years if construction of a conveyance system is begun before the expiration of the initial term; or

42

        (ii)    at least 30 years if construction of a conveyance system has been initiated prior to the issuance of the permit;

    (3)   reporting requirements, including but not limited
        (i)    to flow meter installation, testing, and regulation calibration,
        (ii)    submission of production reports to the District,
        (iii)    separate meter requirements for exported water from non-exported permitted water;

    (4)   the installation and reporting of monitoring wells;

    (5)   Well Assistance provisions, if applicable;

    (6)   the required submission of all groundwater conveyance and user agreements related to the export permit;

    (7)   the technical description of the facilities to be used;

    (8)   water conservation and drought contingency plans,including plans prepared by all subsequent users; and

    (9)   periodic review and permit limitations based on aquifer conditions.

(e)    The District may periodically review the amount of water that may be transferred under an operating permit to transport water out of the District and may limit the amount if additional factors considered, related to the factors in Subsection (b), above.

(f)    After conducting its periodic review, more restrictive permit conditions may only be imposed if the factors in Subsection (c), above, are met.

## RULE 10.5.  <u>FEES INCLUDED WITH APPLICATION</u>

The transport permit application must be accompanied by the application processing fee, inspection fee, or other fees as appropriate. Such fees must be paid before notice is published and mailed. Payment of all fees including water use fees remain the responsibility of the permit holder.

## SECTION 11.  <u>REWORKING AND REPLACING A WELL</u>

## RULE 11.1.  <u>PROCEDURES</u>

(a)    An existing well may be reworked, re-drilled, or re-equipped in a manner that will not change the existing well status without obtaining a permit amendment.

(b)    A permit must be applied for and the Board will consider approving the permit, if a person wishes to increase the rate of production of an existing well to the point of increasing the size of the column pipe or gpm rate by reworking, re-equipping, or re-drilling such well as described in this section.

(c)    A permit must be applied for and granted by the Board if a person wishes to replace an existing well with a replacement well.

(d)    A replacement well must be completed in the same aquifer as the well it replaces, and

shall not be drilled, equipped, or completed so as to increase the rate of production of water from the well it replaces. A replacement well must not be located closer to any other well or authorized well site unless the new location complies with the minimum the spacing requirements of Rule 6.1; otherwise, the well shall be considered a new well for which an application must be made.

(e)     In the event the application meets spacing and production requirements, and satisfies all requirements of these Rules, the Board or General Manager may grant such application without further notice.


## SECTION 12.  WELL LOCATION AND COMPLETION

### RULE 12.1.  RESPONSIBILITY
After an application for a well permit has been granted, the well, if drilled, must be drilled by a water well driller licensed in the State of Texas within ten (10) yards (30 feet) of the location specified in the permit, and not elsewhere. If the well should be commenced or drilled at a different location, the drilling or operation of such well may be enjoined by the Board pursuant to Chapter 36, Texas Water Code. As described in the Texas Water Well Drillers' Rules, all well drillers and persons having a well drilled, deepened, or otherwise altered shall adhere to the provisions of this Rule and Rule 12.2 prescribing the location of well(s) and proper completion of the well(s) under Rule 12.3.

### RULE 12.2.  LOCATION OF DOMESTIC, INDUSTRIAL, INJECTION, AND IRRIGATION WELLS
With regard to potential sources of contamination, wells shall be located in conformity with the Rules and regulations promulgated by the Texas Commission on Environmental Quality and the Texas Department of Licensing and Regulation, as applicable.

### RULE 12.3.  STANDARDS OF COMPLETION FOR WELLS
a.     Water well drillers, who shall be licensed by the State of Texas, must indicate the method of completion performed on an accurate and fully completed State of Texas Well Report form, which shall be submitted to the District not later than the 60th day after the date of the completion or cessation of drilling, deepening, or otherwise altering the well. Unless otherwise ordered by the Board or state law, wells must be completed in accordance with all applicable State and local standards, including but not limited to 30 Texas Administrative Code Chapter 290 (Rules for Public Drinking Water) and 16 Texas Administrative Code Chapter 76 (Rules for Water Well Drillers and Water Well Pump Installers).

b.     Well drillers, pump installers, and/or well owners are required to submit a District Pump Installation Report upon completion or cessation of drilling, or otherwise modifying a well that accurately reflects the pump settings on the well. The accurate and fully completed Pump Installation Report shall be submitted by the pump installer with the above-required State Well Report or within sixty (60) days of

44

pump alteration to any groundwater well by driller, pump installer, or well owner and shall be completed on a District-approved form.

### RULE 12.4.  RE-COMPLETIONS

(a)     The permit holder shall have the continuing responsibility of insuring that a well does not allow commingling of undesirable water and fresh water or the unwanted loss of water through the well bore to other porous strata.

(b)     If a well is allowing the commingling of undesirable water and fresh water or the unwanted loss of water, and the casing in the well cannot be removed and the well re-completed within the applicable Rules, the casing in the well shall be perforated and cemented in a manner that will prevent the commingling or loss of water. If such a well has no casing, then the well shall be cased and cemented, or plugged in a manner that will prevent such commingling or loss of water.

(b)     The Board may direct the permit holders to take steps to prevent the commingling of undesirable water and fresh water, or the unwanted loss of water.

### RULE 12.5  INSPECTION PORT TECHNICAL COMPLETION REQUIREMENT
All wells shall be equipped with a watertight sanitary well seal with a ½" or larger interior diameter inspection port, located on top of the well seal which allows for free access to the water table for the purpose of water level measurement and disinfection. Any well presently not equipped shall in the future be so equipped when that well is serviced. On those wells with odd sized casing, which cannot be fitted with a factory made watertight sanitary well seal, the completion must be done in a manner that will prevent any pollutants (waste, insects, chemicals, etc.) from entering the well.

### RULE 12.6  REGISTRATION OF WELL PRIOR TO SERVICE WORK REQUIREMENT
Well pumps and equipment shall only be installed or serviced in wells registered with the District. It is a violation of this rule for licensed well drillers/pump installers to service a well that is not licensed or registered, as applicable, with the District. Upon request, the District will quickly provide verification of a well's registration or permit status.

## SECTION 13.  WASTE AND POLLUTION

### RULE 13.1  WASTE PREVENTION

(a)     Groundwater shall not be produced within, or used within or outside of the District, in such a manner as to constitute waste as defined in these Rules.

(b)     No person shall pollute or harmfully alter the character of the underground water aquifers of the District by means of salt water or other deleterious matter admitted from some other stratum or strata from the surface of the ground.

(c)    No person shall commit waste as that term is defined in these Rules and in Chapter 36, Texas Water Code.

## RULE 13.2    ORDERS TO PREVENT WASTE/POLLUTION

After providing notice to affected parties and opportunity for a hearing, the Board may adopt orders to prohibit or prevent waste or pollution. If the factual basis for the order is disputed, the Board shall direct that an evidentiary hearing be conducted prior to entry of the order. If the Board determines that an emergency exists, requiring the immediate entry of an order to prohibit waste or pollution and protect the public health, safety, and welfare, it may enter a temporary order without notice and hearing provided, however, the temporary order shall continue in effect for the lesser of fifteen (15) days or until a hearing can be conducted.

## SECTION 14.  HEARINGS

## RULE 14.1.    TYPES OF HEARINGS

The District conducts two general types of hearings: (1) hearings involving permit matters, in which the rights, duties, or privileges of a party are determined after notice and an opportunity for an adjudicative hearing, and (2) rulemaking hearings involving matters of general applicability that implement, interpret, or prescribe the law or District policy, or that describe the procedure or practice requirements of the District. The District, however, may use its discretion to conduct a hearing on other relevant subject matters. Any matter designated for hearing before the Board may be referred by the Board for hearing before a Hearing Examiner, at the Board's discretion.

(a)    Permit Hearings:

   (1)    Permit Applications, Amendments, and Revocations: The District will hold hearings on water well drilling permits, operating permits, transport permits, permit amendments, and permit revocations or suspensions. Hearings involving permit matters may be scheduled before the Board or a Hearing Examiner, at the Board's discretion. If no person notifies the General Manager of their intent to contest the application, and if the General Manager does not contest the application, the application will be presented directly to the Board for a final decision under Rule 14.3. The Board may grant the application, in whole or in part, or refer the application to the Hearings Examiner for a hearing. If a Person requests a contested case hearing, the Board shall proceed under Rules 14.2, 14.4 and 14.5.

   (2)    Hearings on Motions for Rehearing: Motions for Rehearing will be heard by the Board pursuant to Rule 14.4(k).

(b)    Rulemaking Hearings:
       District Management Plan: as required by Chapter 36 of the Texas Water Code, the Board

46

will hold hearings to consider amendments to the District's Management Plan and District Rules pursuant to Rule 14.6.

(c)    <u>Other Matters</u>:
A public hearing may be held on any matter within the jurisdiction of the Board if the Board determines a hearing to be in the public interest, or necessary to effectively carry out the duties and responsibilities of the District.

## RULE 14.2.    <u>NOTICE AND SCHEDULING OF PERMIT-RELATED HEARINGS.</u>

(a)    The District shall promptly consider and act on each administratively complete application for a permit. If, within 60 days after the date an administratively complete application is submitted, the application has not been acted on or set for a hearing on a specific date, the applicant may petition the District court of the county where the land is located for a writ of mandamus to compel the District to act on the application or set a date for a hearing on the application, as appropriate.

Applications that are not administratively complete will be sent back to the applicant with a list of needed information. If a hydrological evaluation report is required as part of the application, the permit application can not be declared administratively complete until the District's hydrologist deems that the submitted hydrological evaluation report is fully responsive to the District's requirements. If the District does not receive an administratively complete application within 60 days of the District sending the incomplete application notice, then the District may consider the application expired. If an incomplete application expires, the applicant will be required to submit a new application and the deadlines under this rule will begin again.

For applications requiring a hearing, the initial hearing shall be held within 35 days after the setting of the date, and the District shall act on the application within 60 days after the date the final hearing on the application is concluded. An administratively complete application requires information set forth in accordance with Sections 36.113, 36.1131, and these Rules.

(b)    <u>Notice of permit hearing</u>.

(1)    If the General Manager or board schedules a public hearing on an application for a permit or permit amendment for which a hearing is required, the General Manager or board shall give notice of the public hearing as provided by this section.

(2)    The notice must include:

(A) the name of the applicant;
(B) the address or approximate location of the well or proposed well;
(C) a brief explanation of the proposed permit or permit amendment,

47

including any requested amount of groundwater, the purpose of the proposed use, and any change in use;

(D) the time, date, and location of the public hearing; and

(E) any other information the general manager or board considers relevant and appropriate.

(3a)   For permit applications requesting less than 800 ac-ft-yr of groundwater, not later than the 10th day before the date of a hearing, the general manager or board shall:

(A) post notice in a place readily accessible to the public at the District office;

(B) provide notice to the county clerk of each county in the District; and

(C) provide notice by:

(i)   regular mail to the applicant;

(ii)  regular mail, facsimile, or electronic mail to any person who has requested notice under Subsection (4); and

(iii) regular mail to any other person entitled to receive notice under the rules of the District.

(3b)   For permit applications requesting 800 ac-ft-yr or more of groundwater, not later than the 20th day before the date of a hearing, the general manager or board shall:

(A) post notice in a place readily accessible to the public at the District office;

(B) provide notice to the county clerk of each county in the District; and

(C) provide notice by:

(i)   regular mail to the applicant;

(ii)  regular mail, facsimile, or electronic mail to any person who has requested notice under Subsection (4);

(iii) regular mail to any other person entitled to receive notice under the rules of the District;

(iv) regular mail to all adjacent landowners, all other landowners within 5 mile of the well site, and all existing well owners within 10 miles of the well site who have wells in the same aquifer as applicant. The Board shall adopt in its Fees Schedule the additional application fees to be paid by the applicant for the requisite mailed notices; and

(v)  publish notice in *The Bryan-College Station Eagle* and the *Robertson County News*. The Board shall adopt in its Fees Schedule the additional application fees to be paid by the applicant for the requisite published notices.

(4)    A person may request notice from the District of a public hearing on a permit or a permit amendment application. The request must be in writing and is effective for the remainder of the calendar year in which the request is received by the

*Last Amended October 9, 2025*

District. To receive notice of a public hearing in a later year, a person must submit a new request. An affidavit of an officer or employee of the District establishing attempted service by first class mail, facsimile, or e-mail to the person in accordance with the information provided by the person is proof that notice was provided by the District.

(5)    Failure to provide notice under Subsection (3)(a)(ii) and (3)(b)(ii) does not invalidate an action taken by the District at the public hearing.

(c)    The General Manager may schedule as many applications at one hearing as the General Manager deems necessary. The District may require each person who participates in a hearing to submit a hearing registration form stating:

(1) the person's name;
(2) the person's address; and
(3) whom the person represents, if the person is not there in the person's individual capacity. Hearings will be held in accordance with Section 14.

(d)    Hearings may usually be scheduled during the District's regular business hours, Monday through Friday of each week, except District holidays. Most permit hearings will be held at the District Office. However, the Board may from time to time change or schedule additional dates, times, and places for permit hearings by Board action adopted at a regular Board meeting. The General Manager is instructed by the Board to schedule hearings involving permit matters at such dates, times, and places set forth above for permit hearings. Other hearings will be scheduled at the dates, times, and locations set at a regular Board meeting.

(e)    The District may assess fees to permit applicants for administrative acts of the District relating to a permit application. Fees set by the District may not unreasonably exceed the cost to the District of performing the administrative function for which the fee is charged.

## RULE 14.3.   CASE HEARING REQUEST; PRELIMINARY HEARING

(a) The board may take action on any uncontested application at a properly noticed public meeting held at any time after the public hearing at which the application is scheduled to be heard. The board may issue a written order to:

(1)    grant the application;
(2)    grant the application with special conditions; or
(3)    deny the application.

(b) The board shall schedule a preliminary hearing to hear a request for a contested case hearing filed in accordance with rules adopted under Section 36.415. The preliminary hearing may be conducted by:

(1)    a quorum of the board;

    (2)    an individual to whom the board has delegated in writing the responsibility to preside as a hearing examiner over the hearing or matters related to the hearing; or

    (3)    the State Office of Administrative Hearings under Section 36.416.

(c)    Following a preliminary hearing, the board shall determine whether any person requesting the contested case hearing has standing to make that request and whether a justiciable issue related to the application has been raised. If the board determines that no person who requested a contested case hearing had standing or that no justiciable issues were raised, the board may take any action authorized under Subsection (a).

(d)    An applicant may, not later than the 20th day after the date the board issues an order granting the application, demand a contested case hearing if the order:

    (1)    includes special conditions that were not part of the application as finally submitted; or

    (2)    grants a maximum amount of groundwater production that is less than the amount requested in the application.

## RULE 14.3.5. DETERMINATION OF CONTESTED STATUS OF PERMIT  HEARINGS

(a)    <u>Written Notice of Intent to Contest</u>. A request for contested case hearing shall be in writing and must be received by the District by 5:00 p.m. the day before the permit hearing. If the Board of Directors intends to contest a permit application, the Board of Directors must provide the applicant written notice of that intent at least five (5) calendar days prior to the date of the hearing.

(b)    <u>Participation in a Contested Permit Hearing</u>. The Board or Hearing Examiner may limit participation in a hearing on a contested application to persons who have a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest that is within the District's regulatory authority and affected by a permit or permit amendment application, not including persons who have an interest common to members of the public.

(c)    <u>Informal Hearings</u>. Permit hearings may be conducted informally when, in the judgment of the Board or Hearing Examiner, the conduct of a proceeding under informal procedures will save time or cost to the parties, lead to a negotiated or agreed settlement of facts or issues in controversy, and not prejudice the rights of any party.

(d)    <u>Agreement of Parties</u>.  If, during an informal proceeding, all parties reach a negotiated or agreed settlement that, in the judgment of the Board or Hearing Examiner, settles the facts or issues in controversy, the proceeding will be considered an uncontested case and the Board or Hearing Examiner will summarize the evidence and make findings of fact and conclusions of law based on the existing record and any other evidence submitted by the parties at the hearing.

(e)     <u>Decision to Proceed as Uncontested or Contested Case</u>. If the parties do not reach a negotiated or agreed settlement of the facts and issues in controversy or if any party contests a staff recommendation, and the Board or Hearing Examiner determines these issues will require extensive discovery proceedings, the Board or Hearing Examiner will declare the case to be contested and convene a pre-hearing conference as set forth in Rule 14.4 and 14.5. The Board or Hearing Examiner may also recommend issuance of a temporary permit for a period not to exceed 4 months, with any special provisions the Board or Hearing Examiner deems necessary, for the purpose of completing the contested case process. Any case not declared a contested case under this provision is an uncontested case and the Board or Hearing Examiner will summarize the evidence, make findings of fact and conclusions of law, and make appropriate recommendations to the Board.

### RULE 14.4.   <u>GENERAL PERMIT-RELATED HEARING PROCEDURES</u>

(a)    A hearing must be conducted by:

   (1) a quorum of the board; or
   (2) an individual to whom the board has delegated in writing the responsibility to preside as a hearings examiner over the hearing or matters related to the hearing.

(b)    Except as provided by Subsection (c), below, the board president or the hearings examiner shall serve as the presiding officer at the hearing.

(c)    If the hearing is conducted by a quorum of the board and the board president is not present, the directors conducting the hearing may select a director to serve as the presiding officer.

(c-1)   Hearings under the State Office of Administrative Hearings

   (1)    If the District contracts with the State Office of Administrative Hearings to conduct a hearing, the hearing shall be conducted as provided by Subchapters C, D, and F, Chapter 2001, Government Code. The District may adopt rules for a hearing conducted under this section that are consistent with the procedural rules of the State Office of Administrative Hearings.

   (1)    If requested by the applicant or other party to a contested case, the District shall contract with the State Office of Administrative Hearings to conduct the hearing. The applicant or other party must request the hearing before the State Office of Administrative Hearings not later than the 14th day before the date the evidentiary hearing is scheduled to begin. The hearing must be held in Travis County or at the District office or regular meeting location of the Board, unless the Board provide for hearings to be held at a different location. The District shall choose the location.

(2)     The party requesting the hearing before the State Office of Administrative Hearings shall pay all costs associated with the contract for the hearing and shall deposit with the District an amount sufficient to pay the contract amount before the hearing begins. At the conclusion of the hearing, the District shall refund any excess money to the paying party. All other costs may be assessed as authorized by this chapter or District Rules.

(3)     An administrative law judge who conducts a contested case hearing shall consider

(4)     applicable District rules or policies in conducting the hearing, but the District deciding the case may not supervise the administrative law judge.

(5)     The District shall provide the administrative law judge with a written statement of applicable rules or policies.
The District may not attempt to influence the finding of facts or the administrative law judge's application of the law in a contested case except by proper evidence and legal argument.

(c-2)    Final Decision; Contested Case Hearings.

(1)     In a proceeding for a permit application or amendment in which the District has contracted with the State Office of Administrative Hearings for a contested case hearing, the board has the authority to make a final decision on consideration of a proposal for decision issued by an administrative law judge consistent with.

(2)     A board may change a finding of fact or conclusion of law made by the administrative law judge, or may vacate or modify an order issued by the administrative judge, only if the board determines:

   (A)     that the administrative law judge did not properly apply or interpret applicable law, District rules, written policies provided under Section 36.416(e), or prior administrative decisions;

   (B)     that a prior administrative decision on which the administrative law judge relied is incorrect or should be changed; or

   (C)     that a technical error in a finding of fact should be changed.

(3)     A final decision issued by the board under this section must be in writing and must either adopt the proposed findings of fact and conclusions of law as proposed by the administrative law judge or include revised findings of fact and conclusions of law consistent with (2) above.

(4)     Notwithstanding any other law, a board shall issue a final decision under this section not later than the 180th day after the date of receipt of the final proposal for decision from the State Office of Administrative Hearings. The deadline may be extended if all parties agree to the extension.

(5) Notwithstanding any other law, if a motion for rehearing is filed and granted by a board under Rule 14.4(o), the board shall make a final decision on the application not later than the 90th day after the date of the decision by the board that was subject to the motion for rehearing.

(6) A board is considered to have adopted a final proposal for decision of the administrative law judge as a final order on the 181st day after the date the administrative law judge issued the final proposal for decision if the board has not issued a final decision by:
    (i) adopting the findings of fact and conclusions of law as proposed by the administrative law judge; or
    (ii) issuing revised findings of fact and conclusions of law as provided by (2) above.

(7) A proposal for decision adopted under (6) above is final, immediately appealable, and not subject to a request for rehearing.

(d) The presiding officer may:

(1) convene the hearing at the time and place specified in the notice;
(2) set any necessary additional hearing dates;
(3) designate the parties regarding a contested application;
(4) establish the order for presentation of evidence;
(5) administer oaths to all persons presenting testimony;
(6) examine persons presenting testimony;

(7) ensure that information and testimony are introduced as conveniently and expeditiously as possible without prejudicing the rights of any party;
(8) prescribe reasonable time limits for testimony and the presentation of evidence;
(9) exercise the procedural rules adopted herein; and
(10) determine how to apportion among the parties the costs related to:

    (A) a contract for the services of a presiding officer; and
    (B) the preparation of the official hearing record.

(e) The District may allow any person registered to speak, including the general manager or a District employee, to provide comments at a hearing on an uncontested application, consisted with these Rules.

(f) The presiding officer may allow testimony to be submitted in writing and may require that written testimony be sworn to. On the motion of a party to the hearing, the presiding officer may exclude written testimony if the person who submits the testimony is not available for cross- examination by phone, a deposition before the hearing, or other reasonable means.

(g) If the board has not acted on the application, the presiding officer may allow a person

who testifies at the hearing to supplement the testimony given at the hearing by filing additional written materials with the presiding officer not later than the 10th day after the date of the hearing. A person who files additional written material with the presiding officer under this subsection must also provide the material, not later than the 10th day after the date of the hearing, to any person who provided comments on an uncontested application or any party to a contested hearing. A person who receives additional written material under this subsection may file a response to the material with the presiding officer not later than the 10th day after the date the material was received.

(h)   The District may authorize the presiding officer, at the presiding officer's discretion, to issue an order at any time before the Board takes final actions on a permit application that:

(1) refers parties to a contested hearing to an alternative dispute resolution procedure on any matter at issue in the hearing;
(2) determines how the costs of the procedure shall be apportioned among the parties; and
(3) appoints an impartial third party as provided by Section 2009.053, Government Code, to facilitate that procedure.

(i)   <u>Hearing Registration</u>. The District may require each person who participates in a hearing to submit a hearing registration form stating:

(1) the person's name;
(2) the person's address; and
(3) whom the person represents, if the person is not there in the person's individual capacity.

(j)   <u>Evidence</u>.

(1)  The presiding officer shall admit evidence that is relevant to an issue at the hearing.
(2)  The presiding officer may exclude evidence that is irrelevant, immaterial, or unduly repetitious.

(k)   <u>Recording</u>.

(1) Except as provided by Subsection (b), the presiding officer shall prepare and keep a record of each hearing in the form of an audio or video recording or a court reporter transcription. On the request of a party to a contested hearing, the presiding officer shall have the hearing transcribed by a court reporter. The presiding officer may assess any court reporter transcription costs against the party that requested the transcription or among the parties to the hearing. Except as provided by this subsection, the presiding officer may exclude a party from further participation in a hearing for failure to pay in a timely manner costs assessed against that party under this subsection. The presiding officer may not exclude a party from further participation in a hearing as provided by this subsection if the parties have agreed that the costs assessed against that party will be paid by another party.

(2) If a hearing is uncontested, the presiding officer may substitute minutes or its Report under subsection (m), below, for a method of recording the hearing.

(l)    <u>Continuance</u>.

The presiding officer may continue a hearing from time to time and from place to place without providing notice under Section 14.2(b). If the presiding officer continues a hearing without announcing at the hearing the time, date, and location of the continued hearing, the presiding officer must provide notice of the continued hearing by regular mail to the parties. A continuance may not exceed the time limit for the issuance of a final decision under (c-2) above.

(m)    <u>Proposal for Decision</u>.

(1)    Except as provided by Subsection (m)(5), below, the presiding officer shall submit a report to the board not later than the 30th day after the date the evidentiary hearing is concluded.

(2)    The report must include:

(a) a summary of the subject matter of the hearing;
(b) a summary of the evidence or public comments received; and
(c) the presiding officer's recommendations for board action on the subject matter of the hearing.

(3)    The presiding officer or general manager shall provide a copy of the proposal for decision to:

(a) the applicant; and
(b) each designated party.

(4)    A person party may submit to the board written exceptions to the proposal for decision.

(5)    If the hearing was conducted by a quorum of the board and if the presiding officer prepared a record of the hearing as provided by Subsection (k)(1), herein, the presiding officer shall determine whether to prepare and submit a report to the board under this section.

(6)    The board shall consider the proposal for decision at a final hearing. Additional evidence may not be presented during a final hearing. The parties may present oral argument at a final hearing to summarize the evidence, present legal argument, or argue an exception to the proposal for decision. A final hearing may be continued under subsection (l).

*Last Amended October 9, 2025*

(n)     Board Action.
The board shall act on a permit or permit amendment application not later than the 60th day after the date the final hearing on the application is concluded. The Board shall ensure a decision on a permit or permit amendment application is timely rendered in accordance with the provisions set forth in Chapter 36 of the Texas Water Code. In deciding whether or not to issue a drilling permit, operating permit, and/or transport permit, and in setting the terms of the permit, the Board will consider the Water Code Ch. 36, the District Act, the District's Rules Certified Management Plan, whether the application is accompanied by prescribed fees, and all other relevant factors.

(o)     Requests for Rehearing and or Finding and Conclusions.

(1) An applicant in a contested or uncontested hearing on an application or a party to a contested hearing may administratively appeal a decision of the board on a permit or permit amendment application by making a request in writing to the board. A party seeking to appeal a decision by the board must request written findings of fact and conclusions of law not later than the 20th day after the date of the board's decision unless the board issued findings of fact and conclusions of law as part of the final decision.

(2) On receipt of a timely written request under (1) above, the board shall make written findings of fact and conclusions of law regarding a decision of the board on a permit or permit amendment application. The board shall provide certified copies of the findings of fact and conclusions of law to the person who requested them, and to each designated party, not later than the 35th day after the date the board receives the request. A party to a contested case hearing may request a rehearing not later than the 20th day after the date the board issues the findings of fact and conclusions of law.

(3) A request for rehearing must be filed in the District office and must state the grounds for the request. If the original hearing was a contested hearing, the party requesting a rehearing must provide copies of the request to all parties to the hearing.

(4) If the board grants a request for rehearing, the board shall schedule the rehearing not later than the 45th day after the date the request is granted.

(5) The failure of the board to grant or deny a request for rehearing before the 91st day after the date the request is submitted is a denial of the request.

(6) The board shall consolidate requests for rehearing filed by multiple parties to the contested case hearing, but only one rehearing may be considered per matter.

(p)     Decision; When Final.

(1) A decision by the board on a permit or permit amendment application is final:

(a) if a request for rehearing is not filed on time, on the expiration of the period for filing a request for rehearing; or

(b) if a request for rehearing is filed on time, on the date:

(A) the board denies the request for rehearing; or

(B) the board renders a written decision after rehearing.

(2) Except as provided by Subsection (3), below, an applicant or a party to a contested hearing may file a suit against the District under Section 36.251 of the Texas Water Code to appeal a decision on a permit or permit amendment application not later than the 60th day after the date on which the decision becomes final.

(3) An applicant or a party to a contested hearing may not file suit against the District under Section 36.251 if a request for rehearing was not filed on time.

(q)    Consolidated Hearing on Applications.

(1) Except as provided by Subsection (2), below, the District shall process applications from a single applicant under consolidated notice and hearing procedures on written request by the applicant if the District requires a separate permit or permit amendment application for:

   (a)    drilling, equipping, operating, or completing a well or substantially altering the size of a well or well pump under Section 36.113, Texas Water Code;

   (b)    the spacing of water wells or the production of groundwater under Section 36.116, Texas Water Code; or

   (c)    transferring groundwater out of the District under Section 36.122, Texas Water Code.

(2)    The District is not required to use consolidated notice and hearing procedures to process separate permit or permit amendment applications from a single applicant if the board cannot adequately evaluate one application until it has acted on another application.

(r)    Hearings Conducted by State Office of Administrative Hearings.

If the District contracts with the State Office of Administrative Hearings to conduct a hearing, the hearing shall be conducted as provided by Subchapters C, D, and F, Chapter 2001, Government Code.

(s)    Alternative Dispute Resolution.

The District use alternative dispute resolution procedures in the manner provided for governmental bodies under Chapter 2009, Government Code.

### RULE 14.5.    ADDITIONAL CONTESTED PERMIT HEARINGS PROCEDURES

(a)    Pre-hearing Conference.  A pre-hearing conference may be held to consider any matter that may expedite the contested case hearing or otherwise facilitate the hearing process.

*Last Amended October 9, 2025*

(1)    <u>Matters Considered</u>.  Matters that may be considered at a pre-hearing conference include, but are not limited to:

(A) the designation of parties;
(B) the formulation and simplification of issues;
(C) the necessity or desirability of amending applications or other pleadings;
(D) the possibility of making admissions or stipulations;
(E) the scheduling of discovery;
(F) the identification of and specification of the number of witnesses; (G) the filing and exchange of prepared testimony and exhibits; and (H) the procedure at the hearing.

(2)    <u>Notice</u>.  A pre-hearing conference may be held at a date, time, and place stated in a separate notice, and may be continued from time to time and place to place, at the discretion of the Board or Hearing Examiner.

(b)    <u>Designation of Parties</u>. Parties to a hearing will be designated on the first day of hearing or at such other time as the Board or Hearing Examiner determines. The Board of Directors and any person specifically named in a matter are automatically designated parties. Persons other than the automatic parties must, in order to be admitted as a party, appear at the proceeding in person or by representative and seek to be designated. The Board or Hearing Examiner may limit participation in a hearing on a contested application to persons who have a personal justiciable interest related to a legal right, duty, privilege, power, or economic interest that is within the District's regulatory authority and affected by a permit or permit amendment application, not including persons who have an interest common to members of the public. After parties are designated, no other person may be admitted as a party unless, in the judgment of the Board or Hearing Examiner, there exists good cause and the hearing will not be unreasonably delayed.

(c)    <u>Rights of Designated Parties</u>. Subject to the direction and orders of the Board or Hearing Examiner, parties have the right to conduct discovery, present a direct case, cross-examine witnesses, make oral and written arguments, obtain copies of all documents filed in the proceeding, receive copies of all notices issued by the District concerning the proceeding, and otherwise fully participate in the proceeding.

(d)    <u>Persons Not Designated Parties</u>.  At the discretion of the Board or Hearing Examiner, persons not designated as parties to a proceeding may submit comments or statements, orally or in writing. Comments or statements submitted by non-parties may be included in the record, but may not be considered by the Board or Hearing Examiner as evidence.

(e)    <u>Furnishing Copies of Pleadings</u>.  After parties have been designated, a copy of every pleading, request, motion, or reply filed in the proceeding must be provided by the author to every other party or party's representative. A certification of this fact must

accompany the original instrument when filed with the District. Failure to provide copies may be grounds for withholding consideration of the pleading or the matters set forth therein.

(f)   Interpreters for Deaf Parties and Witnesses. If a party or subpoenaed witness in a contested case is deaf, the District must provide an interpreter whose qualifications are approved by the State Commission for the Deaf and Hearing Impaired to interpret the proceedings for that person. "Deaf person" means a person who has a hearing impairment, whether or not the person also has a speech impairment that inhibits the person's comprehension of the proceedings or communication with others.

(g)   Agreements to be in Writing. No agreement between parties or their representatives affecting any pending matter will be considered by the Board or Hearing Examiner unless it is in writing, signed, and filed as part of the record, or unless it is announced at the hearing and entered as in the record.

(h)   Discovery. Discovery will be conducted upon such terms and conditions, and at such times and places, as directed by the Board or Hearing Examiner. Unless specifically modified by these Rules or by order of the Board or Hearing Examiner, discovery will be governed by, and subject to the limitations set forth in, the Texas Rules of Civil Procedure. In addition to the forms of discovery authorized under the Texas Rules of Civil Procedure, the parties may exchange informal requests for information, either by agreement or by order of the Board or Hearing Examiner.

(i)   Discovery Sanctions. If the Board or Hearing Examiner finds a party is abusing the discovery process in seeking, responding to, or resisting discovery, the Board or Hearing Examiner may:

   (1)   suspend processing of the application for a permit if the applicant is the offending party;

   (2)   disallow any further discovery of any kind or a particular kind by the offending party;

   (3)   rule that particular facts be regarded as established against the offending party for the purposes of the proceeding, in accordance with the claim of the party obtaining the discovery ruling;

   (4)   limit the offending party's participation in the proceeding;

   (5)   disallow the offending party's presentation of evidence on issues that were the subject of the discovery request; and

   (6)   recommend to the Board that the hearing be dismissed with or without prejudice.

(j)   Ex Parte Communications. The Board and the Hearing Examiner, if appointed, may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or representative, except with notice and opportunity for all parties to participate. This provision does not prevent communications with staff not directly involved in the hearing to utilize the special skills and knowledge of the agency in evaluating the evidence.

(k) <u>Compelling Testimony; Swearing Witnesses and Subpoena Power</u>. The Board or Hearing Examiner may compel the testimony of any person that is necessary, helpful, or appropriate to the hearing. The Board or Hearing Examiner will administer the oath in a manner calculated to impress the witness with the importance and solemnity of the promise to adhere to the truth. The Board or Hearing Examiner may issue subpoenas to compel the testimony of any person and the production of books, papers, documents, or tangible things, in the manner provided in the Texas Rules of Civil Procedure.

(l) <u>Evidence</u>. Except as modified by these Rules, the Texas Rules of Civil Evidence govern the admissibility and introduction of evidence; however, evidence not admissible under the Texas Rules of Civil Evidence may be admitted if it is of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs. In addition, evidence may be stipulated by agreement of all parties.

(m) <u>Written Testimony</u>. When a proceeding will be expedited and the interest of the parties will not be prejudiced substantially, testimony may be received in written form. The written testimony of a witness, either in narrative or question and answer form, may be admitted into evidence upon the witness being sworn and identifying the testimony as a true and accurate record of what the testimony would be if given orally. The witness will be subject to clarifying questions and to cross-examination, and the prepared testimony will be subject to objection.

(n) <u>Requirements for Exhibits</u>. Exhibits of a documentary character must be sized to not unduly encumber the files and records of the District. All exhibits must be numbered and, except for maps and drawings, may not exceed 8-1/2 by 11 inches in size.

(o) <u>Abstracts of Documents</u>. When documents are numerous, the Board or Hearing Examiner may receive in evidence only those that are representative and may require the abstracting of relevant data from the documents and the presentation of the abstracts in the form of an exhibit. Parties have the right to examine the documents from which the abstracts are made.

(p) <u>Introduction and Copies of Exhibits</u>. Each exhibit offered must be tendered for identification and placed in the record. Copies must be furnished to the Board or Hearing Examiner and to each of the parties, unless the Board or Hearing Examiner Rules otherwise.

(q) <u>Excluding Exhibits</u>. In the event an exhibit has been identified, objected to, and excluded, it may be withdrawn by the offering party. If withdrawn, the exhibit will be returned and the offering party waives all objections to the exclusion of the exhibit. If not withdrawn, the exhibit will be included in the record for the purpose of preserving the objection to excluding the exhibit.

(r) <u>Official Notice</u>. The Board or Hearing Examiner may take official notice of all facts judicially cognizable. In addition, official notice may be taken of generally recognized facts within the area of the District's specialized knowledge.

*Last Amended October 9, 2025*

(s)   <u>Documents in District Files</u>. Extrinsic evidence of authenticity is not required as a condition precedent to admissibility of documents maintained in the files and records of the District.

(t)   <u>Oral Argument</u>. At the discretion of the Board or Hearing Examiner, oral arguments may be heard at the conclusion of the presentation of evidence. Reasonable time limits may be prescribed. The Board or Hearing Examiner may require or accept written briefs in lieu of, or in addition to, oral arguments. When the matter is presented to the Board for final decision, further oral arguments may be heard by the Board.

## RULE 14.6.   <u>RULEMAKING HEARINGS PROCEDURES</u>

(a)   <u>General Procedures for amending District Rules</u>. The Board may, following notice and hearing, amend these Rules or adopt new Rules from time to time. The presiding officer will conduct the rulemaking hearing in the manner the presiding officer determines most appropriate  to obtain all relevant information pertaining to the subject of the hearing as conveniently, inexpensively, and expeditiously as possible.The presiding officer may follow the guidelines of "Robert's Rules of Order," 10th Edition, General Henry M. Robert, 2000 Revised Edition, or as amended.

(b)   <u>Notice of a Rulemaking Hearing</u>.
(1)   Not later than the 20th day before the date of a rulemaking hearing, the General Manager or board shall:

(A)   post notice in a place readily accessible to the public at the District office;
(B)   provide notice to the county clerk of each county in the district;
(C)   publish notice in one or more newspapers of general circulation in the county or counties in which the District is located;
(D)   provide notice by mail, facsimile, or electronic mail to any person who has requested notice under Subsection (6), below; and
(E)   make available a copy of all proposed rules at a place accessible to the public during normal business hours and, if the District has a website, post an electronic copy on a generally accessible Internet site.

(2)   The notice provided under Subsection (1), above, must include:

(A)   the time, date, and location of the rulemaking hearing;
(B)   a brief explanation of the subject of the rulemaking hearing; and
(C)   a location or Internet site at which a copy of the proposed rules may be reviewed or copied.

(3)   The presiding officer shall conduct a rulemaking hearing in the manner the presiding officer determines to be most appropriate to obtain information and comments relating to the proposed rule as conveniently and expeditiously as possible. Comments may be submitted orally at the hearing or in writing. The presiding

officer may hold the record open for a specified period after the conclusion of the hearing to receive additional written comments.

(4)   The District may require each person who participates in a rulemaking hearing to submit a hearing registration form stating:
(a)   the person's name;
(b)   the person's address; and
(c)   whom the person represents, if the person is not at the hearing in the person's individual capacity.

(5)   The presiding officer shall prepare and keep a record of each rulemaking hearing in the form of an audio or video recording or a court reporter transcription.

(6)   A person may submit to the District a written request for notice of a rulemaking hearing. A request is effective for the remainder of the calendar year in which the request is received by the District. To receive notice of a rulemaking hearing in a later year, a person must submit a new request. An affidavit of an officer or employee of the District establishing attempted service by first class mail, facsimile, or e-mail to the person in accordance with the information provided by the person is proof that notice was provided by the District.

(7)   The District may use an informal conference or consultation to obtain the opinions and advice of interested persons about contemplated rules and may appoint advisory committees of experts, interested persons, or public representatives to advise the District about contemplated rules.

(8)   Failure to provide notice under Subsection (b)(1)(D), above, does not invalidate an action taken by the District at a rulemaking hearing.

(c)   Emergency Rules.

(1)   A board may adopt an emergency rule without prior notice or hearing, or with an abbreviated notice and hearing, if the board:

(a) finds that a substantial likelihood of imminent peril to the public health, safety, or welfare, or requirement of state or federal law, requires adoption of a rule on less than 20 days' notice; and
(b) prepares a written statement of the reasons for its finding under Subdivision (a), above.

(2)   Except as provided by Subsection (3), herein, a rule adopted under this section may not be effective for longer than 90 days.

(3)   If notice of a hearing on the final rule is given not later than the 90th day after the date the rule is adopted, the rule is effective for an additional 90 days.

*Last Amended October 9, 2025*

(4)   A rule adopted under this section must be adopted at a meeting held as provided byChapter 551, Government Code.

(d)   <u>Submission of Documents</u>. Any interested person may submit written statements, protests or comments, briefs, affidavits, exhibits, technical reports, or other documents relating to the subject of the hearing. Such documents must be submitted no later than the time of the hearing, as stated in the notice of hearing given in accordance with Rule 14.1(b)(3); provided, however, that the presiding officer may grant additional time for the submission of documents.

(e)   <u>Oral Presentations</u>. Any person desiring to testify on the subject of the hearing must so indicate on the registration form provided at the hearing. The presiding officer establishes the order of testimony and may limit the number of times a person may speak, the time period for oral presentations, and the time period for raising questions. In addition, the presiding officer may limit or exclude cumulative, irrelevant, or unduly repetitious presentations.

(f)   <u>Conclusion of the Hearing; Closing the Record; Hearing Examiner's Report</u>. At the conclusion of the testimony, and after the receipt of all documents, the presiding officer may either close the record, or keep it open to allow the submission of additional information. If the presiding officer is a Hearing Examiner, the Hearing Examiner must, after the record is closed, prepare a report to the Board. The report must include a summary of the subject of the hearing and the public comments received, together with the Hearing Examiner's recommendations for action. Upon completion and issuance of the Hearing Examiner's report, a copy must be submitted to the Board. Any interested person who so requests in writing will be notified when the report is completed, and furnished a copy of the report.

(g)   <u>Exceptions to the Hearing Examiner's Report; Reopening the Record</u>. Any interested person may make exceptions to the Hearing Examiner's report, and the Board may reopen the record, in the manner prescribed in Rule 14.6(b).

(h)   Decision; Appeal regarding District Rules

(1)   <u>Board Action</u>. After the record is closed and the matter is submitted to the Board, the Board may then take the matter under advisement, continue it from day to day, reopen or rest the matter, refuse the action sought or grant the same in whole or part, or take any other appropriate action. The Board action takes effect at the conclusion of the meeting and is not affected by a motion for rehearing.

(2)   <u>Requests for Rehearing</u>. Any decision of the Board on a matter may be appealed by requesting a rehearing before the Board within twenty (20) calendar days of the Board's decision. Such a rehearing request must be filed at the District Office in writing and must state clear and concise grounds for the request. Such a

rehearing request is mandatory with respect to any decision or action of the Board before any appeal may be brought. The Board's decision is final if no request for rehearing is made within the specified time, or upon the Board's denial of the request for rehearing, or upon rendering a decision after rehearing. If the rehearing request is granted by the Board, the date of the rehearing will be within forty-five (45) calendar days thereafter, unless otherwise agreed to by the parties to the proceeding. The failure of the Board to grant or deny the request for rehearing within ninety (90) calendar days of submission will be deemed to be a denial of the request.

(i)    Petition to Change Rules.

    (a)    A person with a real property interest in groundwater may petition the District where the property that gives rise to the real property interest is located to adopt a rule or modify a rule adopted under this chapter.

    (b)    Petitions must be submitted in writing to the District office and must comply with the following requirements:

        (1)    each rule requested must be submitted by separate petition;

        (2)    each petition must be signed and state the name and address of each person signing the petition;

        (3)    each petition must include:

            (A)    a brief description of the petitioner's real property interest in groundwater in the District;

            (B)    a brief explanation of the proposed rule;

            (C)    the text of the proposed rule prepared in a manner to indicate the words to be added or deleted from the text of the current rule, if any; and

            (D)    an allegation of injury or inequity that could result from the failure to adopt the proposed rule.

(c)    The General Manager may reject any petition for failure to comply with the requirements of Subsection (b) of this section and shall provide notice to the petitioner of the reason for the rejection.

(d)    Not later than the 90th day after the date the District receives the petition, the District shall:

        (1)    deny the petition and provide an explanation for the denial; or
        (2)    engage in rulemaking consistent with the granted petition.

    (e)    Nothing in this section may be construed to create a private cause of action for a decision to accept or deny a petition filed under this section.

## SECTION 15.  INVESTIGATIONS AND ENFORCEMENT

### RULE 15.1. NOTICE AND ACCESS TO PROPERTY

(a) The directors, engineers, attorneys, agents, operators, and employees of the District may go on any land to inspect, make surveys, or perform tests to determine the condition, value, and usability of the property, with reference to the proposed location of works, improvements, plants, facilities, equipment, or appliances. The cost of restoration shall be borne by the District.

(b) District employees and agents are entitled to enter any public or private property within the boundaries of the District or adjacent to any reservoir or other property owned by the District at any reasonable time for the purpose of inspecting and investigating conditions relating to the quality of water in the state or the compliance with any rule, regulation, permit, or other order of the District. District employees or agents acting under this authority who enter private property shall observe the establishment's rules and regulations concerning safety, internal security, and fire protection and shall notify any occupant or management of their presence and shall exhibit proper credentials.

### RULE 15.2.  RULE ENFORCEMENT

If it appears that a person has violated, is violating, or is threatening to violate any provision of the District Act, Water Code Chapter 36, District permit, District Rules, the Board of Directors may assess a civil penalty or file for an injunction or other appropriate remedy in a court of competent jurisdiction, as authorized by Chapter 36.102 of the Texas Water Code.

### RULE 15.3.  SEALING OF WELLS.

(a)    Following due-process, the District may, upon orders from the judge of the courts, seal wells that are prohibited from withdrawing groundwater within the District by the District Rules to ensure that a well is not operated in violation of the District Rules. A well may be sealed when:

   (1)    no application has been granted for a permit to drill a new water well which is not excluded or exempted from obtaining a permit; or
   (2)    no application has been granted for an operating permit to withdraw groundwater from an existing well that is not exempted from the requirement that a permit be obtained in order to lawfully withdraw groundwater; or
   (3)    the Board has denied, canceled, or revoked a drilling permit or an operating permit.

(b)    The well may be sealed by physical means, and tagged to indicate that the well has been sealed by the District. Other appropriate action may be taken as necessary to preclude operation of the well or to identify unauthorized operation of the well.

(c)    Tampering with, altering, damaging, or removing the seal of a sealed well, or in any other way violating the integrity of the seal, or pumping of groundwater from a well that has been sealed constitutes a violation of these Rules and subjects the person performing that action, as well as any well owner or primary operator who authorizes or allows that action, to such penalties as provided by the District Rules.

### RULE 15.4.  CIVIL PENALTIES.

(a)    The District may enforce Chapter 36 of the Texas Water Code and its Rules by injunction, mandatory injunction, or other appropriate remedy in a court of competent jurisdiction.

(b)    The Board by rule may set reasonable civil penalties for breach of any Rule of the District in an amount not to exceed $25,000 per day per violation, and each day of a continuing violation constitutes a separate violation. All civil penalties recovered by the District shall be paid to the Brazos Valley Groundwater Conservation District.

(c)    A penalty under this section is in addition to any other penalty provided by the law of this State and may be enforced by complaints filed in the appropriate court of jurisdiction in the county in which the District's principal office or meeting place is located.

(d)    If the District prevails in any suit to enforce its rules, the District may seek and the court shall grant, in the same action, recovery for attorney's fees, costs for expert witnesses, and other costs incurred by the District before the court.  The amount of the attorney's fees shall be fixed by the court.

### RULE 15.5.  FAILURE TO REPORT PUMPAGE AND/OR TRANSPORTED VOLUMES

The accurate reporting and timely submission of pumpage and/or transported volumes is necessary for the proper management of water resources. Failure of the permittee to submit complete, accurate, and timely pumpage, transport and water quality reports as required by District Rule may result in late payment fees, forfeiture of the permit, or payment of increased meter reading and inspection fees as a result of District inspections to obtain current and accurate pumpage and/or transported volumes and water quality reports.

### RULE 15.6.  EMERGENCY ORDERS

The District will develop Emergency Contingency Plans to deal with water quality or water quantity emergencies.  Public hearings on Emergency Contingency Plans shall be conducted by the Board prior to adoption.  To implement Emergency Contingency Plans, the Board, or the General Manager if specifically authorized by an Emergency Contingency Plan, may adopt emergency orders of either a mandatory or prohibitory nature, requiring remedial action by a permittee or other party responsible for the emergency condition.

### SECTION 16. WELL ASSISTANCE PROGRAM

### RULE 16.1. WATER WELL ASSISTANCE AGREEMENTS

When Well Assistance Agreements are entered, the District shall use the funds provided to the District thereunder in a manner consistent with the following program, unless otherwise specified in a Well Assistance Agreement. As of [*the adoption date of rule amendments*], the District has entered one Well Assistance Agreement with a permittee, effective Oct. 20, 2022, from which the District receives funding that it agreed to apply in accordance the terms of such agreement; such agreement sets out a detailed framework in its sections 1-6 that are the basis of this Well Assistance Program.

### RULE 16.2. OVERARCHING FRAMEWORK

Well mitigation associated with a project will be conducted by the District in phases after certain events occur in the development of a project that trigger funding to the District for such purposes under the a Well Assistance Agreement.

The pre-mitigation phase will involve investigation and planning. The District will work to identify potentially eligible wells and conduct diagnostics and evaluations to determine—on the basis of hydrologic modeling, project proximity, and well data collection—which potentially eligible wells the District believes are reasonably likely to be eligible for mitigation under the Well Assistance Program. The District, in its discretion, may deem mitigation to be warranted if it preserves the ability of well owner to continue to access groundwater through its existing well system, commensurate with the well's production capacity (estimated from information in the well's driller log filed with the District or from District-conducted diagnostics), given both the existing well conditions and the estimated relevant aquifer responses to the relevant project ("AP Wells," which are Assistance Program Wells).

The mitigation phase will involve mitigating AP Wells. The mitigation phase will begin in accordance with agreement terms, which will provide the District with appropriate funding. The District will apply its technical expertise to create appropriate prioritizations for its Well Assistance Program, based on the details of project development, including how production and export volumes may change over time. The mitigation phase will also involve responding to well owner concerns, consistent with the procedures set out herein.

The District's Well Assistance Program will take into consideration wells that are identified as having pre-existing construction deficiencies. Program dollars will not be utilized to correct such deficiencies or water quality issues. In general, mitigation options will be limited to lowering a pump, replacing pumping equipment, drilling a new well, or providing a connection to an existing public water supply. It is anticipated that nearly all mitigation cases will be unique and will depend on the construction and condition of the AP Well and pumping equipment and proximity to the relevant project.

67

## RULE 16.3. OBJECTIVES OF THE WELL ASSISTANCE PROGRAM

The primary objectives of this Well Assistance Program are:

- to assist existing owners/operators of AP Wells;
- to mitigate AP Wells in a manner that will address the ability of well owners to continue to access groundwater through, or in a manner comparable to, their existing well system, considering anticipated aquifer responses to a project for which there is a Well Assistance Agreement, while minimizing, to the extent reasonable, any subsequent mitigation of the same well in the future (**Mitigation Standard**);
- to conduct well mitigation activities in a consistent manner that is fair to proximate well owners and builds consensus and support in the community;
- to respond to concerns/complaints of well owners through the sound technical evaluations and approaches in the mitigation procedures outline below in a timely manner; and
- to protect the relevant aquifer formation as a resource by conducting mitigation of wells consistent with current state regulatory standards.

## RULE 16.4. MITIGATION PROCEDURES

The following procedures outline the general work flow, support services, and the outside services the District intends to use, as appropriate, to address mitigation of AP Wells pursuant to a Well Assistance Agreement. The District shall implement its Well Assistance Program consistent with these procedures.

### (a) Mitigation Criteria

To be eligible for this Well Assistance Program, and subject to further evaluation by the District for potential mitigation, the well must meet the following criteria (**Potentially Eligible Well**):

(1) The well must screen sands of the same aquifer as the relevant project, unless otherwise specified in a Well Assistance Agreement.

(2) The well must be registered/permitted with the District. If the well is not currently registered/permitted with the District, a landowner could immediately file the necessary registration paperwork and then the well would be eligible for mitigation.

(3) The well must be active or have been active prior to the date specified in the Well Assistance Agreement, which is expected to be the date of Operating Permit issuance for the relevant project, with operational equipment capable of pumping water to the land surface; or well owner must have submitted to the District an administratively complete application for an exempt or a nonexempt well prior to such date. The District staff will determine if the well has been active.

(4) The well must be located in the District.

(5) The legal well and property owner(s) must provide the District with written consent for mitigation activities.

Baseline water levels of the Potentially Eligible Wells and/or AP Wells, as determined by the District, shall be measured by the District periodically and recorded in the District's Well Assistance Database.

*Last Amended October 9, 2025*

**(b) Phase 1 Well Investigation**

(1) The District staff will conduct an initial well investigation, either by desktop review or in the field, as appropriate, to determine if a well is a Potentially Eligible Well and, if so, is an AP Well.

(2) District staff will collect the following information in an initial well investigation:

    (A)    Basic data:

        (i)    Legal Well Owner's Name

        (ii)    Contact Information (Address, phone number, cell phone number)

        (iii)    Primary Well Use

        (iv)    Secondary Well Use (if any)

        (v)    Well ID (State and/or Water District)

        (vi)    Latitude and Longitude

        (vii)    Casing Diameter, Screen Diameter, Casing Depth Setting and Screen Depth Setting

        (viii)    Year Drilled

        (ix)    Pressurized Storage Tank Volume

        (x)    Number of facilities provided water by well

        (xi)    Contractor that constructed the well

        (xii)    Any known well deficiencies (producing sand, producing colored or turbid water, screen issues, casing issues, etc.)

    (B)    Distance from the nearest project well.

    (C)    Digital photographs of the wellhead and associated appurtenances. If possible, these photos will also document any unusual conditions associated with the well or well site.

    (D)    Latitude and Longitude coordinates of the wellhead, via the use of Global Position System (GPS) equipment.

    (E)    Copies of any owner-provided well information such as drilling reports, geophysical logs, invoices, etc. geophysical logs, invoices, etc.

    (F)    The well owner's preferred route for the contractors to take in order to get to the well site to minimize the potential of damage to underground pipes, septic systems, overhead electrical lines, and/or telephone lines.

    (G)    Thorough documentation (digital photography) of the condition of the well owner's property, the area surrounding the well site, and the route that service equipment will utilize to service the well prior to entering the property with the well service contractor or any equipment.

(3) The goal of the initial well investigation is to gather as much information as possible regarding the well and the conditions of the system to aid in determining if the well is a Potentially Eligible Well and, if so, is an AP Well, and to support future diagnostic or mitigation efforts. After the initial well investigation, the District staff will enter the data collected during the initial investigation into the well mitigation database. The District staff will create and enter the data into a hard-copy file and will try to correlate the well information with the state and district databases. The District staff may enter into a landowner/well owner agreement to periodically monitor the water level in Potentially Eligible Well or an AP Well.

*Last Amended October 9, 2025*

(4) Once the District determines that a Potentially Eligible Well is an AP Well, District staff will identify to the well owner and/or landowner the location of the well and communicate with the well owner regarding the District's data and evaluations, recommendations, and potential mitigation options. The District staff will work with the well owner and/or landowner, after the initial well investigation, to schedule an agreed upon time to have an authorized contractor perform any additional water well diagnostics needed before mitigation.

**(c) Phase 1 Water Well Diagnostics**

(1) Well diagnostics are an important step in the mitigation process.  At times, well owners may not have sufficient well information or records (for instance, records documenting the method of construction) to allow the District to perform well mitigation without a diagnostics phase.  Even if the well owner provides documentation (e.g., driller's log or construction and equipping invoices), diagnostics may still be needed prior to mitigation because water levels and well conditions change over the life of a well.  The information gathered during the diagnostics phase will be the basis for mitigation decisions.

(2) The District will make good faith efforts to diagnose and return Potentially Eligible and/or AP Wells to service as quickly as possible and will coordinate with the well owner to bring domestic wells back to service so as to minimize the disruption of well use.

(3) Prior to the actual diagnostics being performed, the District staff member will ensure that the District has:

   (A)    Received a signed copy of a diagnostic form signed by the legal owner of the well and property on which the well is located, if required.
   (B)    Processed a work estimate for diagnostics and provided it to the District's contractor.
   (C)    Scheduled the appropriate contractor based on work required for the well.
   (D)    Met with the well service contractor and the well owner or designee, prior to entering the property, to determine if there are any safety hazards along the access route between the entrance to the property and the well site prior to heavy equipment entering the property.  In addition, the well owner and landowner will be asked to identify the location of any underground water, septic tank and lateral line drain field, telephone, cable, electrical lines (underground or overhead) or other utilities that could be inadvertently damaged while mitigating the well. All discussions will be documented completely. Depending on the location, underground electrical, water, or cable utilities may need to be marked if they will interfere with access to the well.

(4) The actual diagnostics will involve an appropriate licensed drilling/well service contractor performing the following steps, as needed, with a District staff member present:

   (A)    Inspect and test control box / pump electrical.
   (B)    Measure the static water level in the well from the land surface.

(C)     Run the pump and measure the water level drawdown from the land surface.

(D)     Measure the pumping rate in gallons per minute (GPM).

(E)     Remove the pump column and pump, if needed, in order to determine where the pump is set and the condition of the pump and pump assembly equipment.

(F)     Take digital photos of the equipment to document condition.

(G)     Televise the well, if needed, in order to determine the location of the screened intervals and if there are any unusual conditions or deficiencies associated with the well.

(H)     Provide an opinion on whether the well is within TCEQ and Texas Department of Licensing and Regulation (TDLR) well construction standards.  If the well does not appear to meet standards, then the District staff member will inform the landowner of what was observed that does not meet state requirements.

(5)  In some cases, enough information may be obtained during the diagnostics phase to make a sound mitigation decision at that time.  If time allows and if authorized by the well owner, the District staff member will authorize the contractor to make the adjustments in order to complete mitigation based on the Mitigation Standard and return the well to service.

(6)  If a mitigation determination cannot be made during the diagnostics phase, and the owner needs the use of the well, the contractor will re-install the equipment and ensure the well is functioning properly.

(7)  After the completion of the diagnostics phase, the contractor will provide the District with a detailed diagnostic report.  Copies will be retained in the hard copy file, as well as entered into the District's Well Assistance Database.  Copies of the diagnostic report and any televising video will also be provided to the well owner.

(8)  After the diagnostics phase, the District staff will evaluate the following well diagnostic information and determine the appropriate mitigation actions under the Mitigation Standard:

(A)     Static Water Level

(B)     Water Level Drawdown While Pumping at a Measured Rate

(C)     Gallons Per Minute Flow Rate – Pump Capacity

(D)     Pump Setting

(E)     Total Well Depth

(F)     Televised Inspection of Well

(G)     Overall System Evaluation, Identification of State Standard Deficiencies

(H)     Electrical Equipment Evaluation

**(d) Phase 1 Diagnostics Evaluation**

(1)  Diagnostics evaluation will involve verifying that the well is a Potentially Eligible Well and an AP Well, and if so, determining what form of mitigation, if any, is appropriate under the Mitigation Standard.  Based on the characteristics of the Potentially Eligible Well, the evaluation may be performed by District staff or by the District hydrogeologist.

71

(2) District staff will review the well diagnostics report and compare this information to the District's hydrologic monitoring program and groundwater flow modeling.

**(e) Phase 2 Well Mitigation**

(1) Based on all of the information gathered during the initial or subsequent investigation(s) in the diagnostics phase, the District staff will determine the mitigation actions appropriate for each AP Well. Some Potentially Eligible Wells will require no action and will not be considered AP Wells. Mitigation options may include:

(A) No Mitigation- If the Potentially Eligible Well and the pump are deep enough to accommodate the anticipated drawdown and an adequate pumping rate can be maintained for that location, no mitigation will be performed.

(B) Lowering of Pump - If the well is deep enough, and the pump can be lowered to a level that will accommodate the anticipated drawdown for that location, then the pump will be lowered.

1) Prior to lowering of the pump, if it is determined that the current pump and/or motor will not be sufficient to maintain the prior output at the proposed drawdown level, then the District will replace the pump and/or motor, to restore to the rate of production measured and recorded during the diagnostics phase.

(C) Drilling of New Well - If the well is not deep enough and will not accommodate the lowering of the pump to accommodate the anticipated drawdown for that location, then the District will have a replacement well drilled and equipped. In most locations, the District will plug the existing well(s) unless the District views it prudent to utilize the existing well as a water level monitoring well. The contractor performing the work will be required to obtain necessary permits and/or approvals from the local governing entities.

(D) Cost Effective Alternative Water Supply – if a physical connection to an existing water supply line is cost-effective and appropriate to the uses, putting the connection in place can be considered for possible mitigation action, in the District's discretion, with the well owner's authorization.

(2) In all cases, the District will communicate proposed mitigation actions to the well owner prior to any work being performed and the well owner will be required to enter into an agreement with the District to allow the District to mitigate the well, which may include a waiver of liability. The District shall not pay any ongoing operational costs for the AP Wells.

(3) The District may elect to repair/replace other AP Well components that have the potential to fail or cause future problems if the District determines such repair or replacement is necessary to the successful implementation of a particular AP Well mitigation. This might include the installation of a one-inch diameter water level measuring port or repairing/replacing the following components:

*Last Amended October 9, 2025*

(A)    Inferior electrical cable;
(B)    Electrical equipment system deficiencies;
(C)    Deteriorated pump column/drop pipe; or
(D)    Associated appurtenances

(4) All well mitigation activities shall be conducted in accordance with State and local requirements and regulations and adhere to the guidelines outlined in District-provided well mitigation contracts.  These contracts and guidelines will be developed to ensure that proper well construction methods are utilized. The District staff will coordinate all mitigation activities.

(5) Warranty.  Under the mitigation contracts, the individual contractors will be responsible for the warranty of their work regarding defective workmanship or materials, or both, and the contractor's warranty will be provided to, or assigned to, the well owner after the District's evaluation of the work.  Contractor provided bonds will be required for certain mitigation projects, all as deemed appropriate by the District.  The District will ensure in its mitigation contracts that if within 3 days after the receipt of a notice in writing to the Contractor or his agent of defective workmanship or materials, the Contractor shall neglect to make or to undertake with due diligence the necessary repairs, District staff will have the authority to engage another contractor to make such repairs at the Contractor's expense.

## RULE 16.5. WELL OWNER COMPLAINT RESPONSE

If a well owner in the District experiences a water well outage and contacts the District, the District will evaluate if the well is a Potentially Eligible Well and then an AP Well within the scope of an active Well Assistance Agreement and consistent with the procedures in this Well Assistance Program.  The District will make good faith efforts to do so in a timely manner.  If determined by the District to be necessary, the District will arrange for water for in-home domestic uses to be provided in a 1,000 gallon bulk tank to well owners temporarily until the District completes its evaluation.  If the District determines that the well is an AP Well, the District intends to continue to arrange for the temporary water supply until the AP Well can be restored to full operation.