# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

_____

FAZZINO INVESTMENTS, LP for

Itself and All Others Similarly

Situated,

      Plaintiffs,

   v.                  Case No.

BRAZOS VALLEY GROUNDWATER     6:25-cv-00001-ADA-DTG

CONSERVATION DISTRICT,

      Defendant.

_____

VIDEOTAPED DEPOSITION OF MICHAEL R. THORNHILL

DATE:         Friday, March 27, 2026

TIME:         10:04 a.m.

LOCATION:    Lloyd Gosselink Rochelle & Townsend,

             P.C.

             816 Congress Avenue, Suite 1900

             Austin, TX 78701

OFFICIATED BY: Nicole Johns

JOB NO.:       7983131

Page 1

A P P E A R A N C E S

ON BEHALF OF PLAINTIFF FAZZINO INVESTMENTS, LP:

RICHARD COFFMAN, ESQUIRE

Coffman Law Firm

3355 West Alabama Street, Suite 240

Houston, TX 77098

rcoffman@coffmanlawfirm.com

(409) 833-7700

ON BEHALF OF PLAINTIFF FAZZINO INVESTMENTS, LP:

C. BRANTLEY JONES, ESQUIRE

Sprouse Shrader Smith

701 South Taylor Street

Amarillo, TX 79101

brantley.jones@sprouselaw.com

(806) 468-3300

Veritext Legal Solutions
800-336-4000

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT BRAZOS VALLEY GROUNDWATER

CONSERVATION DISTRICT:

JOSE DE LA FUENTE, ESQUIRE

Lloyd Gosselink

816 Congress Avenue

Austin, TX 78701

jdelafuente@lglawfirm.com

(512) 322-5800


ALSO PRESENT:

Brad Rosauer, Videographer

Page 3

Q    And as you know, generally described, it's owned in place, subject to reasonable regulation, as real property by the owner of the surface estate or someone else they transferred it to.

A    Yes.

Q    Okay.  And I'm going to ask you some questions that -- I just want to be clear what is not in your opinion and report.  These may be pretty short and easy.

You're not offering any opinion on the dollar value for any particular tract of land in the district in your expert opinion.  Are you?

A    Not in this case.  No.  I don't feel like it's necessary.

Q    Okay.  You have no opinion of the dollar -- well, let me talk about something.

The Fazzino tract, the 69-acre tract that is Mr. Fazzino -- is Fazzino Investments, LP's and is the subject of Fazzino Investments, LP's particular complaint.  Do you understand the tract I'm talking about?

A    I'm aware of the tract, yes.

Q    Okay.  So if we're talking about the Fazzino tract going forward, do you understand it's that 69.4- or-so-acre tract?

Page 14

A    I understand that that's the -- the tract that's subject to this -- the suit.

Q    Okay.  And I just want to make sure we have the nomenclature.  I don't confuse you when I say "the Fazzino tract."  You knew that's what we're talking about.

A    Yes.

Q    Okay.  So you're not offering any opinion of the dollar value of the Fazzino tract in this case?

A    No.

Q    Either before the rule change or after?

A    No.

Q    You're not offering an opinion as to the dollar value of the groundwater component of the Fazzino tract alone?

A    Nope.

Q    Okay.  Either before or after the rule change?

A    I'm not.

Q    Okay.  I do want to go to paragraph 10 of your report.  And oh, about two-thirds down, where the line that begins with "Capital new rules."  Do you see that?  Maybe it's more like 60 percent of the way down.

A    I'm not seeing it here --

Page 15

A     Yes.

Q     And then you talk about what the calculation is under the new rules below that; right?

A     Yes.

Q     Okay.  What I just want to understand is, these are -- these calculations are exemplar or hypothetical numbers.  This isn't a calculation as to a particular tract of land that you're -- you've identified?

A     That's correct.

Q     Okay.  This is not an analysis of, say, for example, the Fazzino tract?

A     No.

Q     Or any of the tracts surrounding the Fazzino tract?

A     No.

Q     All right.  Let's go to paragraph 9.  At the top of paragraph 9, you refer to "minimum well size to be economically viable for selling water to public water systems, other than localized small systems, for industrial purposes and for large-scale irrigation purposes."  You see that?

A     Yes.

Q     Okay.  These are not the only possible purposes for a Simsboro well in the district.  Are

Page 18

they?

A    What uses are you referencing?

Q    Public water systems, industrial purposes, large-scale irrigation.

A    I'm sure there are other uses, potential uses.

Q    Okay.  Well, for example, you say, you know, "other than localized small systems," that may be a use.

A    Yes.

Q    And there may be other uses you haven't accounted for here?

A    Possibly.

Q    Okay.  For example, like if a 69-acre property was developed as a small residential development, and the well was drilled to serve that development; that could be a purpose.

A    That could be.

Q    Okay.  You haven't analyzed -- again -- and I may ask you, just as a follow up to be clear, specific questions about the Fazzino tract you may have already answered.

You haven't analyzed the Fazzino tract to determine what particular purposes may or may not be available for it?

Page 19

A    I did not analyze the Fazzino tract for that.

Q    Okay.  And you're not offering an opinion as to what other purposes are or are not available for any other tract in the district?

A    No.  It's not -- it's not about the -- the specific purposes.  No.

Q    Okay.  You haven't analyzed any particular tract to exclude other such potential purposes?

A    No.

Q    Or calculate the economic cost or yield of such purposes?

A    No.  I have not.

Q    All right.  At the end of this paragraph 9, you state that "This effective" -- referring to the rule change -- you state that "This effectively means that the landowner's groundwater rights have been devalued by at least 75 percent."  You see that?

A    I see it.

Q    But you -- again, you are not offering any opinion of dollar value or dollar impact on any specific property?

A    It -- it has to do with the -- the right. The amount of water that can be pumped.

                    MR. DE LA FUENTE:  Object to

Page 20

responsiveness.

BY MR. DE LA FUENTE:

Q   I just -- I'm just asking, you're not offering any opinion as to dollar value -- a reduced dollar value as to any particular property?

A   I'm not offering any dollar value.

Q   Okay.  You then state in the next sentence, "In some instances, such a burden may cause a complete loss of an otherwise viable market."  You see that?

A   Yes.

Q   Okay.  Again, your report does not list or identify any such instances; right?

A   It does not.

Q   Okay.  And your reference to the "otherwise viable market" as we just talked about -- you haven't analyzed any specific property to determine whether or not there is a viable economic market for a well on that specific property?

A   I haven't -- didn't analyze any specific property.  But just knowing what is happening in the area, there -- there are markets that are evolving.

Q   But as to any specific property, more questions would have to be asked to determine whether that was an otherwise viable market for that property; right?

Page 21

A    Yes.

Q    And you haven't asked or answered those questions in your expert opinion here?

A    Not in this one.  No.

Q    Okay.  Let's go down to paragraph 10, about the fifth line, beginning "Within my experience."  You refer to buyers having -- or project developers likely having "little to no interest in leasing or purchasing groundwater rights and tracts less than 35 acres under the old rules or less than 140 acres under the new rules."  Do you see that?

A    I see it.

Q    And then give the example of pumping rates for individual wells of less than 700 GPM.  You see that?

A    I see it.

Q    Okay.  And I just want to understand, is the break -- by your opinion, the key is the break point of the well capacity.  They need a 7 -- you're referring to buyers who want a 700 GPM or greater well?

A    By and large the expense of drilling wells into the Simsboro -- there are other alternatives that may be shallower that are -- and cheaper.  So yes.

Q    And just to be clear, the type of project

Page 22

I have to drill a hundred feet to hit an aquifer, I drill; I hit the aquifer.  That water may be pushed up to where it's actually only 80 feet below the top -- the surface of my land?

A    It -- it depends on where the top of the aquifer is, if you call it artesian or not.

Q    Absolutely.  But our bottom line is, the top of the aquifer is at one space and, then when I punch a hole in it, water pushes up into the wellbore a certain amount?

A    Above the top of the aquifer, yes.

Q    Okay.  And then you refer -- and then you note that "while the storage depletion would be very small in an artesian aquifer."  You see that?

A    Yes.

Q    And this is an artesian aquifer; right?

A    Throughout the vast majority of the area, yes.

Q    Okay.  And by -- when I say this -- the Simsboro Aquifer is an artesian aquifer?

A    The Simsboro is artesian throughout the vast majority of -- of the counties, yes.

Q    Okay.  So first things first, you have not observed, analyzed, or opine that the Fazzino tract has suffered any decline in artesian head or pressure?

Page 37

A    Generally, I know it to be true; but I have not analyzed the Fazzino property, no.

Q    Okay.  You're not offering an opinion as to any particular property having suffered a decline -- a particular decline in artesian head or pressure in this opinion.  Are you?

A    That's correct.

Q    Okay.  And you're not offering your opinion here that the amount of Simsboro groundwater beneath the Fazzino tract has been reduced by any measurable amount?

A    No.

Q    Okay.  All right.  I'm going to go ahead and mark as Exhibit 4 -- try to do it without smudging it.

(Exhibit 4 was marked for identification.)

All right.  I'm going to hand you what's been marked as Exhibit 4.  Do you recognize Exhibit 4?

A    Yes.

Q    And what is Exhibit 4?

A    This is the aquifer evaluation report that my Thornhill Group, which is a predecessor to Legacy Groundwater, prepared on behalf of Mr. Fazzino for his permit application.

Q    And this is -- if you go to page 9, this is

Page 38

high-volume wells.  "Due to the distance of the proposed wells from the outcrop of the aquifer, reduction in artesian pressure is the only anticipated measurable effect from the proposed pumping."  You see that?

A    I see it.

Q    And that -- if we're talking in general, that's true for these wells.  It's true for any similar size well throughout the aquifer; right?

A    Any well in the artesian part.  Doesn't matter what size well.

Q    That's the only anticipated measurable effect in your opinion?

A    There is a slight reduction in -- in storage, but it's probably very, very small.

Q    Well, in fact, in your next sentence you say "The aquifer will remain completely full, and there will be only an infinitesimal reduction in storage."

A    That's correct.

Q    That's correct.  So it is correct if we were standing in front of the court today, and the judge turned to you and asked, "Look, I want to know what these large-volume wells do to the total volume of water remaining in storage under any particular property."  You would say, "The aquifer will remain

Veritext Legal Solutions
800-336-4000

completely full, and there will be only an infinitesimal reduction in storage."  Wouldn't you?

A    Yes.

Q    Bottom line is, however many millions of gallons of Simsboro groundwater exists in a local area, that number of millions are going to remain functionally the same.

A    Functionally the same in -- yes.

Q    Okay.

A    I -- I will add that -- that, if you read further, the -- the leakage between aquifers is also an impact.  But that also serves as a source of water to help keep the Simsboro full.

Q    What number did I give that?  Four?

A    Four.

Q    Let me hand you what is being marked as Exhibit 5.

(Exhibit 5 was marked for identification.)

Can you identify Exhibit 5, please?

A    It is also an aquifer evaluation report prepared for Mr. Brad Eli and the Eli Family Partnership associated with permit applications for five new Simsboro wells.

Q    Isn't it eight?

Page 43

questioned answers about the undetectable amount for the current and foreseeable future pumping demands. And you noted that "the effects were small," and you characterize it as "essentially undetectable."  Do you see that on -- going down to page 78?

A   Yeah.  A very small fraction of the total storage, yes.

Q   Okay.  And I just want to ask you, do you stand by your testimony on that point?

A   Yes.

Q   Okay.  Let's go back to Exhibit 2, your report, and looking at paragraph 14 kind of in the middle.  Your comparison point is new permits versus people who have permits under the old rules.  You note that "the new rules serve to put holders of new permits at risk of suffering drainage from their neighbors pumping under the old rules."  You see that?

A   Yes.

Q   And again, "drainage," your -- that's your change in direction and magnitude of flow through the aquifer?

A   Yes.

Q   Okay.  You're not offering any opinion that that effect has actually occurred or is about to occur on the Fazzino tract?

Page 59

A    I don't have any basis to -- to know if it is or isn't on the Fazzino tract.  No.

Q    And you're not offering any opinion that it is or isn't occurring with regard to any particular tract in this expert report.  Are you?

A    Not in -- no.

Q    Okay.  The distinction you refer to in this sentence is entirely the time-based distinction.  Holders of new permits versus neighbors pumping under the old rules; right?

A    Yeah.  The distinction is the -- the disparity between the old rules and the new rules.

Q    Which is, you say, "literally treating different owners in the same aquifer, or groundwater reservoir, differently."  Right?

A    Yes.

Q    And that's entirely time-based, based on the rule change.

A    It's based on the rule change.  Yes.

Q    Paragraph 16, you note that "the production and spacing rules are based on a formula that contemplates a circle around any given wellbore."  Right?

A    Yes.

Q    And in fact, in your own analysis, you

Page 60

uses?

A    I am not.

Q    Have you analyzed, for the purpose of your opinion here, the current or potential future purpose of any particular tract in the district?

A    No.

Q    You haven't analyzed -- you're not offering any opinion about any contracts or pending contracts to develop Simsboro groundwater from the Fazzino tract at any time.  Are you?

A    Not in -- not in this case.  No.

Q    Or for any other particular tract.  Are you?

A    No.

Q    We talked about the fact that you're not offering a valuation opinion.  You don't have any independent knowledge of any valuation of the Fazzino tract.  Do you?

A    No.

Q    Either as a whole or just the groundwater interest?

A    No.

Q    Same question for any other tract in the district?

A    That's correct.

Q    I don't see in here any opinion that any

Page 63

A    I -- I think also the -- the -- just the reality that that's -- they're -- they're deprived of their property right to produce a fair share of groundwater.

Q    You believe that the result of their inability to produce the same amount of groundwater under the new rules versus the old rules deprives them of their fair share?

A    Yes.

Q    Okay.  And again, you're not offering any particular opinion as to any landowner suffering drainage as you define it; right?

A    That's correct.

Q    You're not offering any opinion as to any landowner suffering reduction in storage of any amount; right?

A    That's correct.

Q    And that fair opportunity, that is a legal standard; right?

A    I -- I suppose it is -- it -- it just also makes sense from a hydrogeologic standpoint to me.

Q    Okay.  But it comes from, you know, this case law in the state of Texas; right?

A    Yes.

Q    And to some degree, chapter 36 of the water

Page 77

CERTIFICATE OF DEPOSITION OFFICER

I, NICOLE JOHNS, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

*Nicole Johns*

NICOLE JOHNS

Notary Public in and for the

State of Texas

[X] Review of the transcript was requested.

Page 88

Veritext Legal Solutions
800-336-4000

CERTIFICATE OF TRANSCRIBER

I, MEAGAN HASELTINE, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

*Meagan Haseltine*

MEAGAN HASELTINE

Veritext Legal Solutions
800-336-4000