**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FAZZINO INVESTMENTS, LP, for itself and all others similarly situated,** | § | |
| ***Plaintiffs*,** | § | |
| **v.** | § | **CASE NO. 6:25-cv-00001-ADA-DTG** |
| **BRAZOS VALLEY GROUNDWATER CONSERVATION DISTRICT,** | § | |
| ***Defendant.*** | § | |

**DEFENDANT BRAZOS VALLEY GROUNDWATER CONSERVATION DISTRICT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (DKT. NO. 78)**

Defendant Brazos Valley Groundwater Conservation District (the "District") submits this Reply in support of its Motion for Summary Judgment (Dkt. No. 78). In support thereof, the District respectfully states the following:

## EXECUTIVE SUMMARY

Both Plaintiff's Response to Defendant's Motion for Summary Judgment and its own Motion for Summary Judgment steadfastly refuse to offer any evidence necessary to establish a taking of Plaintiff's property.

The Court has accurately summarized the law on takings:

- To determine whether a regulatory taking has occurred "*requires balancing factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action*." (Dkt. No. 63 at 8.)

- To determine whether a per se taking has occurred, "*the Court would need evidence of drainage*." (*Id.*)

It's axiomatic that to prevail on a takings claim, a taking must have occurred. Though Plaintiff has at times advanced both regulatory takings and a per se physical invasion theories in this case, the evidence conclusively establishes that there is not and cannot be a taking. That is because Plaintiff's actual complaint is *not* that a taking of any of Plaintiff's specific property occurred, but the District's rules are "unfair," "discriminatory," "disparate," and do not treat Plaintiff "equally" (words appearing throughout Plaintiff's Response). Tellingly, Plaintiff's proposed remedies confirm as much: not only restoring the production rights allegedly abrogated by the Amended Rules, but alternatively "impos[ing] proportional restriction District-wide" (Dkt. No. 92 at 11) and "spread[ing] the burden of curtailment across all permitted groundwater production, past and future" (Dkt. No. 51 at 19.)

Plaintiff's position, in short, is that it doesn't matter how many cookies Plaintiff had or how many cookies Plaintiff gets today, so long as everyone—regardless of the date their permit was issued—gets the same per-acre number of cookies. That is not a takings claim. Which is why Plaintiff has not presented evidence of a takings claim and why Plaintiff's takings claim should be dismissed.

In the interest of brevity, Defendant will not restate at length the law and arguments fully briefed in Defendant's Response to Plaintiff's Motion for Summary Judgment (Dkt. No. 76) and Defendant's Motion for Summary Judgment (Dkt. No. 78), both of which demonstrate that Plaintiff's sole pleaded claim should be dismissed. Defendant instead briefly addresses some of Plaintiff's continuing

thematic failings in its Response—legal and factual—in establishing any takings claim.

## ARGUMENTS AND AUTHORITIES

Plaintiff's response reiterates the two key "factual" allegations on which its entire claim rests: (1) under the District's New Rules (which apply to all landowners seeking new permits), Plaintiff is purportedly able to produce groundwater at only 25% of the annual rate of production allowed under the Old Rules, and (2) others who obtained permits under the Old Rules (which also applied to all landowners at the time) may continue producing groundwater at the greater rate permitted under the Old Rules.

The problem with the first "fact"—which is one of "the regulatory authority has limited the use of a portion of my property"—is that it presents only a potential classic regulatory taking claim. And to determine the predicate question of whether a regulatory taking has even occurred requires applying the well-known regulatory takings analysis from *Penn Central* and all its progeny. Plaintiff has opted out of that, declining to present evidence of any factor.

The problem with the second "fact" is that it is grounded in what some other person (not the District) is doing. And the only possible way that "what some other person is doing" can give rise to a taking is if (1) the District is allowing that person (2) to actually enter or otherwise physically invade Plaintiff's land, as described in *Cedar Point Nursery*. But the facts conclusively establish that no such invasion has occurred, and indeed none can occur in the future.

- **Plaintiff continues to state a claim based only on an abstraction/hypothetical.**

Plaintiff repeats mathematical statements as a point of comparison, but refuses to apply any of that math to Plaintiff's tract. Instead, Plaintiff states the hypothesis of how the Amended Rules *might* affect a particular property, studiously avoiding answering the question of "okay . . . but do the Rules have any such effects on Plaintiff's property? For example, is Plaintiff's groundwater being drained by any adjacent well pumping large volumes of water under the Old Rules?"[1]

- **"Fairness," "equality," and "discrimination" have nothing to do with a takings claim.**

Plaintiff's Response rests on consistent complaints about equality, fairness, discrimination, and the like. Those concepts are irrelevant to a takings claim:

<u>Takings are about *compensation*, equal protection claims are about *comparison*</u>.

No law analyzing whether a taking has occurred analyzes what someone else has. The only relevant question is "what did Plaintiff lose compared to what Plaintiff had?" And while Plaintiff repeatedly says it lost the right to produce a larger volume of water, that is no different than what any other landowner "loses" under a new regulation: a landowner might lose the right to build four stories instead of two, or open a bar as opposed to a business that doesn't serve alcohol, or the right to pave

[1] Plaintiff's expert, while offering generalized discussion of hypotheticals and percentages tied to same, unequivocally disclaimed offering *any* opinion evidence as to any drainage effect—by any well—on Plaintiff's tract. When asked if any drainage was occurring, he answered "I don't have any basis to – to know if it is or isn't on the Fazzino tract. No." (Dkt. No. 78-3 at 60:1–2.)

over all 20 acres of its land instead of only 10 acres. No taking could be found in *any* of those scenarios without a *Penn Central* analysis. The same is true here.

Plaintiff's complaints about "equality" and "discrimination" can only sound in equal protection, a claim that a party represented by this same counsel, suing this same District, based on analogous "different rules based on different timing," already lost in earlier litigation in this court.

- **Plaintiff's *Marrs* argument is based on a "right" to produce a "fair share" which is tied to a "right" to offset drainage: that is, there must be drainage for any such "rights" to be implicated.**

A claim must be predicated on an injury. The very line of Texas oil and gas cases Plaintiff cites establishes a clear two-part test to do so: there is an actionable injury to a landowner's correlative rights only if he (1) "demonstrates that reserves underlying his land are being drained" and (2) demonstrates "that he does not have an opportunity to offset that drainage." *Texaco Prod. Inc. v. Fortson Oil Co.* 798 S.W.2d 622, 624 (Tex. App.—Austin 1990, no writ). If Plaintiff insists on going down the *Marrs* road, that's where it leads: no drainage, no injury.

Plaintiff's drainage concerns arise only from wells operating under the Old Rules; the Amended Rules allegedly "prevent Plaintiff from protecting against drainage from neighboring groundwater wells operating under the materially more favorable standards of the Old Rules." (Dkt. No. 92 at 18.) But Plaintiff does not offer evidence of any such "Old Rules" neighboring well actually "draining" its groundwater. Nor is its concern about "future drainage" apposite: *because the*

*Amended Rules no longer allow any further permits of higher-volume wells under the Old Rules*, the harm that Plaintiff fears can never happen.

No new well can be drilled on neighboring land without having to follow the Amended Rules, just like Plaintiff would have to.[2] Plaintiff's groundwater is not presently being drained by any "Old Rules" well, and thus never can be.

The same is true of Plaintiff's "cone of depression" concern: no current impact is alleged, and any future well that might cause an impact would likewise be subject to the Amended Rules, just as any future well operated by Plaintiff would be.[3]

- **The relief Plaintiff seeks tells the Court this is not a takings case.**

As noted above, takings cases are about compensation (taking property is not a constitutional violation; taking it *without just compensation* is the actionable violation). Plaintiff's disclaimer of compensation reveals the game being played, and it is not being played on the field of a takings claim.

Plaintiff seeks declaratory relief and an injunction that *first*, asks the Court to declare that a taking has occurred. So, even Plaintiff concedes that the Court must find passage through the door of either *Penn Central* or *Cedar Point Nursery* (finding

---

2 *Stratta v. Roe* is telling by contrast: there, a specific neighboring well (the City of Bryan's) allegedly drained plaintiff's land. 961 F.3d 340, 360 (5th Cir. 2020). Here, no such well is even alleged. The Fifth Circuit's opinion came at the Rule 12(b)(6) stage, remanding for factual development. And once developed, that equal protection claim, based on a comparable, temporally based "existing well" distinction, was dismissed on summary judgment.

3 To be clear, "cone of depression" is not relevant in this takings case. Texas law does not create any property interest in the artesian head of groundwater beneath one's property, and thus no such impact could constitute a taking.

that a taking has occurred) to proceed. Second, Plaintiff requests relief that, in simple terms, requires all parties (those who hold permits under the Old Rules versus everyone else, including those same parties, who now must operate under the Amended Rules for any future permits) to operate on equal terms for all time.

Plaintiff admits that equality—not restoring to Plaintiff anything that Plaintiff has lost—is the aim. Voiding the Amended Rules and allowing everyone to operate under the Old Rules for eternity will do the trick. But *also*, requiring all landowners to operate under the Amended Rules (that is, curtailing permits granted under the Old Rules) would do the trick. The point is not compensation, the point is "make sure nobody gets more cookies than I do." That's not a takings claim.

**CONCLUSION AND PRAYER**

Plaintiff states policy complaints. Plaintiff contends that the District's Rules are "unlawful." Plaintiff complains of inequality, unfairness, and discrimination. Never mind that none of those arguments have any merit; what's relevant here is that none of those arguments give rise to a taking. Plaintiff's concession that none of the necessary evidence exists to support <u>a taking of Plaintiff's specific property</u> is dispositive. Defendant respectfully asks the Court to grant the District's Motion for Summary Judgment and dismiss Plaintiff's claim. Defendant further respectfully requests any and all other relief to which it may be entitled.

Respectfully submitted,

**LLOYD GOSSELINK
ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
(512) 322-5800 Phone
(512) 472-0532 Facsimile

By: *<u>/s/ Jose E. de la Fuente</u>*
JOSE E. de la FUENTE
State Bar No. 00793605
jdelafuente@lglawfirm.com
JAMES F. PARKER
State Bar No. 24027591
jparker@lglawfirm.com
GABRIELLE C. SMITH
State Bar No. 24093172
gsmith@lglawfirm.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of August, 2026, I caused a true and correct copy of the foregoing to be transmitted by the Court's electronic filing system to the parties listed below:

Marvin W. Jones
marty.jones@sprouselaw.com
C. Brantley Jones
brantley.jones@sprouselaw.com
Sprouse Shrader Smith PLLC
701 S. Taylor, Suite 500
Amarillo, Texas 79105

Richard L. Coffman
rcoffman@coffmanlawfirm.com
The Coffman Law Firm
3355 West Alabama, Suite 240
Houston, Texas 77098

**ATTORNEYS FOR PLAINTIFF**

*/s/ Jose E. de la Fuente*
JOSE E. de la FUENTE